**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**TERRE HAUTE DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | 2:16-cr-0018-WTL-CMM |
| | ) | |
| ANDREW N. ROGERS, | ) | |
| | ) | |
| Defendant. | ) | |

---

**DEFENDANT ANDREW ROGERS' MOTION FOR PROTECTIVE ORDER TO
PREVENT THE BUREAU OF PRISONS FROM RELEASING TO FEDERAL
PROSECUTORS OR INVESTIGATORS MENTAL HEALTH EVALUATIONS
CONDUCTED BY THE BUREAU OF PRISONS**

---

Defendant Andrew Rogers, by and through undersigned counsel, and pursuant to

the Fifth, Sixth, and Eighth Amendments to the U.S. Constitution, hereby moves this Court

to issue an order to the Bureau of Prisons (BOP) that it not disclose to the prosecution

any mental health evaluations conducted by the BOP after November 3, 2014,[1] and that

it maintain any such evaluations outside of Mr. Rogers' BOP central inmate file.

**I.      Introduction.**

At the time of the events underlying the Indictment in this case, Mr. Rogers was

serving a 27-year sentence in the BOP.  The homicide in this case occurred in the Special

Housing Unit (SHU) at the United States Penitentiary at Terre Haute (THP).

---

[1] Counsel for Mr. Rogers are aware that the prosecution is already in possession of
evaluations through this date.

It is customary, and almost routine, that inmates such as Andrew Rogers who are facing the death penalty will be transferred to the Administrative Maximum Facility in Florence, Colorado (ADX). This is the BOP's most secure facility. Indeed, it appears the BOP initiated the process to transfer Mr. Rogers to the ADX in 2015. BOP policy requires a mental health evaluation prior to any such transfer. The mental health evaluation that the BOP conducted in May 2015 was the subject of a letter from Monica Foster to the then Warden. That letter is attached as Exhibit 1.[2]

For reasons unknown to the undersigned, Mr. Rogers' transfer to the ADX was not completed in 2015. Since the time of the homicide, the BOP has continued to hold Mr. Rogers in the SHU either at THP or at the Federal Correctional Institution (FCI) at Terre Haute. BOP policy requires that inmates housed in a SHU for such a lengthy period receive mental health evaluations every six months. Counsel for Mr. Rogers have expressed their concern about the lengthy and indeterminate SHU placement of Mr. Rogers and the impact it has had and is having on his mental health and his ability to assist counsel and participate in his defense. (*See* Correspondence from counsel for Mr. Rogers to Terre Haute warden, attached as Exhibits 2, 3, and 4.) Counsel for Mr. Rogers have also worked with the U.S. Attorney's Office and BOP counsel in an effort to find a more appropriate placement for Mr. Rogers pending trial. The government has indicated an intent to move Mr. Rogers to the ADX.

Apparently in furtherance of such a move, another mental health evaluation was recently conducted on Mr. Rogers. This evaluation was conducted without any notice to Mr. Rogers' counsel and without counsel's knowledge. This occurred despite counsel's

---

[2] The first page of Exhibit 1 mistakenly indicated a date of 2014, not 2015.

explicit assertion more than two years prior that such evaluations were not to occur. (*See* Exhibit 1.) Counsel raised the very concern discussed herein: that information provided by Mr. Rogers during a BOP mental health evaluation could later be used against him by the prosecution in pursuing the death penalty. When the government recently indicated the intent to move Mr. Rogers to the ADX, counsel believed that the BOP would simply use the previous evaluation that precipitated counsel's letter.

Although counsel for Mr. Rogers have not seen the results of the recent mental health evaluation nor any evaluations conducted as six-month reviews during Mr. Rogers' SHU placement, there is a high likelihood that such evaluations elicited information that could be used against Mr. Rogers. This is evident from what the BOP requires to be included in such evaluations. BOP policy mandates that, before an inmate can be recommended for placement in what BOP terms a "control unit" (such as the ADX), a mental health evaluation must be conducted and a report generated. *See* BOP Program Statements 5212.07, *Control Unit Programs* (relevant portions attached as Exhibit 5); 5310.16, *Treatment and Care of Inmates with Mental Illness* (relevant portions attached as Exhibit 6). The BOP policy dictates the contents of the report:

> [T]he mental health report will include a discussion (not a one-word response) of relevant background material, including:
>
> - the inmate's family,
> - medical,
> - sexual,
> - education activities and work,
> - drug and alcohol use,
> - military,
> - criminal and legal,
> - mental health history, and
> - the inmate's view of his or her crime.

BOP Program Statement 5212.07, § 6.a.(5); *see also id.* at § 6.c.(1) (requiring that report to warden of mental health evaluation "must include, to the extent possible, the information required in Section 6.a.(5)").

Furthermore, once Mr. Rogers is moved to the ADX, he will be required to undergo an additional mental health evaluation in twelve months. *See* BOP Program Statement 5310.16(8)(d). This evaluation includes an interview and will also include psychological testing if clinically indicated. The ADX follow-up evaluation and the SHU six-month reviews both include an interview that delves into information likely to be used against Mr. Rogers in a potential penalty phase. *See* BOP Form BP-A1058, *Restrictive Housing Mental Health Evaluation – Follow-Up Review* (attached as Exhibit 7).

The fear that BOP-acquired information could be used in furtherance of obtaining a death sentence is especially palpable given the BOP's role in this case. The BOP participated in the investigation of the case. The BOP has continued to detain Mr. Rogers in a manner detrimental to his defense. And the BOP has even gone so far as to advocate for the death penalty for Mr. Rogers. In an interview with the FBI, the warden of the Terre Haute prison complex "relayed the official Federal Bureau of Prison's position in support of seeking the death penalty in the case against ANDREW Rogers." (FBI Interview Report, Mar. 17, 2014 (attached as Exhibit 8).)

## II.    The prosecution has no legal right to examine the BOP mental health evaluation.

The BOP conducted examinations of Mr. Rogers without any notice to counsel and without adequately warning Mr. Rogers that what he said could be used against him in the pending criminal case. There can thus be no question that the prosecution would not be entitled to use the results of the evaluation or any statements by Mr. Rogers at a future

trial on the question of either guilt or punishment. *Estelle v. Smith*, 451 U.S. 454, 467-68 (1981) (reversing death sentence where statements made in pretrial competency examination were used at sentencing proceeding).

These post-indictment examinations of Mr. Rogers implicate both Fifth and Sixth Amendment concerns. *Id.* at 465, 469-71, 473 ("Respondent's Fifth and Sixth Amendment rights were abridged by the State's introduction of Dr. Grigson's testimony at the penalty phase, and, as the Court of Appeals concluded, his death sentence must be vacated."). Here, counsel for Mr. Rogers expressly advised the BOP not to conduct further mental health examinations of Mr. Rogers without counsel's permission. (Exhibit 1); *see Estelle*, 451 U.S. at 470-71 ("Defense counsel, however, were not notified in advance that the psychiatric examination would encompass the issue of their client's future dangerousness, and respondent was denied the assistance of his attorneys in making the significant decision of whether to submit to the examination and to what end the psychiatrist's findings could be employed." (footnote omitted)).

The Federal Rules of Criminal Procedure are explicit when the prosecution may view a mental health evaluation of a defendant. Specifically, Rule 12.2 establishes the procedure for examinations that may be used at trial. While not precisely on point here, the procedure under Rule 12.2 is informative because it balances a defendant's constitutional right against compelled disclosure with fairness to the government when a defendant will seek to use the results of such an examination. *See* Fed. R. Crim. P. 12.2 advisory committee note to 1975 Enactment ("The purpose of this rule is to secure the defendant's fifth amendment right against self-incrimination."); *id.* at advisory committee note to 2002 amendment ("The Supreme Court has recognized that use of a defendant's

statements during a court-ordered examination may compromise the defendant's right against self-incrimination.")

Rule 12.2(c)(1)(B) limits the authority to order a mental health examination of a defendant at government request. Here, however, there has been no such request and no such order. Rather, the BOP, which has demonstrated itself to be an arm of the prosecution in this case (*see* Exhibit 6), unilaterally decided to conduct examinations of Mr. Rogers.

While BOP policies may require these evaluations for continued SHU detention and prior to recommending Mr. Rogers' transfer to a facility like the ADX, that does not mean that the government can use Mr. Rogers to create evidence against himself. This is especially so because the BOP has demonstrated that it has a stake in this prosecution, taking the rare action of advocating for the death penalty. The BOP is also an important investigative arm of the United States Attorney and Department of Justice and, thus, their agent.

Because the government seeks the death penalty in this case, it is even more important that the Court take steps to protect Mr. Rogers' rights and ensure the fairness of the proceedings. It has consistently been recognized that the "qualitative difference between death and other penalties calls for a greater degree of reliability when the death sentence is imposed." *Lockett v. Ohio*, 438 U.S. 586, 604 (1978); *see generally Ford v. Wainwright*, 477 U.S. 399, 405 (1986) ("the Eighth Amendment has been recognized to affect significantly both the procedural and the substantive aspects of the death penalty").

It would violate due process, fundamental fairness, and equal protection if Mr. Rogers and other BOP-prisoner-defendants were subject to the disclosure of otherwise

confidential mental health information—created by a government entity aligned with the prosecution—simply by virtue of the fact that they are federal prisoners, while non-prisoner defendants are not subject to such dangers.

The Court should therefore ensure that the prosecution does not obtain access to the results of BOP mental health evaluations of Mr. Rogers and ensure that the prosecution does not gain the ability to use the results themselves (or any statements by Mr. Rogers) or to make derivative use thereof. *Cf.* Fed. R. Crim. P. 12.2 advisory committee note to 2002 amendment ("Most courts that have addressed the issue have recognized that if the government obtains early access to the accused's statements, it will be required to show that it has not made any derivative use of that evidence."). The best and most efficient way to do so is to order the BOP not to disclose any information relating to such evaluations to anyone affiliated with the prosecution or investigation of this case and to keep any such information outside of Mr. Rogers' BOP central inmate file, which is routinely produced to the prosecution.

Mr. Rogers thus asks the Court to issue an order as follows:

> Absent further order of this Court, the Bureau of Prisons is prohibited from providing to federal prosecutors or investigators the originals and/or copies of any information relating to mental health evaluations of Mr. Rogers conducted after November 3, 2014. The Bureau of Prisons is ordered not to place any such materials in Mr. Rogers "central inmate file."
>
> The Bureau of Prisons is further ordered not to disclose the existence of any such information regarding mental health evaluations of Mr. Rogers to federal prosecutors or investigators.

Counsel for Mr. Rogers acknowledge that they will need to gain access to the evaluations discussed herein. But such access should occur outside the normal

discovery process. Counsel anticipate seeking subpoenas *duces tecum* to the BOP for such evaluations and consistent with the protective order sought.

Due to the sensitive nature of the information sought to be protected, Mr. Rogers asks that the Court issue an immediate order that, pending additional consideration and further order of the Court, the prosecution and any law enforcement working on behalf of the prosecution not review any information that is arguably the subject of the protective order sought.

## III. Conclusion

WHEREFORE, for the aforementioned reasons and for any other reasons which may appear to this Honorable Court, Mr. Rogers asks that the Court issue the requested order.

DATED this 20th day of September 2017.

Respectfully submitted,

*S/Nathan D. Chambers*
Nathan D. Chambers
303 16th Street, Suite 200
Denver, Colorado 80202
Telephone: (303) 825-2222
Facsimile: (303) 825-4010
nchambers@nathanchamberslaw.com

*S/Patrick J. Burke*
Patrick J. Burke
303 16th Street, Suite 200
Denver, Colorado 80202
Telephone: (303) 825-3050
Facsimile: (303) 825-2992
Patrick-J-Burke@msn.com

*S/Monica Foster*
Monica Foster
Indiana Federal Community Defenders, Inc.
111 Monument Circle, Suite 3200
Indianapolis, IN 46204
Telephone: 317-383-3520
Facsimile: 317-383-3525
Monica_Foster@fd.org

*S/Gwendolyn M. Beitz*
Gwendolyn M. Beitz
Indiana Federal Community Defenders, Inc.
111 Monument Circle, Suite 3200
Indianapolis, IN 46204
Telephone: 317-383-3520
Facsimile: 317-383-3525
Gwendolyn_Beitz@fd.org

## CERTIFICATE OF SERVICE

I certify a copy of the foregoing was filed electronically. Notice of this filing will be sent to the parties of record by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*S/Monica Foster*
Monica Foster
Indiana Federal Community Defenders, Inc.
111 Monument Circle, Suite 3200
Indianapolis, IN 46204
Telephone: 317-383-3520
Facsimile: 317-383-3525
Monica_Foster@fd.org