UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
|          v. ) | 2:16-cr-0018-WTL-CMM |
| ) | |
| ANDREW N. ROGERS, ) | |
| ) | |
| Defendant. ) | |

**DEFENDANT ANDREW ROGERS' REPLY IN SUPPORT OF HIS MOTION FOR PROTECTIVE ORDER TO PREVENT THE BUREAU OF PRISONS FROM RELEASING TO FEDERAL PROSECUTORS OR INVESTIGATORS MENTAL HEALTH EVALUATIONS CONDUCTED BY THE BUREAU OF PRISONS**

Defendant Andrew Rogers, by and through undersigned counsel, respectfully files this Reply in support of his Motion for Protective Order to Prevent the Bureau of Prisons from Releasing to Federal Prosecutors or Investigators Mental Health Evaluations Conducted by the Bureau of Prisons (Doc. 47). The government has filed a Response in Opposition (Doc. 53). For the reasons stated herein and in Mr. Rogers' Motion, the Court should grant the requested protected order.

**I.     Introduction**

In September of 2013, Mr. Rogers was placed in protective custody after expressing fear of retaliatory gang violence since he would not commit assaults on the gang's behalf. Prison staff confirmed that the threat of gang retaliation was real and Mr. Rogers was placed in protective custody. Every day since, Mr. Rogers has been confined to a cell for at least 23 hours. Because of his lengthy confinement in restrictive housing, the Federal Bureau of Prisons (BOP) has conducted both periodic mental health

evaluations of Mr. Rogers and specific evaluations for the purpose of determining the possibility of moving Mr. Rogers to another facility.

The government does not dispute that it cannot use in this capital prosecution the results of any mental health evaluations the BOP has conducted or any statements made by Mr. Rogers during the course of any such evaluations. Nevertheless, the government argues that it is entitled to possess and review the evaluations and statements which it concedes it cannot use.

The government's arguments all respond to a position that Mr. Rogers never takes—that the Bureau of Prisons (BOP) does not have the authority to conduct mental health examinations for classification purposes. (Doc. 53 at 3, 4, 5-6, 7.) To the contrary, Mr. Rogers explicitly acknowledges that the BOP has the authority and the need to conduct such evaluations. (*E.g.,* Doc. 47 at 6 ("While BOP policies may require these evaluations for continued SHU detention and prior to recommending Mr. Rogers' transfer to a facility like the ADX, that does not mean that the government can use Mr. Rogers to create evidence against himself.").) What the government fails to do is connect any authority the BOP may have to conduct such evaluations with any entitlement the government qua prosecutor in this case has to access those evaluations.

It is important to keep in mind that the BOP serves two functions in relation to Mr. Rogers. On the one hand, the BOP is the federal agency housing Mr. Rogers and constitutionally required to provide him with appropriate care and treatment. *See generally Farmer v. Brennan*, 511 U.S. 825, 832 (1994). On the other hand, the BOP has investigated the case against Mr. Rogers and has served as an advocate, taking an official position in favor of putting Mr. Rogers to death. And there can be no doubt that

the BOP has taken actions in furtherance of that position—such as holding him in isolation for an indefinite period in violation of the BOP's own regulations.  Because of this duality of roles, the Court must intervene to prevent the agency charged with caring for Mr. Rogers from exploiting that position to produce information that can be used in its role as an arm of the prosecution.

> II. **The government is not entitled to use the information Mr. Rogers provided during mental health evaluations in this criminal prosecution.**

The government notes at the outset that Mr. Rogers "[c]onced[es] he has not seen any mental health reports generated by BOP" and thus argues that because he "does not describe the BOP mental health evaluations[,]" he "cannot avail himself of the Fifth Amendment to bar their disclosure . . . ." (Doc. 53 at 2.)  First, the government cites no legal authority in support of this proposition.  Second, the government cannot rely on its sluggish disclosure of discovery, including Mr. Rogers' own central file, as a basis to ask the Court to deny Mr. Rogers' Motion.  Third, Mr. Rogers did describe the required evaluations in detail and attached relevant BOP documents.  (*See* Doc. 47 at 3-4, Ex. 5, 7.)

Mr. Rogers need not "aver that a BOP mental health professional asked him any question designed to elicit an incriminating response, or any question unrelated to his housing classification." (Doc. 53 at 3.)  This misstates the issue before the Court in two key ways.  One, the Supreme Court has disavowed any requirement that interrogation be limited to a "question designed to elicit an incriminating response," as the government suggests.  *See Rhode Island v. Innis*, 446 U.S. 291, 301 (1980) ("[T]he term 'interrogation' under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the

3

police should know are reasonably likely to elicit an incriminating response from the suspect." (footnote omitted)); *see also Arizona v. Mauro*, 481 U.S. 520, 534 (1987) ("An incriminating response is any response—whether inculpatory or exculpatory—that the prosecution may seek to introduce at trial."). Two, this argument continues to focus on what legitimate use the BOP as jailer might make of the information, instead of on what use the prosecution might make of the information.

In support of its argument, the government principally relies on *Taylor v. Best*, 746 F.2d 220 (4th Cir. 1984). But *Taylor* actually undermines the government's argument. *Taylor* was a § 1983 suit complaining of the 15 days in isolation a prison used to punish a convicted prisoner who refused to participate in an intake psychological evaluation. *Id*. at 221. The court held that the prisoner-plaintiff could not assert a Fifth Amendment privilege as a basis not to participate because he had been promised confidentiality of any information he provided and assured that the information gained would be used "only for classification purposes." *Id*. a 221-22, 224; *see also id.* at 222 (quoting district court conclusion that "questions about a past criminal conviction, *asked for classification purposes with a promise of confidentiality*, are not incriminating for purposes of the Fifth Amendment, even though the criminal conviction is still on appeal." (emphasis added)). Importantly, the *Taylor* court recognized that "if the state attempted to use the evaluation in a subsequent criminal proceeding . . . Taylor's right to assert the [F]ifth [A]mendment [would] be triggered. At that time, Taylor would be entitled to have the evaluation suppressed if its content were offered against him and if Taylor had not otherwise waived the right." *Id*. at 224 (citation omitted).

4

Here, the very reason that Mr. Rogers seeks a protective order is demonstrated by the prosecution's opposition to a protective order. If the psychological information gained by the BOP was to be used, as in *Taylor*, *only* for classification purposes, the prosecution in this case would surely have no desire to gain access to it, since the prosecution could make no use of it *in this criminal proceeding*.

Relying on *Taylor*, the government argues that "a mental health evaluation performed by correctional staff for classification purposes does not provide any basis for a Fifth Amendment challenge, absent some attempt to rely on it in a criminal proceeding." (Doc. 53 at 3.) The government's argument once again demonstrates its fundamental misunderstanding of Mr. Rogers' motion. Mr. Rogers is not asking the Court to prohibit the BOP from conducting mental health evaluations for classification purposes. He is asking the Court to order that the BOP not disclose such evaluations to the prosecution, whose only use would be in furtherance of the capital criminal proceeding against Mr. Rogers. Mr. Rogers raises this as a request for a protective order to avoid the necessity of having to litigate it as a suppression issue down the line and to avoid the government making intentional or inadvertent derivative use of erroneously obtained information.[1]

### III.   Rule 12.2 provides an important guide for the Court.

Mr. Rogers acknowledged in his Motion that Rule 12.2 is not precisely on point. (Doc. 47 at 5.) Yet Rule 12.2 can act as an important guide for when the prosecution in a federal capital case is entitled to access mental health evaluations of a defendant.

---

[1] The government fails to respond to Mr. Rogers' argument regarding the Sixth Amendment. (*See* Doc. 47 at 5.)

5

Because Mr. Rogers does not argue that Rule 12.2 itself bars disclosure, *United States v. Loughner*, 782 F. Supp. 2d 829, 833 (D. Ariz. 2011), on which the government relies (Doc. 53 at 4), is not on point. In fact, the court in *Loughner* was sure to point out that the defendant offered "little argument or case support for any constitutional claims[.]" *Id.* at 831.[2]

The import of Rule 12.2 for the issue before the Court is that it sets forth a policy, consistent with *Estelle v. Smith*, 451 U.S. 454 (1981), that the government may not use pretrial mental health evaluations of a defendant except in the circumstances outlined therein. The key issue is the balancing of a defendant's constitutional right against compelled disclosure with the government's access to information but only when a defendant will seek to use the results of an examination at trial. (*See* Doc. 47 at 5-6.)

**IV.   In continuing its argument that the BOP may conduct mental health evaluations for classification purposes, the government fails to refute Mr. Rogers' equal-protection argument.**

The government again misses the point when it asserts that "convicted felons are fairly subjected to classification interviews." (Doc. 53 at 4 (capitalization altered).) No one is arguing that they are not. The government chooses to avoid the question whether mental health evaluations conducted by a prison system that is an arm of the prosecution can then be disclosed to the prosecution for potential use in a capital criminal proceeding against the person who was the subject of an evaluation. Instead, the government argues that "Rogers has made no effort to demonstrate the irrationality of *BOP's policy of conducting mental health evaluations on convicted felons for purposes of prison housing*

---

[2] The *Loughner* court also ruled that there was no Fifth Amendment protection for "routine, day-to-day statements of the defendant of the type normally attendant to being in custody[,]" which were outside the context of a mental health evaluation. *Id.* at 833.

6

*classification.*" (Doc. 53 at 5 (emphasis added).)  Mr. Rogers has made no effort to do so because that is not what Mr. Rogers is arguing.

The government, on the other hand, makes no effort to demonstrate that there is a rational basis for compelling a BOP-housed defendant in a capital case to subject himself to mental health evaluations that will be disclosed to the prosecution while not subjecting a non-BOP-housed capital defendant to the same.  (*See* Doc. 47 at 6-7.)  That, of course, is the appropriate comparison, not the government's comparison of someone who is "a previously-convicted felon" (Doc. 53 at 5) to someone who is not.

### V. The government does not dispute that heightened procedural requirements in a capital case require that the Court take steps to protect Mr. Rogers' rights and ensure the fairness of the proceedings.

In his Motion, Mr. Rogers argued that the severity of the death penalty imposes added duties on the Court to ensure the fairness of these proceedings.  (Doc. 47 at 6-7.)  This the government does not dispute.

Rather, the government focuses on whether there is a valid psychotherapist-patient privilege.  (Doc. 53 at 6-7.)  The government argues that no privilege exists because Mr. Rogers has purportedly put his mental health at issue in this case.  (Doc. 53 at 6-7.)  The government concedes that the BOP's unilateral decision to continue to hold Mr. Rogers in isolation "could impact his mental health."  (Doc. 53 at 5.)  Yet the government argues that Mr. Rogers has given up any interest in prohibiting the entity trying to take his life from accessing statements compelled by an entity working in conjunction to take his life. (Doc. 53, pp. 6-7.)

In support of its argument, the government cites Mr. Rogers' statement that his legal team will need to gain access to evaluations.  (Doc. 53 at 7 (arguing that Mr. Rogers

7

has "impliedly waived any privilege") (citing Doc. 46 at 7).) All this says is that Mr. Rogers' counsel will need to gain access to these reports in order to make informed decisions consistent with their obligations under *Strickland v. Washington*, 466 U.S. 668, 691 (1984) ("[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary."). *See also Powell v. Alabama*, 287 U.S. 45, 57 (1932) (describing importance of counsel and "thorough-going investigation" as "vitally important").

     This is precisely why the guidance offered by Rule 12.2 is so valuable. A capital defendant's legal team has a constitutional obligation to investigate potential mitigation, including the possibility that mental health issues played a factor in the homicide. *See, e.g.*, *Wiggins v. Smith*, 539 U.S. 510, 536 (2003) (counsel ineffective for failing to thoroughly investigate mitigation); *Williams v. Taylor*, 529 U.S. 362, 395-96 (2000) (counsel ineffective for failing to uncover and present mitigation evidence, including evidence defendant was "borderline mentally retarded"); American Bar Association, *American Bar Association Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases*, 31 Hofstra L. Rev. 913, 1026 (2003) (describing duty to investigate "the adequacy of institutional responses to childhood trauma, mental illness . . ."). But by investigating this possibility, counsel have not committed Mr. Rogers to introducing this evidence at trial. By reviewing ocean maps displaying the Gulf Stream, a ship's captain does not commit himself to that course.

     Furthermore, the evaluations at issue were all conducted by the psychologist who regularly provides treatment to Mr. Rogers. *See generally Jaffee v. Redmond*, 518 U.S. 1, 15 (1996) (discussing psychotherapist privilege). The government cites *United States*

*v. Bolander*, 722 F.3d 199, 223 (4th Cir. 2013), for the proposition that a defendant waives the psychotherapist-patient privilege by providing materials to a defense expert witness. (Doc. 53 at 6.) But *Bolander* held no such thing. Rather, *Bolander* held (i) the inmate in a proceeding under the Adam Walsh Act waived his right to assert the psychotherapist privilege by making an "eleventh hour" assertion of the privilege, and (ii) the privilege did not apply since the communications were not made for the purpose of treatment. *Id.* at 223. To the extent Mr. Rogers is consulting with any expert at this point, those communications—including the disclosure of records—are protected by the attorney-client privilege. *Cf. United States v. Alvarez*, 519 F.2d 1036, 1046 (3d Cir. 1975) ("The effective assistance of counsel with respect to the preparation of an insanity defense demands recognition that a defendant be as free to communicate with a psychiatric expert as with the attorney he is assisting. If the expert is later used as a witness on behalf of the defendant, obviously the cloak of privilege ends. But when, as here, the defendant does not call the expert the same privilege applies with respect to communications from the defendant as applies to such communications to the attorney himself."); *see generally* Fed. R. Crim. P. 16(b)(1)(C).

## VI. Conclusion

The government cites no legal authority supporting an argument that the prosecution in a federal criminal case has a right to access any and all mental health evaluations of a defendant and statements made during the course of such evaluations simply because those evaluations were conducted at the command of the federal Bureau of Prisons where the defendant happens to be housed. For the reasons stated herein and in Mr. Rogers' Motion, and for any other reasons that appear to the Court, Mr. Rogers

respectfully requests that the Court grant his Motion and issue the requested protective order.

WHEREFORE, Andrew Rogers respectfully asks that the Court issue the requested protective order.

DATED this 11th day of October 2017.

                                            Respectfully submitted,

*S/Nathan D. Chambers*
Nathan D. Chambers
303 16th Street, Suite 200
Denver, Colorado 80202
Telephone: (303) 825-2222
Facsimile: (303) 825-4010
nchambers@nathanchamberslaw.com

*S/Patrick J. Burke*
Patrick J. Burke
303 16th Street, Suite 200
Denver, Colorado 80202
Telephone: (303) 825-3050
Facsimile: (303) 825-2992
Patrick-J-Burke@msn.com

*S/Monica Foster*
Monica Foster
Indiana Federal Community Defenders, Inc.
111 Monument Circle, Suite 3200
Indianapolis, IN 46204
Telephone: 317-383-3520
Facsimile: 317-383-3525
Monica_Foster@fd.org

*S/Gwendolyn M. Beitz*
Gwendolyn M. Beitz
Indiana Federal Community Defenders, Inc.
111 Monument Circle, Suite 3200
Indianapolis, IN 46204
Telephone: 317-383-3520
Facsimile: 317-383-3525
Gwendolyn_Beitz@fd.org

## **CERTIFICATE OF SERVICE**

      I certify a copy of the foregoing was filed electronically.  Notice of this filing will be sent to the parties of record by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

>*S/Monica Foster*
>Monica Foster
>Indiana Federal Community Defenders, Inc.
>111 Monument Circle, Suite 3200
>Indianapolis, IN 46204
>Telephone: 317-383-3520
>Facsimile: 317-383-3525
>Monica_Foster@fd.org