# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
### TERRE HAUTE DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA**, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Cause No. 2:16-cr-00018-WTL-CMM-01 |
| **ANDREW ROGERS**, | ) | |
| | ) | |
| Defendant | ) | |

---

## RESPONSE OF THE UNITED STATE OF AMERICA
## TO MOTION FOR SPECIFIC DISCOVERY

---

**JOSH J. MINKLER**
Acting United States Attorney

**BARRY GLICKMAN**
Assistant United States Attorney
United States Attorney's Office
10 W Market St, Ste. 2100
Indianapolis, IN 46204
Telephone: (317) 226-6333
Fax: (317) 229-6125
Barry.Glickman@usdoj.gov


**JEFFREY B. KAHAN**
**TERESA A. POLINSKE**
Trial Attorneys
U.S. Dept. of Justice, Capital Case Section
1331 F Street, NW; 6th Floor
Washington, DC 20530
Telephone (Kahan): 202-305-8910
Telephone (Polinske): 202-616-4582
Fax: 202-353-9779
Jeffrey.kahan@usdoj.gov
Teresa.polinske@usdoj.gov

# TABLE OF CONTENTS

STATEMENT OF ISSUES ......................................................................................... 1

STATEMENT OF FACTS ....................................................................................... 1

ARGUMENT AND AUTHORITIES........................................................................... 3

THE COURT SHOULD SELECTIVELY GRANT THE DEFENDANT'S REQUESTS FOR SPECIFIC DISCOVERY, BUT DENY THE MAJORITY OF THEM, WHICH SEEK VAGUE AND OVERBROAD PRODUCTIONS OF IMMATERIAL OR PRIVILEGED INFORMATION.......................................................................................................... 3

    A.  The Pertinent Law ................................................................................. 3

    B.  Requests to which the United States does not object ....................................... 8

    C.  Requests to which the United States objects in part........................................ 10

    D.  Requests to which the government objects in toto........................................ 28

    E.  Requests to which the United States can provide no response ..................................... 87

CONCLUSION....................................................................................................... 89

i

# TABLE OF AUTHORITIES

## Cases

*Brady v. Maryland*, 373 U.S. 83 (1963) ............................................................... 4

*Clay v. United States*, 397 F.2d 901 (5th Cir. 1968).......................................... 5

*Giglio v. United States*, 405 U.S. 150 (1972) ............................................ passim

*Giordano v. United States*, 394 U.S. 310 (1969) ............................................... 5

*In re Dayco Corp. Derivative Sec. Litig.*, 102 F.R.D. 468 (S.D.Ohio 1984).............. 30

*In re United States*, 397 F.3d 274 (5th Cir. 2005) .......................................... 29

*Kyles v. Whitley*, 514 U.S. 419  (1995)............................................................. 4

*Nadler v. United States Dept. of Justice*, 955 F.2d 1479 (11th Cir. 1992) ............ 29

*NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132 (1975).......................................... 29

*Resolution Trust Corp. v. Dean*, 813 F. Supp. 1426 (D. Ariz. 1993) ................... 30

*Saunders-El v. Rohde*, 778 F.3d 556 (7th Cir. 2015)......................................... 69

*Tennard v. Dretke*, 542 U.S. 273 (2004)........................................................... 4

*Tougy v. Ragen*, 340 U.S. 462 (1951)............................................................. 25

*United States v. Agurs*, 427 U.S. 97 (1976) ........................................... 4, 5, 73

*United States v. Andrews*, No. 1:12-cr-00100-IMK-JSK, slip op. at 30 (W.D. W.Va. Feb. 13,
   2014) ........................................................................................................ 47

*United States v. Bagley*, 473 U.S. 667 (1985) .................................................. 4

*United States v. Bass*, 536 U.S. 862 (2002) ................................................... 29

*United States v. Buckley*, 586 F.2d 498, 506 (5th Cir. 1978)............................... 5

*United States v. Caro*, 461 F. Supp. 2d 478 (W.D. Va. 2006)............................... 6

*United States v. Caro*, 597 F.3d 608 (4th Cir. 2010) ............................... 5, 6, 12

*United States v. Coe*, 220 F.3d 573 (7th Cir. 2000)......................................... 12

*United States v. Comosona*, 848 F.2d 1110 (10th Cir. 1988) .............................. 6

*United States v. Coonce*, No. 10-3029-01/02-CR-S-GAF, Doc. 681(W.D. Mo. Apr. 17, 2014) ... 6

*United States v. Fell*, 531 F.3d 197 (2nd Cir. 2008) ......................................... 8

*United States v. Fernandez*, 231 F.3d 1240 (9th Cir. 2000) .............................. 29

*United States v. Gabrion*, 719 F.3d 511 (6th Cir. 2013)..................................... 8

*United States v. Gonzalez-Montoya*, 161 F.3d 643 (10th Cir. 1998)...............................................6

*United States v. Hanzlicek*, 187 F.3d 1228 (10th Cir. 1999) ........................................................5

*United States v. Heidecke*, 900 F.2d 1155 (7th Cir. 1990) ...........................................................5

*United States v. Jordan*, 316 F.3d 1215 (11th Cir. 2003)..............................................................5

*United States v. Lujan*, No. CR 05-0924, 2011 U.S. Dist. LEXIS 157864 (D. N.M. Sept. 7, 2011) ....................................................................................................................6

*United States v. Mandel*, 914 F.2d 1215 (9th Cir. 1990)...............................................................5

*United States v. McDonnell*, 696 F. Supp. 356 (N.D. Ill. 1988)....................................................4

*United States v. Nguyen*, 928 F. Supp 1525 (D. Kan. 1996) .......................................................29

*United States v. Ross*, 511 F.2d 757 (5th Cir. 1975)....................................................................5

*United States v. Santiago*, 46 F.3d 885 (9th Cir. 1995)..............................................................7, 8

*United States v. Sherlin*, 67 F.3d 1208 (7th Cir. 1995)...............................................................72

*United States v. Shields*, 789 F.3d 733 (7th Cir. 2015)..................................................14, 32, 34

*United States v. Smith*, 2009 WL 3584944 (E.D. TN Oct. 22, 2009)....................................14, 32

*United States v. Snarr*, Crim. No. 1:09-CR15, Doc. 238, March 31, 2010 ...................................6

*United States v. Taylor*, 583 F. Supp.2d 923 (E.D. Tenn. 2008)..................................................8

*United States v. Taylor*, 814 F.3d 340 (6th Cir. 2016).................................................................47

*United States v. Troya*, Case No. 06-80171, 2008 U.S. Dist. LEXIS 124364 (S.D. Fla. Oct. 9, 2008) .................................................................................................................6

*United States v. Tsarnaev*, No. 1:13-10300-GAO, slip op. (D. Mass. Nov. 27, 2013) ...............47

*United States v. Umana*, No. 08-CR-134, Doc. 997, unpub. Op. (W.D.N.C. April 4, 2010).........6

*United States v. Weiss*, 2006 WL 1752373 (D. Colo. June 21, 2006) ..........................................5

*United States v. Williams*, 791 F.2d 1383 (9th Cir. 1986)............................................................7

*United States v. Wilson*, 237 F.3d 827 (7th Cir. 2001) ................................................................4

*Weatherford v. Bursey*, 429 U.S. 545 (1977).................................................................................4

**Statutes**

18 U.S.C. § 3432.............................................................................................................................87

18 U.S.C. § 3500........................................................................................................................passim

iii

**Rules**

Fed. Rules Crim. Proc., rule 16.............................................................................. passim

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
### TERRE HAUTE DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA**, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Cause No. 2:16-cr-00018-WTL-CMM-01 |
| **ANDREW ROGERS**, | ) | |
| | ) | |
| Defendant | ) | |

---

## RESPONSE OF THE UNITED STATES OF AMERICA
## TO MOTION FOR SPECIFIC DISCOVERY

---

The United States of America, by and through undersigned counsel, respectfully submits this response in answer to the Motion for Specific Discovery filed on behalf of Andrew Rogers, the defendant. (Doc. 49).

## STATEMENT OF ISSUES

Should this Court grant 185 separate requests for specific discovery?

## STATEMENT OF FACTS

Andrew Rogers ("the defendant") was received at the Bureau of Prisons ("BOP") and confined to the United States Penitentiary at Terre Haute ("USP-TH" or "THP") on July 25, 2013. He was assigned to the Security Housing Unit ("SHU" or "THP-SHU") on September 9, 2013.

In the early morning of December 26, 2013, a USP-TH correctional officer was performing rounds in the SHU. Upon arriving at cell B-223, the officer observed the defendant, one of the two occupants of this cell, standing just inside the cell door. The defendant told the officer to

1

"[g]et this dead motherfucker out of my cell." The officer observed the body of Thomas Sim ("Sim"), the other inmate confined to cell B-223, lying motionless in a pool of blood on the cell floor. His shirt was blood-soaked. His hands, which were behind his back, were tied to the frame of the cell's bunkbeds. Emergency personnel arrived at the cell and pronounced Sim dead. An autopsy determined that the cause of Sim's death was multiple stab wounds to the neck and chest.

Rogers was removed from the cell and escorted to a holding area while officials processed his cell for evidence. John Caraway, Warden of the Federal Correctional Complex-Terre Haute ("FCC-TH"), encountered the defendant in the holding area. Rogers told the Warden, "I will kill anyone you put in the cell with me. . . . I will keep killing until I force you guys to give me the death penalty. . . . I'm not going to do the rest of my time in a bathroom with another inmate."

Later that day, an FBI special agent questioned Rogers. After waiving his *Miranda* rights, Rogers admitted that he killed his cellmate, explaining he did not want to spend the next thirty years in federal prison with another man in a cell no larger than a bathroom. He further explained that his goal, "was to make it look somewhat heinous 'cause I'm shooting for the death penalty." Rogers told the agent that he planned the murder for about three weeks, during which time he used nail clippers to carve a metal weapon from the base of his bunkbed. He said he killed Sim on the day he finished the weapon. Rogers described the killing, stating that he tricked Sim into posing as a bound hostage in their cell. After tying Sim's hands behind his back, the defendant said he used braided sheet material to choke his victim. Rogers admitted that he then stabbed Sim about 20 times about his neck and chest. He further stated that an officer came by his cell a few minutes later, prompting Rogers to announce, "I just killed my cellie, you might want to get a body bag." At the close of the interview, Rogers told the agent he intended to kill Sim and, if placed in a cell

with another inmate, he would kill again. He added, "If I get the death penalty, I'll take it with a smile on my face."

In a letter to a family member about ten days after the murder, the defendant stated, "I killed him . . . because . . . I refuse to live with another man in a 8' x 12' 'bathroom' for 27 years."

During an interview conducted on March 12, 2014, the defendant, who, again, waived his *Miranda* rights, identified a photograph of the homemade metal weapon recovered from his cell, stating, "That's my shank" and "I stabbed my cellie to death with it."

## ARGUMENT AND AUTHORITIES

### THE COURT SHOULD SELECTIVELY GRANT THE DEFENDANT'S REQUESTS FOR SPECIFIC DISCOVERY, BUT DENY THE MAJORITY OF THEM, WHICH SEEK VAGUE AND OVERBROAD PRODUCTIONS OF IMMATERIAL OR PRIVILEGED INFORMATION

Divided into ten categories, Rogers makes 185 requests for discovery. According to Rogers, the goal of his requests is erecting a defense and identifying potential mitigation evidence as to a crime of which he is the sole possible perpetrator and to which he has repeatedly confessed. Doc. 49. The government responds in four parts: (A) background legal principles applicable to Rogers's requests; (B) an itemized list of requests to which the government does not object; (C) a similar list of requests to which the government objects in part, along with an argument supporting each objection and an explanation of the contours of each partial objection; and (D) a final list of the requests to which the government objects in whole, along with an argument supporting each objection. As to each specific request, the United States asks the Court to limit its discovery obligations in accordance with the legal principles and arguments presented below.

A.     The Pertinent Law

Due process, under *Brady* and Fed. Rules Crim. Proc., rule 16(a)(1)(E), requires

prosecutors to disclose evidence material to guilt or punishment. *Brady v. Maryland*, 373 U.S. 83, 87 (1963). However, "[t]here is no general constitutional right to discovery in a criminal case, and *Brady* did not create one." *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977); *see Kyles v. Whitley*, 514 U.S. 419, 437 (1995). *Brady* does not create a right of unfettered exploration in the government's files:

> *Brady* does not authorize . . . a fishing expedition for exculpatory material based on nothing more than mere speculation. [Citation.] Nor does it obligate the Government to obtain information outside of its files for the purpose of discovering information which defense counsel can use to impeach the credibility of prosecution witnesses.

*United States v. McDonnell*, 696 F. Supp. 356, 363-64 (N.D. Ill. 1988). *Brady* extends only to files in the possession of agencies that are part of the prosecutorial and investigative team for a given case. *United States v. Wilson*, 237 F.3d 827, 832 (7th Cir. 2001).

Although a defendant's right to present relevant and admissible mitigating evidence may have "virtually no limits," *Tennard v. Dretke*, 542 U.S. 273, 285 (2004), the same is not true of its right to examine the government's investigative files. "The holding in *Brady* requires disclosure only of evidence that is both favorable to the accused and 'material either to guilt or to punishment.'" *United States v. Bagley*, 473 U.S. 667, 675, and n.7 (1985) (quoting *Brady*, 373 U.S. at 87). Because *Brady's* "purpose is not to displace the adversary system as the primary means by which truth is uncovered . . . the prosecutor is not required to deliver his entire file to defense counsel, but only to disclose evidence favorable to the accused that, if suppressed, would deprive the defendant of a fair trial." *Id.* "The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality.'" *United States v. Agurs*, 427 U.S. 97, 109-10 (1976); *see United States*

4

*v. Hanzlicek*, 187 F.3d 1228, 1239 (10th Cir. 1999). *Brady* requires disclosure of information only if it is "material" as opposed to merely "pertinent," and only if it is "favorable" as opposed to merely useful in developing the defense case. *See Agurs*, 427 U.S. at 112 n.20.

Discovery under the Rules of Criminal Procedure is not intended to be as broad as in a civil case. *Clay v. United States*, 397 F.2d 901, 915 (5th Cir. 1968), *vacated on other grounds sub nom., Giordano v. United States*, 394 U.S. 310 (1969). Like *Brady*, Rule 16 extends only to materials in the custody or control of agencies closely connected to the prosecutor. *United States v. Jordan*, 316 F.3d 1215, 1249 (11th Cir. 2003). Furthermore, Rule 16 requires a *prima facia* showing of materiality. *See United States v. Buckley*, 586 F.2d 498, 506 (5th Cir. 1978). Thus, "there must be some indication that the pretrial disclosure of the disputed evidence would have enabled the defendant significantly to alter the quantum of proof in his favor." *United States v. Ross*, 511 F.2d 757, 762-63 (5th Cir. 1975) (citations omitted); *see United States v. Caro*, 597 F.3d 608, 621 (4th Cir. 2010) (applying the standard to a capital case). Conclusory allegations of materiality do not satisfy Rule 16. Rather the defendant must present facts that tend to show the United States possesses information "helpful to the defense." *United States v. Mandel*, 914 F.2d 1215, 1219 (9th Cir. 1990); *see United States v. Heidecke*, 900 F.2d 1155, 1159-60 (7th Cir. 1990) (holding defendant had no right to discovery based on mere allegations and conjecture).

Rule 16 does not provide an end-run to obtain information that is non-discoverable under *Brady* and it progeny. "Rule 16 includes two other categories of discoverable information in addition to 'material' information . . . . The materiality language . . . shows that the drafters of rule recognized the government's *Brady* obligation." *United States v. Weiss*, 2006 WL 1752373, *2 (D. Colo. June 21, 2006) (internal quotes omitted). The government has no obligation to disclose

"facially nonexculpatory evidence" that "might possibly be favorable to the accused by inferential reasoning." *United States v. Comosona*, 848 F.2d 1110, 1115 (10th Cir. 1988). The government need not disclose evidence that is only "possibly useful to the defense but not likely to have changed the verdict." *United States v. Gonzalez-Montoya*, 161 F.3d 643, 650 (10th Cir. 1998).

Even in a capital case, the defendant must justify discovery requests with a showing of materiality. *See United States v. Caro*, 461 F. Supp. 2d 478, 481 (W.D. Va. 2006), *aff'd in* 597 F.3d at 621. *Caro* is particularly illustrative because it concerns a defendant, like Rogers, who was accused of murdering his cellmate in federal prison. 461 F. Supp. 2d at 479. The *Caro* court denied, as immaterial, access to BOP records about all inmates confined to a specific unit, all incidents of inmate violence in that unit, and all inmate homicides within BOP facilities for the previous 20 years. *Id.* at 480-81. On appeal, the Fourth Circuit affirmed, observing, "For the defendant to show materiality under [Rule 16(a)(1)(E)(I)], '[t]here must be some indication that the pretrial disclosure . . . would have enabled the defendant significantly to alter the quantum of proof in his favor.'" *Caro*, 597 F.3d at 621 (holding that neither *Brady* nor Rule 16 required disclosure of similar statistical evidence).

Several courts have turned aside overbroad BOP discovery requests in federal death penalty cases. *See United States v. Lujan*, No. CR 05-0924, 2011 U.S. Dist. LEXIS 157864 (D. N.M. Sept. 7, 2011); *United States v. Troya*, Case No. 06-80171, 2008 U.S. Dist. LEXIS 124364 (S.D. Fla. Oct. 9, 2008); Ex. 10 (*United States v. Snarr*, Crim. No. 1:09-CR15, Doc. 238, March 31, 2010); Ex. 3 (*United States v. Umana*, No. 08-CR-134, Doc. 997, unpub. Op. (W.D.N.C. April 4, 2010)); Ex. 2 (*United States v. Coonce*, No. 10-3029-01/02-CR-S-GAF, Doc. 681(W.D. Mo. Apr. 17, 2014)). Indeed, the Western District of North Carolina rejected a federal capital

defendant's broad BOP discovery requests: 1) disciplinary offense and misconduct data associated with security threat groups and disruptive groups; disciplinary data on MS-13 members for serious assaults; 3) rates of assaults and other serious misconduct by prison and throughout BOP; 4) a summary of offender characteristics for ADX inmates; and 5) data about the average length of housing at ADX. In denying the requests, the Court held:

> Even assuming that some of these documents or data are within the ambit of Rule 16 or *Brady*, the defendant has not made a sufficient showing of materiality to require disclosure. . . . Although somewhat narrower than the request for discovery at issue in *Caro*, the defendant's request is no more material to his defense. The Court finds unavailing the defendant's contention that his case is distinguishable from *Caro* on the ground that here, the government "has specifically alleged future dangerousness based on Defendant's membership to the gang MS-13." (Doc. No. 984 at 4). A similar allegation of gang membership was made in *Caro*, and the Fourth Circuit recognized this fact in its holding. *See* 597 F.3d at 621.

*See* Ex. 3.

The same rules obtain in non-capital prison cases. In *United States v. Williams*, 791 F.2d 1383 (9th Cir. 1986), the defendant was charged with escape and unsuccessfully requested records relating to prison security measures and other information relating to authorities' prior knowledge of the escape plan. In affirming, the Ninth Circuit held the district court "correctly balanced the competing interests in reaching its discovery ruling in the present case. . . . conclud[ing] that the information sought to be discovered was not sufficiently material to overcome the government's compelling interests in inmate safety and prison security." *Id*. at 1387. The Ninth Circuit likewise affirmed the denial of discovery concerning the gang affiliations of testifying inmates in a non-capital prison murder case. In *United States v. Santiago*, 46 F.3d 885 (9th Cir. 1995), the court determined that "[t]hese assertions, although not implausible, do not satisfy the requirement of specific facts, beyond allegations, relating to materiality. . . . Thus, since the defense has only

asserted conclusory allegations without grounding in fact." *Id.* at 894-95.

A defendant cannot make out a showing of materiality through the simple expedient of associating a discovery request with the concept of mitigation. As the Sixth Circuit has observed, "Mitigation evidence . . . is not an empty concept to be filled by whatever a lawyer or court thinks might persuade a single juror in a particular case." *United States v. Gabrion*, 719 F.3d 511, 522 (6th Cir. 2013) (*en banc*). The broad standards for admissibility of mitigation evidence do "not mean that the defense has carte blanche to introduce any and all evidence that it wishes." *United States v. Fell*, 531 F.3d 197, 219 (2nd Cir. 2008) (affirming exclusion of defendant's rejected plea agreement, which would have created a "confusing and unproductive inquiry").

The Eastern District of Tennessee considered the scope of admissible mitigation evidence in rejecting a request to introduce comparative proportionality evidence as well as evidence of racial disparities in death sentences. *United States v. Taylor*, 583 F. Supp.2d 923, 933-36 (E.D. Tenn. 2008). In excluding the evidence, the court held that the jury's decision "on life or death must turn on its understanding of this case, the offenses involved, and this defendant, not on the specifics of other cases and other defendants. To hold otherwise would necessitate turning the trial into a series of mini-trials over the facts and circumstances of other prosecutions." *Id.* at 936. In so holding, the Court examined the Federal Death Penalty Act, and concluded that its allowance for non-statutory mitigating factors, "does not allow for factors of an entirely different nature from the illustrated factors. All the illustrated factors concern the defendant or the circumstances of the offense, including the culpability, participation, and punishment of other defendants." *Id.* at 935.

B.  <u>Requests to which the United States does not object</u>

Subject to a request for the issuance of a protective order under Federal Rule of Criminal

Procedure 16(d)(1), the United States agrees to produce the following materials, as requested, to the extent they exist and are in the possession, custody, or control of the prosecution team:[1]

- Item 3:  Mass interview forms prepared in relation to the Sim homicide investigation.

- Item 4:  THP-SHU inmate and housing roster for December 25, 2013.

- Item 6:  Documents created and maintained by the SIS office in relation to the Sim homicide.

- Item 12:  Documents relating to SIS briefings of or presentations to BOP and THP executive staff regarding the Sim homicide investigation.

- Item 15:  Documents related to BOP disciplinary or administrative proceedings involving inmates or staff related to the Sim murder investigation.

- Item 17:  Recordings of radio communication at USP-TH from 12:01 a.m. to 10:00 a.m. on December 26, 2013.

- Item 18:  Crime scene video.

- Item 19:  Video of the autopsy of Thomas Sim.

- Item 20:  Recordings of telephone calls placed by the defendant during his incarceration in BOP.

- Item 21:  Letters and emails to and from the defendant during his incarceration in BOP.

- Item 25:  Memorandum dated 9/12/2013 by B. English.

- Item 27:  BOP updates regarding the defendant.

- Item 56:  Daily unit logs for the THP-SHU for the period of December 1, 2013 to December 31, 2013.

- Item 57:  Video footage taken in the THP-SHU during the period of December 1, 2013 to December 31, 2013.

- Item 59:  Daily Lieutenants' logs for the period of December 1, 2013, to December 31, 2013.

- Item 60:  Minutes of monthly Lieutenants' meetings occurring between December 1, 2013,

---

[1]     By agreeing to production, the United States is not waiving any future arguments about the relevance or admissibility of the information provided at trial or at any other court proceeding.

and June 1, 2014.

- Item 61: Documents relating to meetings of the Warden, executive staff, or department heads occurring between January 1, 2013 and June 1, 2014.

- Item 69: Documents pertaining to THP-SHU meetings regarding the defendant or Thomas Sim.

- Item 70: The latest two Institutional Character Profile reports prepared for THP prior to December 26, 2013.

- Item 71: Documents relating to the Annual Refresher Training Plan or Agenda for the period of January 1, 2009 to June 1, 2014.

- Item 72: After-action Reviews regarding group disturbance, homicide, assault, bribery of a correctional officer, indictment of a correctional officer, smuggling of contraband, or violation of civil rights at THP for each year between January 1, 2004, and December 31, 2013.

- Item 125: The workbook on depression provided to the defendant on October 9, 2013.

- Item 162: Thomas Sim's BOP Central Inmate File.

- Item 166: Names and assignments of all officer, etc. working at USP-TH during the period of December 25 to 27, 2013.

- Item 167: Names and reports generated of all individuals who operated cameras or recording devices at USP-TH on December 26, 2013.

   C.   Requests to which the United States objects in part

Subject to a request for the issuance of a protective order under Federal Rule of Criminal Procedure 16(d)(1), the United States agrees to produce, in part, the following requested materials, but objects as specified below. In addition, the United States submits that requests for "any and all documents" will require nationwide searches of BOP's physical files, an overwhelming burden on an agency that operates more than 120 prisons, and has incarcerated hundreds of thousands of inmates. Any such requests would also necessitate the need for nation-wide staff email searches that would yield thousands of records with no demonstrable relationship to this case.

- Item 1: Tour of USP-TH to view and photograph the prison:

10

The United States does not object to the defense request to tour USP-TH.

The United States does, however, object to the defense request for permission to bring cameras and electronic measuring equipment into the facility. In the interest of institutional security, BOP will use its own equipment to photograph, video-record, and measure areas of the prison identified by the defense. BOP will then release any such photographs, videos, and measurements, after review by the Warden for security compliance.

- Item 2: Any and all[2] documents relating to investigation by the FBI and/or the BOP of the Sim homicide including, without limitation, correspondence, handwritten notes, written reports by FBI agents, SIS staff or other BOP personnel, and documents reflecting the division of labor between the FBI and SIS and

- Item 5: All documents relating to interviews of inmates in connection with the Sim homicide investigation, including, without limitation, investigators' handwritten or computer entry notes:

The United States agrees to disclose information in her possession, custody, and control as necessary to comply with the requirements of *Brady*, *Giglio v. United States*, 405 U.S. 150 (1972), and the Jencks Act (18 U.S.C. § 3500).

The United States argues that requests 2 and 5 are otherwise vague, and overbroad. Indeed, they seek immaterial and potentially privileged information.[3] The requests are vague in that they seek any and all documents relating to the investigation, which could include anything from irrelevant employee time cards to documents subject to investigative, prosecutorial, or grand jury privilege. As stated, neither Rule 16 nor *Brady* grant a defendant the right to unfettered access to the government's case files. These requests are overbroad in that they specifically seek

---

[2] The United States shortens subsequent requests for "any and all" to "all."

[3] All of Rogers' overbroad requests seek immaterial information. In its objections, the United States explains how each overbroad request contemplates immaterial information, but its initial objections use the term "overbroad" to capture these inextricably related concepts.

handwritten notes.  The Seventh Circuit has held, "the government satisfies the requirements of Rule 16 if it turns over a written report that contains all of the information found in an agent's original notes but does not deliver the notes themselves."  *United States v. Coe*, 220 F.3d 573, 583 (7th Cir. 2000). Further, the defendant has failed to articulate how presumptively privileged communications between agencies or documents setting forth the division of labor between agencies would exculpate him or lead to the discovery of any possible mitigation evidence concerning his background, his history or record, or the circumstances of his crime. *See Caro*, 597 F.3d at 619-21; Exs. 2, 3 & 7.[4]

- Item 7:  All Board of Inquiry Reports regarding the Sim homicide:

The United States agrees to produce After-action Reports relating to the Sim homicide that are in the possession, custody, and control of BOP.

The United States objects to the request for the production of Board of Inquiry Reports as vague.  BOP Supervisory Attorney Advisor Rob Schalburg has advised the government that he does not recognize the term "Board of Inquiry Reports."

- Item 11:  All documents relating to SIS card files, etc., regarding the defendant, Thomas Sim, or the Soldiers of Aryan Culture ("SAC"):

The United States agrees to produce SIS card files concerning Rogers and Sim.

The United States objects to the request for the production of SIS card files regarding the SAC.  This portion of the request is vague, burdensome and overbroad.  This portion of the request, which has no apparent limit in time or geography, would seemingly require BOP to search the materials compiled by SIS about SAC at each of its 109 prisons and all of its executive offices.

---

[4] In the interest of brevity, in this already lengthy document, the government declines to repeat this citation with regard to each of its materiality objections.

This request is clearly burdensome.  Furthermore, there is no indication that SAC played any role in the Sim's murder.  Finally, the defendant has failed to articulate how this information, which is presumably subject to investigative privilege, is material to the preparation of a defense or would lead to the discovery of any possible mitigation evidence concerning his background, his history or record, or the circumstances of his crime.

The United States objects to that portion of this request that seeks production of "other files and materials regarding the defendant, Thomas Sim, or SAC."  By failing to identify the types of other files and materials sought, this portion of the request is vague, overbroad (again contemplating presumptively privileged material), and burdensome.

- Item 13:  All documents prepared by or maintained by OIA or OIG relating to the Sim homicide investigation:

The United States agrees to produce documents prepared by OIA or OIG that relate to the Sim homicide investigation to the extent that such documents are in the custody of BOP.

The United States objects to producing documents that are in the possession, custody, or control of either OIA or OIG because they are not members of the prosecution team.  The government is under no obligation to obtain and produce any such information.  *See Wilson*, 237 F.3d at 832; *see also Buckley*, 586 F.2d at 506.

- Item 22:  All documents relating to USP-TH's acceptance, designation, classification and transportation of the defendant;

- Item 23:  All documents relating to requests for transfer for the defendant including, but not limited to, any communications regarding eligibility and suitability for transfer, requests for review, and all other documents and communications; and

- Item 24:  All information obtained by the Designation and Sentencing Computation Center (DSCC) that references the defendant:

Upon information and belief, BOP does not maintain records about the acceptance,

designation, classification, or transfer of individual inmates outside of their central file. Therefore, the United States agrees to this request, to the extent that the information is contained within the defendant's central file.

Upon information and belief, BOP does not maintain records about requests for transfers made by individual inmates outside of their central file. Therefore, the United States agrees to this request, to the extent that the information is contained within the defendant's central file.

Upon information and belief, BOP does not maintain records concerning information obtained by the DSCC outside of an inmate's central file. Therefore, the United States agrees to this request, to the extent that the information is contained within the defendant's central file.

To the extent these requests seeks policy documents that may have guided BOP officials in 1) accepting, designating, classifying, or transporting the defendant or 2) granting or denying transfers to the defendant, it appears that this information is maintained on the agency's website. See https://www.bop.gov/PublicInfo/execute/policysearch?todo=query. The United States has no obligation to produce publicly available information in discovery. *See United States v. Shields*, 789 F.3d 733, 747 (7th Cir. 2015); *see also United States v. Smith*, 2009 WL 3584944, *8 (E.D. TN Oct. 22, 2009). Assuming, *arguendo*, the United States had any burden to disclose public records about BOP policies, the request is unlikely to lead to information that would significantly alter the quantum of proof in the defendant's favor, as he has failed to articulate how the administrative rules and guidelines concerning mundane aspects of penology are material to the preparation of a defense or would lead to the discovery of possible mitigation evidence concerning his background, his history or record, or the circumstances of his crime.

- Item 26: All documents, etc., relating to any communication between the defendant and the Warden of USP-TH following Sim's death:

The United States agrees to produce the requested materials to the extent that they are contained within the defendant's central file.

The United States objects to producing information regarding opinions expressed by the Warden of USP-TH regarding this case. If information concerning any such opinions exists, that information is not discoverable in accordance with Rule 16. Furthermore, the defendant has cited no authority which supports his right to discover any such opinions.

- Item 31: The number of homicides committed in United States Prisons (USPs) between January 1, 2004 and December 31, 2013; and

- Item 33: The number of homicides committed in SHUs in BOP facilities between January 1, 2004 and December, 31, 2013:

The United States agrees to provide information concerning homicides at USPs and BOP SHUs, but notes that the Intelligence Section of BOP's Correctional Programs Division, located in Washington, D.C., maintains a list of homicides committed at USPs and BOP SHUs from March 2005 to the present. The list reflects the initial reporting of the homicide event to the Intelligence Section by the BOP institution at issue. The list notes the name of the victim/s and suspect/s. The list may contain witness names. It should be noted that the list may not be complete and does not reflect information relating to any criminal charge/s or conviction/s which may have resulted from the homicide event.

- Item 35: All prison climate surveys:

The United States agrees to produce the Prison Climate Surveys which relate to those BOP facilities which have housed the defendant during the period of 2013 to the present.

The United States objects to the production of Prison Climate Surveys that relate to any BOP facility at which the defendant was never housed. This portion of the request is overbroad,

and burdensome.  The defendant seeks the production of surveys pertaining to 119 BOP facilities which never housed the defendant from 1930, the year BOP was formed, to 2012, the year before he entered into BOP custody.  The defendant has failed to articulate how this information is material to the preparation of a defense or would lead to the discovery of any possible mitigation evidence concerning his background, his history or record, or the circumstances of his crime.

- Item 55:  All documents reflecting staffing and staff assignments at USP-TH between December 1, 2013 and December 31, 2013:

As noted in response to Item 166 (Section B above), the United States agrees to produce the names and assignments of all officers, staff, and others working at USP-TH during the period of December 25 to 27, 2013.

The United States objects to the production of staff assignment rosters and attendance records for dates beyond this time period because the defendant has failed to articulate how this information, which pre-dates the Sim murder, is either material to the preparation of a defense or would lead to the discovery of any possible mitigation evidence concerning his background, his history or record, or the circumstances of his crime.

The United States objects to the production of documents "reflecting staffing" as vague and overbroad (contemplating immaterial and potentially privileged information).  By its very wording, this portion of the request could involve the production of pay stubs, tax records, or other documents concerning the employment, disciplinary history, or work conditions of any staff member at USP-TH.  The defendant has failed to articulate how this information is either material to the preparation of a defense or would lead to the discovery of any possible mitigation evidence concerning his background, his history or record, or the circumstances of his crime.

- Item 66:  All documents reflecting guidelines, policies, protocols or rules regarding the

conducting of rounds at THP-SHU prior to and including December 26, 2013; and

- Item 67:  All documents reflecting policies, guidelines, protocols governing cell searches, etc., at THP from the date THP opened to the present:

The United States agrees to produce the guidelines, policies, protocols, and rules regarding the conducting of rounds at THP-SHU in effect on December 26, 3013, the date of the Sim murder.

The United States agrees to produce the guidelines, policies, protocols, and rules governing cell searchers that were in effect on December 26, 2013, the date of the Sim murder.

The United States agrees to produce institutional supplements in effect on December 26, 2013, the date of the Sim murder, enacting the policies set forth in 28 CFR § 552.14 relating to the search of inmate housing areas.

To the extent that the defendant requests the production of historical documents unrelated to this murder, in terms of time or subject matter, the United States objects to these requests as vague, burdensome, overbroad (contemplating immaterial and potentially privileged information). The term "documents reflecting" is vague.  Further, Rogers has failed to articulate how policies that were in effect prior to the defendant's confinement at THP-SHU or after the Sim's murder are material to the preparation of a defense or would lead to the discovery of possible mitigation evidence concerning his background, his history or record, or the circumstances of his crime.

- Item 100:  All documents reflecting policies for single-celling or double-celling inmates in SHUs.

The United States agrees to disclose the BOP Program Statements and local supplements concerning SHU housing in effect on December 26, 2013, subject to a request for an appropriate protective order.  The United States will likewise disclose the pertinent CNA audit, under the same conditions.

The United States objects to this request as it is vague, burdensome and overbroad.  The request is vague as to documents dating to the inception of BOP in 1930, and as to documents "reflecting" housing policies, which would necessarily embrace the individual housing records of every inmate ever assigned to a SHU over the last 87 years.  The proposed fishing expedition is unlikely to lead to information that would significantly alter the quantum of proof in Rogers' favor, as extensive documentary proof of almost a century's worth of housing records for over 100 prisons will not exculpate Rogers or lead to any possible mitigation evidence concerning the background, his history or record, or the circumstances of his crime.

- Item 102:  All documents regarding first responder training provided to institutional staff at THP from January 1, 2010, through December 31, 2014:

The United States agrees to disclose the first responder slide show provided to USP-TH staff in 2013.

The United States objects to the remainder of this request as it sis vague, burdensome and overbroad.  It is vague and overbroad in that it fails to identify any particular category of targeted material, and appears to encompass every individual training record of every employee who worked at USP-TH for five years, of which the defendant was present for only six months.  Rogers fails to show how the training records of employees he never encountered could bear on his case.  Indeed, given the nature of the injuries he inflicted, the defendant appears hard pressed to demonstrate the materiality of first responder training received by anyone in the prison.  The defendant inflicted seven stab wounds to Sim's chest, which resulted in multiple perforations of the pericardium, two penetrating wounds to the anterior base of the heart, one perforation of the right basilar ventricle, one the pulmonary artery, and one the ascending aorta.  Ex. 8.  Given the obviously mortal nature of an attack that resulted in multiple perforations of the heart and major

blood vessels, the defendant cannot show that anyone short of a thoracic surgeon could have intervened on Sim's behalf. This proposed fishing expedition through a half decade of training records is unlikely to lead to information that would significantly alter the quantum of proof in the defendant's favor, as there is no indication that evidence about the capacity of correctional employees to provide even the most advanced first aid, is material to the preparation of a defense and, therefore, discoverable under Rule 16. Likewise, the defendant has failed to articulate how any such information would lead to the discovery of possible mitigation evidence concerning his background, history or record, or the circumstances of his crime.

- Item 103: All documents reflecting mental health training for THP staff from January 1, 2013, to present:

The United States agrees to disclose the refresher mental health slide show provided to USP-TH staff in 2013.

The United States objects to the remainder of this request as it is vague, burdensome, overbroad. It is vague and overbroad in that it fails to identify any particular category of targeted material, and appears to encompass every individual training record of every employee who worked at USP-TH for the last four years, though the defendant murdered Sim in December of the first year of the targeted period. The defendant fails to show how the training records of employees he never encountered, especially as to education they received after the homicide, could possibly bear on his case. While the defendant has indicated that he made complaints to the prison's mental health services about his alleged depression, he makes no effort to show how the training given to the non-professional staff would impact his case, if he believes that the institution's licensed psychologists provided inadequate care. This proposed fishing expedition through years of post hoc training records, with a concomitant burden for ongoing updates, is unlikely to lead to

information that would significantly alter the quantum of proof in the defendant's favor. He has failed to articulate how evidence, however vast, that correctional employees could detect or treat mental illness, is material to the preparation of a defense and, therefore, discoverable under Rule 16. Likewise, the defendant has failed to articulate how any such information would lead to the discovery of possible mitigation evidence concerning his background, history or record, or the circumstances of his crime.

- Item 123: All documents reflecting the menu of food served in THP-SHU for the period of December 24, 2013 to December 26, 2013:

The United States agrees to produce BOP's national menu for the period of December 24, 2013 to December 26, 2017. Upon information and belief, USP-TH does not maintain a record of meals served in the SHU.

- Item 124: All records including, but not limited to, handwritten notes, etc., for any medical provider seeing, etc., the defendant while in federal custody:

The United States agrees to produce records relating to medical treatment provided to Rogers in BOP custody to the extent that such records are contained within his BOP central file.

The United States objects to providing records that are in the possession, custody or control of an entity that is not a part of the prosecution team, such as the U.S. Marshal's Service. The government is under no obligation to obtain and produce any such information. *See Wilson*, 237 F.3d at 832; *see also Buckley*, 586 F.2d at 506.

- Item 126: All mental health records of Thomas Sim.

The United States agrees to produce mental health records of Thomas Sim to the extent that any such records are contained within his BOP central file.

The United States objects to providing mental health records that are in the possession,

20

custody or control of an entity that is not part of the prosecution team, such as the U.S. Marshal's Service. The government is under no obligation to obtain and produce any such information. *See Wilson*, 237 F.3d at 832; *see also Buckley*, 586 F.2d at 506.

- Item 128: All documents reflecting BOP or USP-TH policy for the diagnosis and/or documentation of mental health conditions and the provision of mental health treatment for the period of January 1, 2013 to December 31, 2013;

- Item 129: All documents reflecting guidelines or policies for the use of tele-psychiatry for the year 2013 at BOP and USP-TH; and

- Item 140: All documents relating to the types of psychiatric medicine available at USP-TH for the period of January 1, 2013 to present including, without limitation, any documents relating to THP formulary medications.

The United States interprets request 128 as one for the program statements and institutional supplements concerning the provision of mental health care at USP-TH. To the extent that those documents are not publicly available on line, the United States has no objection to this request as it relates to the period of July 25, 2013 to December 31, 2013.

The United States interprets request 129 as one for the program statements and institutional supplements concerning the provision of tele-psychiatry at USP-TH. To the extent that those documents are not publicly available on line, the United States has no objection to this request and will provide documents pertaining to the time period of July 25, 2013 to December 2013.

The United States interprets request 140 as one for a list of formulary of mental health medications available for care at USP-TH. To the extent this information is not publicly available on line, the United States has no objection to this request and will provide the requested documents pertaining to the time period of July 25, 2013 to the present.

To the extent that these requests concerns some broader, indefinable group of documents, embraced by the defendant's use of the phrases "any and all documents reflecting BOP or THP

guidelines or policy" and "documents relating to the types of psychiatric medication" or relates to

a time period outside of July 25, 2013 to December 31, 2013, the United States objects to them as

vague, overbroad, and burdensome. The terminology used by the defendant in these requests could

lead to the production of the presumptively privileged and private records concerning mental

health treatment provided to an inmate wholly unrelated to this case. The defendant fails to

articulate how the disclosure of a limitless quantity of documents about any prisoner at any BOP

facility who received mental health treatment or used tele-psychiatry in 2013 is material to the

preparation of a defense and, therefore, discoverable under Rule 16. Likewise, he has failed to

articulate how this information would lead to the discovery of possible mitigation evidence

concerning his background, his history or record, or the circumstances of his crime.

- Item 145: All documents reflecting psychologist and psychiatrist staffing for BOP for January 1, 2013, to present; and

- Item 146: All documents reflecting THP staffing of psychologist and psychiatrist positions for January 1, 2013, to the present.

The United States agrees to disclose the number of authorized psychiatric and

psychological positions at USP-TH during 2013.

The United States objects to the remainder of these requests as they are vague, burdensome,

and overbroad. The term "documents reflecting" is vague and undefined. The requests seek

staffing information about other 120 facilities at BOP, despite the fact that they have no connection

to this case or defendant. A request that contemplates the treatment records of likely every inmate

at BOP, or even USP-TH, is unlikely to lead to information that would significantly alter the

quantum of proof in the defendant's favor. Rogers has failed to articulate how this information is

material to the preparation of his defense and, therefore, discoverable under Rule 16. Likewise,

22

he has failed to articulate how any such information would lead to the discovery of possible mitigation evidence concerning his background, history or record, or the circumstances of his crime.

- Item 149:  Listing of all medical and mental health staff at FCC-TH for the period of June 1, 2013 to present.

The United States agrees to provide the names of those medical and mental health staff members who have had contact with the defendant during the period of July 25, 2013, which is the date that the defendant entered into custody at USP-TH, to the present.

The United States objects to providing information concerning the time period prior to July 25, 2013, or to providing information about medical and mental health staff members who have had no contact with the defendant.  The defendant has failed to show how this information is material to the preparation of a defense and, therefore, discoverable under Rule 16.  Likewise, this information will not lead to the discovery of any possible mitigation evidence concerning the defendant, his history or record, or the circumstances of his crime.

- Item 151:  All documents relating to mental health programming options available at THP for the period of June 1, 2013 to the present;

- Item 152:  All documents reflecting medical and/or mental health guidelines, policies, or protocols in place at FCC-TH during the period of June 1, 2013 to the present; and

- Item 153:  All documents relating to response times to requests and responses for psychological/psychiatric services at THP and the BOP between the period of June 1, 2013 and the present.

For the period of July 25, 2013 to December 26, 2013, the United States agrees to provide 1) documents relating to mental health programming options available at THP, 2) documents reflecting medical and/or mental health guidelines, etc. in place at FCC-TH, and 3) information about response times to requests for psychological/psychiatric services at THP.

The United States objects to requests for the production of documents pertaining to periods before July 25, 2013 and after December 26, 2013. They are overbroad and seek immaterial information that will not alter the quantum of proof in Rogers' favor. He has not shown how information about the periods before his incarceration at THP or after Sim's murder are material to the preparation of a defense and, therefore, discoverable under Rule 16. Likewise, he has failed to articulate how this information would lead to the discovery of possible mitigation evidence concerning his background, his history or record, or the circumstances of his crime.

The United States objects to the production of records relating to response times to requests for psychological/psychiatric services at BOP, generally, for any time period as overbroad. The defendant has failed to articulate how information concerning response times at institutions at which he was never housed is material to the preparation of a defense or mitigating of possible punishment.

- Item 155: The entire personnel files of twenty-two named individuals.

The United States agrees to produce information contained within the personnel files of the twenty-two individuals named in the defendant's motion to the extent that such production is necessary to comply with the requirements of *Brady*, *Giglio*, and the Jencks Act.

The United States objects to the request for production of any other information contained within the personnel files of the named individuals as it is overbroad and it seeks immaterial and potentially privileged information.

- Items 156: All reports, transcripts, or other documents in the possession, custody, or control of any government agency of any investigation regarding Thomas Sim.

To the extent that the this request seeks production of incident reports relating to an investigation regarding Thomas Sim, the United States agrees to produce any such reports, which

24

pertain to any investigation regarding Sim during his adult years, that are contained within Sim's BOP central file or in the possession, custody, and control of a government agency involved in the investigation of the his murder.

To the extent that this request seeks production of reports, which pertain to any investigation regarding Sim prior to his attaining the age of 18, the United States objects on the grounds that this request seeks privileged information. Furthermore, any such information pertains to a time period that is too remote and, therefore, immaterial to the preparation of a defense and not discoverable under Rule 16. It, likewise, will not lead to the discovery of any possible mitigation evidence concerning the defendant's background, his history or record, or the circumstances of his crime.

To the extent this request seeks production of incident reports or other documents in the possession of a government agency not involved in the investigation of the Sim homicide, the United States objects on the grounds that the information is not within its possession, custody or control. *See Wilson*, 237 F.3d at 832. The United States is not required to cull the files of any such agency. *Id.* Instead, the defendant may seek to obtain this information through the issuance of subpoenas subject to applicable regulations under *Tougy v. Ragen*, 340 U.S. 462 (1951).

The United States further objects to the general request for the production of "other documents" as vague and overbroad. It also seeks immaterial and potentially privileged information. The United States makes the same objection to the production of reports beyond the incident reports previously described. Furthermore, to the extent that the reports or other documents are in the possession, custody, or control of a government agency not involved in the investigation of the Sim homicide, the United States objects to their production because, in

accordance with *Wilson*, the government is under no obligation to produce the same.

The United States objects to the production of transcripts in the possession, custody, or control of any government agency of any investigation referencing Sim on the grounds that the request is burdensome, overbroad, and vague. To the extent Rogers requests production of court transcripts, the government notes that any such document is presumably available to the public.

- Item 159: All documents relating to USP-TH's acceptance, designation, classification, and transportation of Thomas Sim.

Upon information and belief, BOP does not maintain records about the acceptance, etc. of individual inmates outside of their central file. Therefore, the United States agrees to this request, to the extent that the information is contained within Sim' BOP central file.

- Item 163: Any Administrative Detention Order referencing Thomas Sim; and

- Item 164: Any Disciplinary Segregation Orders referencing Thomas Sim.

Upon information and belief, BOP does not maintain records about administrative detention orders or disciplinary segregation orders of individual inmates outside of their central file. Therefore, the United States agrees to this request, to the extent that the information is contained within Sim' BOP central file.

- Item 165: Any photographs of Thomas Sim within the possession, custody, or control of the U.S. government.

The United States agrees to produce photos taken by government agencies involved in the investigation of the Sim murder which depict the victim's remains at the crime scene or at autopsy.

To the extent that the request seeks the production of any other photograph depicting Sim, the United States objects on the grounds that the request is vague, overbroad, and burdensome. Further, the defendant has failed to articulate how any photograph depicting Sim that was taken in

connection with an unrelated matter occurring prior to his murder is material to the preparation of a defense and, therefore, discoverable under Rule 16. Likewise, he has failed to articulate how such photographs would lead to the discovery of possible mitigation evidence concerning his background, his history or record, or the circumstances of his crime.

- Item 168: All information regarding policies concerning "planned response" to body alarm and/or other emergency situations in effect at USP-TH on December 26, 2013.

The United States agrees to provide the policy in effect on December 26, 2013 at USP-TH which pertained to the response of THP employees to body alarms and emergency situations.

The United States objects to the production of "information regarding" such polices as vague, overbroad, and burdensome.

- Item 169: All performance logs for all Associate Wardens and Captains assigned to USP-TH in the six months prior to December 26, 2013.

The United States agrees to provide information concerning Associate Wardens and Captains as necessary to comply with the requirements of *Brady, Giglio*, and the Jencks Act.

The United States objects to providing any further information because it is potentially privileged. Furthermore, the defendant has failed to articulate how the requested information is material to the preparation of the defense and, therefore, discoverable under Rule 16. Likewise, the defendant has failed to articulate how any such information would lead to the discovery of possible mitigation evidence concerning his background, history or record, or the circumstances of his crime.

- Item 170: Copies of the Institution Training File including the Office of Personnel File (OPF), training file, and background file for officers on duty during the shift ending on the morning of December 26, 2013.

The United States agrees to provide information concerning officers on duty during the

shift ending on the morning of December 26, 2013 as necessary to comply with the requirements of *Brady*, Giglio, and the Jencks Act.

The United States objects to providing further information because it is potentially privileged. Further, Rogers has failed to articulate how the requested information is material to the preparation of the defense and, therefore, discoverable under Rule 16. Likewise, the defendant has failed to articulate how any such information would lead to the discovery of possible mitigation evidence concerning his background, history or record, or the circumstances of his crime.

D.    Requests to which the government objects in toto

The United States reiterates its overbreadth objection applicable to many of the defendant's requests. As noted, Rogers was sentenced on June 26, 2013, and received into BOP custody at USP-TH on July 25, 2013. He was assigned to the USP-TH Special Housing Unit ("SHU") on September 9, 2013. He murdered Sim on December 26, 2013. Nonetheless, he repeatedly requests the production of materials created years, and sometimes decades, before or after his arrival at USP-TH and his killing Thomas Sim, less than a year later. For want of any justification of those timeframes, the United States objects that any such requests are overbroad in that they seek materials from periods with no apparent relationship to the defendant or his offense.

In addition, United States submits that requests for "any and all documents" contemplate nationwide searches of BOP's physical files, an overwhelming burden on an agency that operates more than 120 prisons, and has incarcerated hundreds of thousands of inmates. Any such requests would also necessitate the need for nation-wide staff email searches that would yield hundreds if not thousands of records with no demonstrable relationship to this case.

As to the individual requests to which it objects, the United States further argues as follows:

- Item 8: All correspondence, emails, notes, memoranda, or other documents between or among BOP personnel, FBI personnel, and/or DOJ personnel regarding the decision to seek the death penalty in this case;

- Item 9: All phone logs, calendar entries, datebooks, or other documents relating to conversations between or among BOP personnel, FBI personnel, and/or DOJ personnel regarding the decision to seek the death penalty in this case; and

- Item 10: Any drafts of the memorandum analyzing the justification for seeking the death penalty in this case located in discovery at Bates pages 000799-000805.

The United States objects to these requests as they seek immaterial and privileged information. The requested information is immaterial because it does not relate to the defendant's culpability or to the background, history or record of the defendant or the circumstances of his crime. Rather, it concerns only the internal deliberative processes of the U.S. government.

The deliberative process privilege protects against the disclosure of opinions, recommendations and deliberations regarding the process by which government decisions and policies are made. *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150 (1975). Courts have consistently held that internal, government-generated Protocol review materials are protected by the deliberative process, attorney-client, and work-product privileges. *See, e.g., In re United States*, 397 F.3d 274, 285 (5th Cir. 2005); *see also, e.g., Nadler v. United States Dept. of Justice*, 955 F.2d 1479, 1491 (11th Cir. 1992). Indeed, the Justice Department has successfully sought Supreme Court intervention to vacate an order compelling disclosure of Protocol review materials. *United States v. Bass*, 536 U.S. 862 (2002) (*per curiam*). The government's internal memoranda are also protected by work product privilege. *See United States v. Fernandez*, 231 F.3d 1240, 1247 (9th Cir. 2000); *United States v. Nguyen*, 928 F. Supp 1525, 1552 (D. Kan. 1996) (denying discovery of prosecution's death-penalty recommendation memo); *see also United States v. Nobles*, 422 U.S. 225, 236 (1975) (recognizing the applicability of the work product privilege to

criminal cases).[5]

- Item 14:  Any computer entries by BOP personnel relating to the death of Thomas Sim.

The United States objects to this request as vague, burdensome, and overbroad.  The request is vague, as "computer entries" has no meaning, but appears to embrace any keystroke on any computer with a nexus to the murder, even if it does not result in a record that names Sim or the defendant.  For instance, a related "entry" would include mundane records about the work schedules of the investigators assigned to this case and the housing rosters of the inmates subsequently assigned to the cell that Sim vacated upon his death.  The request also speaks to wholly derivative records like nationwide homicide statistics, propounded months and years after the killing.  The defendant makes this request without limitation to time or geography, and would apparently subject BOP to a search of all computer records, at every one of its facilities, since the day of the killing.  Indeed, any e-mail sent by a BOP employee, regardless of his/her involvement in or knowledge of this case, would fall within the purview of this request and require review.  There exists no systematic method for searching entries across the entire agency's computer system, based on its "relation" to the Sim homicide.  The proposed fishing expedition is unlikely to lead to information that would significantly alter the quantum of proof in the defendant's favor,

---

[5]  The United States anticipates that the defendant will claim the government waived these claims of privilege when one of its employees disclosed to him a copy of a memorandum prepared as part of the death penalty protocol process.  The employee's act facially violated Department of Justice policy (see USAM § 9-10.050).  An improper disclosure does not undermine the privilege.  *See Resolution Trust Corp. v. Dean*, 813 F. Supp. 1426, 1429 (D. Ariz. 1993) (holding that unauthorized disclosure of internal memo subject to strict confidentiality restrictions did not waive attorney-client privilege); *In re Dayco Corp. Derivative Sec. Litig*., 102 F.R.D. 468, 470 (S.D.Ohio 1984) (holding that privilege was not waived for unauthorized disclosure of employee's diary maintained at direction of outside counsel where employer limited access to the diary to senior executives, counsel and accountants).  To the extent the disclosed memo may have lost its protected status, the government has never waived its privilege on a broader basis.

as he has not established any indication that individual records within a vast computer system might reflect on his culpability and, therefore, be material to the preparation of a defense under Rule 16. Likewise, he has not articulated how such information would lead to the discovery of possible mitigation evidence about his background, history or record, or the circumstances of his crime.

- Item 16: Any information regarding the author and date of a handwritten note alleging that Mr. Rogers made a statement threatening a guard found at pages 000490 and 000491 of discovery.

The United States objects to this request as vague, burdensome, overbroad. The defendant makes this request without limitation and would apparently subject the BOP to a search of all records, regarding information about a single unidentified individual and a single day in its history. Indeed, one can only guess what information Rogers seeks regarding the "date" of a handwritten note. Further, if the author of the note were an inmate, the term "any information" would require production of any and all information in BOP's control regarding that person. There exists no systematic method for searching all information concerning a person or day at BOP. The proposed fishing expedition is unlikely to lead to information that would significantly alter the quantum of proof in the defendant's favor, as he has not shown that records about a person or a day might reflect on his culpability and, therefore, be discoverable under Rule 16. Likewise, the defendant has failed to articulate how such information would lead to the discovery of possible mitigation evidence about his background, history or record, or the circumstances of his crime.

- Item 28: BOP Performance Budget Congressional Submissions for fiscal years 2013 to 2017.

The United States objects to this request, as it is burdensome and seeks immaterial information. The defendant seeks documents maintained on the Department of Justice's website.

*See* https://www.justice.gov/about/budget-and-performance.  The United States has no obligation to produce publicly available information in discovery.  *See Shields*, 789 F.3d at 747; *see also Smith*, 2009 WL 3584944, *8.  Assuming, *arguendo*, the United States had a burden to disclose BOP budget documents, the request is unlikely to lead to information that would significantly alter the quantum of proof in the defendant's favor, as there is no indication that BOP's budget submission, especially those made years after the murder, could possibly reflect on the offender or his offense.  In short, the defendant fails to articulate how the desired financial disclosures, the overwhelming majority of which involve facilities he has never entered, is material to the preparation of a defense and, therefore, discoverable under Rule 16.  Likewise, the defendant has failed to articulate how any such information would lead to the discovery of possible mitigation evidence concerning his background, history or record, or the circumstances of his crime.

- Item 29:  A list of the number of series 100 incidents of assaults on inmates as counts and rates per year at each United States Prison between January 1, 2009, and December 31, 2013.

- Item 32:  A list of the number of series 100 incidents of assaults on inmates as counts and rates per year in each Special Housing Unit in BOP facilities each year between January 1, 2004, and December 31, 2013.

The United States objects that these requests are overbroad and they seek immaterial information.  They are overbroad in that Rogers makes them in regard to offenses at 109 separate prisons, though he has only ever been incarcerated federally in FCC-Terre Haute.  Further, he seeks to isolate those series 100 offenses that involved inmate-on-inmate assaults, though the listed offenses contemplate a broad assortment of conduct that might, or might not, include such offenses as classified by BOP:  100 killing, 101 assaulting any person, 102 escape, 103 setting a fire 104 possession of a weapon, 105 rioting, 106 encouraging others to riot, 107 taking hostages, 108 possession of a hazardous tool, 110 refusing drug testing, 111 drug smuggling, 112 drug use, 113

drug possession, 114 Sexual assault of any person, involving non-consensual touching by force or threat of force, 115 destroying/disposing any item during a search, 196 use of the mail for an illegal purpose, 197 use of the telephone for an illegal purpose, 198 Interfering with staff member in the performance of duties most like another greatest severity prohibited act, 199 conduct which disrupts or interferes with the security or orderly running of the institution or the Bureau of Prisons most like another Greatest severity prohibited act. *See* Ex. 1 (fully enumerating offenses).

BOP does not maintain disciplinary records by offense level. To identify the records at issue, BOP would have to query its computers for the universe of series 100 incidents. The records themselves are maintained at BOP's individual institutions (to the extent they involve inmates in custody), or at storage facilities (for those who have left custody). Once BOP had identified the pertinent records, staff would have to review them, individually, to determine if they involved an assault and then if they involved an inmate-on-inmate assault, as opposed to inmate-on-staff or inmate-on-visitor. (Rogers does not state whether he seeks this data in regard to sustained findings or accusations alone, rendering the request vague.) The factual determinations would require a document-by-document review of each record, as sustained findings do not always reflect the full breadth of an inmate's sanctioned conduct, and charges like 100, 101, and 103 could involve threats of force to inmates, staff or others. Only after identifying those reports that involved inmate-on-inmate assaults, could BOP calculate the statistics the defendant purports to seek.

The statistics are, in any event, a red herring. The defendant has never indicated that he committed this crime as part of some larger phenomenon. Certainly, there exists no reason to suspect that the defendant's intent in fatally stabbing Sim was informed by the rate of inmate assaults in the immediately adjacent cell at USP-TH, much violence rates at other institutions. In

short, the request is unlikely to lead to information that would significantly alter the quantum of proof in the defendant's favor, as there is no indication that the conduct of any other inmate, or the management of any other institution, affected the defendant's culpability or possible mitigation.

- Item 30:  The Correctional Services Significant Incident Data for incidents of assaults on inmates as counts and rates per 5,000 inmates for all United States Prisons for each year between January 1, 2009, and December 31, 2013.

Unlike items 29 and 32, upon information and belief, BOP can generate the data requested in item 30 from existing, automated sources.  However, the United States objects to this request: it is overbroad and it seeks immaterial information.  Rogers makes this request in regard to offenses at 109 separate prisons, but he has only ever been incarcerated, federally, in USP-TH.  Moreover, the requested statistics are a red herring.  Rogers provides no reason to believe that his killing of Sim had any relationship to inmate assaults at any other institution, especially those post-dating his crime.  The requested data is unlikely to lead to information that would significantly alter the quantum of proof in the defendant's favor, as there is no indication that the conduct of any other inmate, or the management of any other institution, is material to the preparation of a defendant and, therefore, discoverable under Rule 16.  Likewise, the defendant has failed to articulate how any such information would lead to the discovery of possible mitigation evidence.

- Item 34:  The Federal BOP's State of the Bureau Report for the years 2008- 2014.

This request seeks documents maintained on BOP's website.  *See* https://www.bop.gov/resources/pdfs/sob10.pdf;  https://www.bop.gov/resources/pdfs/sob09.pdf; https://www.bop.gov/resources/pdfs/sob08.pdf;  The United States objects to this request because it has no obligation to produce publicly available information in discovery.  *See Shields*, 789 F.3d at 747.

The United States cannot produce reports for the year 2011 to 2014 because, upon information and belief, BOP ceased publication of this report in 2010.

- Item 36: All documents relating to reports of Code 101 violations within the BOP during the period of January 1, 2009 and December 31, 2013, including graphs, supporting data, and supporting documentation; and

- Item 37: All documents relating to reports of Code 104 violations within the BOP during the period of January 1, 2009 and December 31, 2013, including graphs, supporting data, and supporting documentation.

The United States objects to these requests as they are vague, burdensome, and overbroad. The defendant makes this request in regard to all Code 101 (assault) and 104 (weapon possession) violations, committed by all inmates at all of BOP's 121 facilities for a five year period, though he has only ever been incarcerated federally in TUSP-TH. As noted, upon information and belief, BOP does not maintain disciplinary records by offense level. Just to identify the physical records at issue, BOP would have to query its computers for the universe of potential records, which could be kept at any of BOP's institutions or storage facilities. Once BOP had identified all disciplinary records for the overbroad time period requested, staff would have to review them, individually to determine which involved reports of all Code 101 and 104 violations. Having identified the vast galaxy of potential incidents, BOP would then have to identify all documents "relating" to those assaults, as the defendant does not simply seek disciplinary reports. Instead, his request reaches everything from policy manuals to individual housing assignments, work assignments, visiting privileges, and phone privileges, to say nothing of separatee status. The contemplated records are irrelevant and immaterial. The defendant has never indicated that this murder has a connection to another offense, much less an offense completely unknown to him that occurred before he was a federal inmate, in a prison he has never entered. In short, the voluminous information the

defendant requests bears no rational relationship to his crime, and the proposed fishing expedition is unlikely to lead to information that would significantly alter the quantum of proof in the defendant's favor, as there is no indication that the conduct of any other inmate, or the management of any other institution, is material to the preparation of a defense and, therefore, discoverable under Rule 16. Likewise, the defendant has failed to articulate how any such information would lead to the discovery of possible mitigation evidence concerning his background, history or record, or the circumstances of his crime.

- Item 38: All BOP After-Action Reports prepared from January 1, 2009 to December 31, 2013.

The request is burdensome and overbroad. The defendant appears to abandon any pretense of seeking information about criminal activity in favor of a foray through five years of records concerning BOP's 121 facilities though he has only ever been incarcerated federally at USP-TH. The contemplated records are irrelevant and immaterial. Rogers has never indicated this murder has a connection to another incident that was the subject of an After-Action Report that occurred before he was a federal inmate or in a prison he has never entered. He has not shown or even suggested that the requested material might lead to information that would significantly alter the quantum of proof in his favor, as there is no indication that the conduct of any other inmate, or the management of any other institution, is material to the preparation of a defense and, therefore, discoverable under Rule 16. Likewise, the defendant has failed to articulate how any such information would lead to the discovery of possible mitigation evidence concerning his background, history or record, or the circumstances of his crime.

- Item 39: All documents relating to BOP's mission critical post initiative, without limitation:

The United States objects to this request as vague, burdensome, and overbroad. The

initiative was a response to budgetary concerns in 2004:

> As part of its overall cost-reduction strategy, in 2005, BOP implemented the mission critical post initiative. The objectives . . . were to (1) establish posts that were deemed essential for the safe and secure operations of is facilities and would be vacated only under rare circumstances, (2) reduce the reliance by the correctional services department on non-correctional services staff, and (3) substantially reduce overtime costs. . . . . BOP identified standard correctional services posts for each security level . . . . Correctional services posts deemed no mission critical, such as front gate or chapel officers were eliminated.

Ex. 4 at 15-16 (Bureau of Prisons, *Written Policies on Lateral Transfers and Assessments of Temporary Assignments Needed* (2009)).

Thus, Rogers seeks data about a 13-year-old policy, adopted four years before he entered USP-TH. The defendant murdered Sim in their shared cell between regular rounds by a unit correctional officer. Records regarding personnel adjustments to security posts outside his unit, in prisons where he was not housed, are irrelevant and immaterial. He has never indicated that this murder was facilitated by a security lapse, much less by a reduction in personnel in non-essential positions that were completely unknown to him, occurred long before he was a federal inmate, and largely affected the 120 other prisons where he was not incarcerated. But the defendant wants far more than the policy, he seeks "any and all documents relating" to it, which conceivably includes BOP accounting records, the pay records of individual employees, and the post orders for tens of thousands of positions throughout the nation. Even the specific documents he purports to desire, concerning the promulgation and execution of the policy, would require vast searches through e-mail records and bureaucratic minutiae. The request is patently vague and overbroad. Moreover, it bears no rational relationship to the defendant or his crime and is unlikely to lead to information that would significantly alter the quantum of proof in his favor, as there is no indication that the conduct of any other inmate, or the management of any other institution, is material to the

preparation of a defense and, therefore, discoverable under Rule 16.  Likewise, the defendant has failed to articulate how any such information would lead to the discovery of possible mitigation evidence concerning his background, history or record, or the circumstances of his crime.

- Item 40:  All documents relating to BOP or THP policies, practices, guidelines or procedures for conducting mass interviews.

The United States objects to this request as vague, burdensome, and overbroad.  The defendant requests, without limitation to time or geography, policy documents concerning a BOP investigative technique.  Whether those policies contained fatal flaws, or were perfectly conceived but imperfectly executed during the investigation of Sim's murder, the defendant still could not demonstrate an impact on his case.  Certainly, he cannot show that policies from 1930, the year of BOP's founding, to the present, bear any relationship to his commission of the crime.  The request is unlikely to lead to information that would significantly alter the quantum of proof in the defendant's favor, as there is no indication that the conduct of any other inmate, or the management of any other institution, is material to the preparation of the defense and, therefore, discoverable under Rule 16.  Likewise, the defendant has failed to articulate how any such information would lead to the discovery of possible mitigation evidence concerning his background, history or record, or the circumstances of his crime.

- Item 41:  All documents relating to the U.S. General Accountability Office's February 2009 Report to Congressional Requesters titled, "Bureau of Prisons: Written Policies on Lateral Transfers and Assessment of Temporary Assignments Needed" (GAO-09-141).

The United States objects to this request as vague, burdensome, and overbroad.  The government has attached the subject report at Ex 4.  It is publicly available at https://www.gao.gov/assets/290/286441.pdf.  But Rogers vaguely seeks any other documents that relate to this eight-year-old report, which concerns a perceived policy failure stemming from a

lack of written guidelines for lateral staff transfers at BOP. The instant murder bears no

discernable relationship to BOP staffing policy. Moreover, Rogers does not hint how this murder

might relate to documentation "relating to" a GAO report issued four years before the killing. In

any event, GAO is not part of the investigative team, and Rogers should not use his discovery

request as an end run around his obligations to subpoena the desired information from that agency,

which has an obvious advantage over BOP in determining what documents its authors relied upon.

In any event, the request is unlikely to lead to information that would significantly alter the

quantum of proof in the defendant's favor, as he has failed to articulate how information

concerning the conduct of any other inmate, or the management of any other institution, is material

to the preparation of the defense and, therefore, discoverable under Rule 16. Likewise, the

defendant has failed to articulate how any such information would lead to the discovery of possible

mitigation evidence concerning his background, history or record, or the circumstances of his

crime.

- Item 42: All documents relating to the average length of SHU incarceration for each BOP facility for the time period January 1, 2009, through December 31, 2013; and

- Item 43: All documents relating to BOP and/or THP policies, procedures, practices, or guidelines regarding SHU housing decisions for inmates in disciplinary segregation or administrative detention for the time period January 1, 2009, through December 31, 2013.

The United States objects to these requests as vague, burdensome, and overbroad. Upon

information and belief, BOP does not maintain statistics concerning the average length of SHU

stay by facility. To propound such statistics, BOP would have to create software to query its data

for the requested time frame. Moreover, given the defendant's desire for every documented related

to those statistics and every document relating to policies and procedures for SHU housing, BOP

could not comply without surrendering the housing records and disciplinary records of every

inmate who entered a SHU, in each of its 121 facilities, during a five-year period. In short, the defendant seeks voluminous documentation of SHU commitments concerning thousands of inmates he does not know, who served time in institutions he has never entered. The defendant may argue in mitigation that he murdered Sim under psychological stress engendered by the conditions of his SHU custody, but the length of stays experienced by other inmates, at other institutions, during other periods of time, will not make that assertion and more or less likely. Likewise, the reason for the defendant's commitment to SHU is not subject to meaningful dispute. He was placed there at his own request for his protection. Accordingly, the requests for a massive fishing expedition through virtually every record concerning the operation of a BOP SHU for a five-year period is unlikely to lead to information that would significantly alter the quantum of proof in the defendant's favor, as there is no indication that the conduct of any other inmate, or the management of any other institution, is material to the preparation of the defense and, therefore, discoverable under Rule 16. Likewise, the defendant has failed to articulate how any such information would lead to the discovery of possible mitigation evidence concerning his background, history or record, or the circumstances of his crime.

- Item 44: All documents indicating that SHU housing may contribute to mental health conditions, including, but not limited to, depression, anxiety, or bipolar disorder.

The United States objects to this request as vague, burdensome, and overbroad. The request is vague in that it does not limit or define "mental health condition", which could range from anxiety to xenophobia. In any event, upon information and belief, BOP does not maintain records concerning the mental health impacts of SHU housing. BOP could only comply with this request by surrendering the presumptively private and privileged medical/mental health records of every inmate who had received a SHU assignment since the 1930 establishment of BOP. While

the defendant may intend to argue that the stresses of SHU confinement contributed to his decision to murder Sim, the experiences of other inmates, at other institutions, at other points in time, committed to SHU for different reasons, will not make that assertion and more or less likely. The defendant's wildly overbroad and burdensome request is unlikely to lead to information that would significantly alter the quantum of proof in his favor, as there is no indication that the conduct of any other inmate, or the management of any other institution, is material to the preparation of the defense and, therefore, discoverable under Rule 16. Likewise, the defendant has failed to articulate how any such information would lead to the discovery of possible mitigation evidence concerning his background, history or record, or the circumstances of his crime.

- Item 45: All documents reflecting training of BOP staff regarding policies and procedures for supervising inmates in the SHU prior to and including December 26, 2013.

The United States objects to this request as it is vague, burdensome, and overbroad. To comply with the defendant's vague request, BOP would have to identify and generate the training records of every employee in the 87-year history of the agency. Assuming BOP could complete such a task, it remains unclear how such an untold quantity of material, from staff members the defendant never met, at facilities he never entered, at points in time before his birth might have any bearing on this case. The government has acknowledged that the defendant may attempt to attribute the murder to his housing assignment in SHU. But he can attempt to establish such a nexus based on his personal experience or BOP's policies for the unit that housed him, without the training record of every person ever employed by the federal prison system. The proposed fishing expedition is unlikely to lead to information that would significantly alter the quantum of proof in the defendant's favor, as there is no indication that SHU policies, generally, or the training of thousands of employees unknown to the defendant, is material to the preparation of the defense

41

and, therefore, discoverable under Rule 16.  Likewise, the defendant has failed to articulate how

any such information would lead to the discovery of possible mitigation evidence concerning his

background, history or record, or the circumstances of his crime.

- Item 46:   All documents relating to the CNA Analysis & Solutions December 2014 report titled, "Federal Bureau of Prisons: Special Housing Unit Review and Assessment," including, without limitation, any documents provided by BOP to CNA Analysis & Solutions.

The United States objects to this request as vague, burdensome, and overbroad.  The

request shifts to the United States the burden of determining what records it might have provided

to CNA, though the authors of the report are presumably in a better position to determine what

they received, and the defendant can obtain such information by way of subpoena.  CNA is not an

arm of the U.S. government or a member of the prosecutorial team.

The request vaguely seeks all records "relating to" the report, which speaks to prison

design, staff levels, staff training, disciplinary procedures, use of force, medical services, mental

health care, conditions of confinement, inmate classification procedures, operational requirements

for staff, and other BOP policies.  *See* Ex. 5 at 5-6.  Because the report speaks to inmate experiences

in SHU and general population, every record of every inmate who has ever entered a BOP facility

come within the ambit of the defendant's request as well.  Simply stated, virtually every document

in the possession of BOP appears to "relate to" the CNA report.  Beyond the infinite scope of the

request, it remains unclear how these documents would assist the defense.  As the United States

has repeatedly acknowledged, the defendant was in SHU custody when he murdered Sim, but if

the defendant wants to attribute his homicidal impulses to the conditions of his confinement, he

should do so on the basis of his personal experience, without access to every record ever generated

by BOP.  As drafted, the request is nothing more than a proposal for a fishing expedition through

the entire archives of BOP, and one unlikely to lead to information that would significantly alter the quantum of proof in the defendant's favor, as there is no indication that the conduct of any other inmate, or the management of any other institution, is material to the preparation of the defense and, therefore, discoverable under Rule 16. Likewise, the defendant has failed to articulate how any such information would lead to the discovery of possible mitigation evidence concerning his background, history or record, or the circumstances of his crime.

- Item 47: All documents relating to the creation of the Reintegration Housing Unit (RHU) at Oakdale, Louisiana; and

- Item 48: All docu ments relating to the transition of FCI Otisville, New York to a Security Threat Group Drop-Out institution.

The United States objects to these requests as vague, burdensome, and overbroad. The requests seek all records related to the creation of far-flung prison units, which necessarily embrace a broad swath of clearly irrelevant material, such as uncatalogued correspondence, budgeting data, and, as requested, every BOP document concerning every inmate who was placed in the named facilities. Assuming BOP could generate the responsive documents, it remains unclear how a vast trove of records concerning areas of BOP that Rogers never entered, and inmates he has never encountered, might bear on this case. Again, the government acknowledges the likelihood the defendant will attempt to attribute the killing to his SHU custody, but he can establish such facts based on his experience at USP-TH, without obtaining the wholly irrelevant records of prisoners assigned to another facilities. The defendant's proposed fishing expedition is unlikely to lead to information that would significantly alter the quantum of proof in his favor, as there is no indication that the RHU, or its creation, is material to the preparation of the defense and, therefore, discoverable under Rule 16. Likewise, the defendant has failed to articulate how any such

information would lead to the discovery of possible mitigation evidence concerning his background, history or record, or the circumstances of his crime.

- Item 49:  All documents relating to BOP guidelines for assessing, etc. an inmate as a gang/STG member, etc. for the period of January 1, 2009 and December 31, 2013.

The United States objects to this request as vague, burdensome, and overbroad.  The defendant murdered Sim while the two men were alone together in their shared prison cell.  There is no evidence to suggest that the defendant's actions were related to either gangs, in general, or STG, in particular.  The defendant has failed to articulate how information concerning BOP's assessment, classification, and validation of an inmate as a gang/STG member is material to the preparation of a defense and, therefore, discoverable under Rule 16.  Likewise, he has failed to articulate how any such information would lead to the discovery of possible mitigation evidence concerning his background, history or record, or the circumstances of his crime.  Furthermore, the defendant requests information that largely relates to a period of time when he was not confined at BOP.  As previously stated, the defendant entered BOP custody on July 25, 2013.  He has failed to show how information dating back to 2009, some four-and-one-half years prior to his acceptance into BOP custody, is material to the preparation of a defense or potentially mitigating of the possible punishment.

- Item 50:  All documents relating to referrals of inmate criminal matters for investigation that result in either investigation by an outside agency or prosecution.

The United States objects to this request as vague, burdensome, and overbroad.  The request for documents "relating to" embraces every investigative record generated by BOP or a sister DOJ agency, concerning every referral for prosecution since 1930, including those to agencies that are not part of the prosecutorial team in this case.  Assuming there existed any

possible way to even identify the cases at issue, the sweep of the request is limitless and immaterial to this case. The request is nothing more than a proposal for a fishing expedition unlikely to lead to information that would significantly alter the quantum of proof in the defendant's favor, as he has failed to articulate how the requested information is material to the preparation of a defense and, therefore, discoverable under Rule 16. Likewise, the defendant has failed to articulate how any such information would lead to the discovery of possible mitigation evidence concerning his background, history or record, or the circumstances of his crime.

- Item 51: All documents relating to the amount of time from a request for transfer for inmates who are in SHU placement due to protective custody status for the time period January 1, 2004, through December 31, 2013.

The United States objects to this request as vague, burdensome, and overbroad. To comply with the defendant's request for documents "relating to" transfers, BOP must identify and generate ten years of records for individual inmate transfers 120 institutions the defendant had never entered. The defendant fails to demonstrate how those records, much less proof of a lag in requested transfers at facilities he has never entered, at points in time irrelevant to this homicide, might bear on this case. The proposed fishing expedition is unlikely to lead to information that would significantly alter the quantum of proof in the defendant's favor, as he has failed to articulate how the requested information is material to the preparation of the defense and, therefore, discoverable under Rule 16. Likewise, the defendant has failed to articulate how any such information would lead to the discovery of possible mitigation evidence concerning his background, history or record, or the circumstances of his crime.

- Item 52: All documents relating to the philosophy, practices, and activities of the Soldiers of Aryan Culture or SAC in the BOP without limitation.

The United States objects to this request as vague, burdensome, and overbroad. The

request necessarily embraces every investigative record generated by BOP concerning every confirmed or suspected members of SAC at any point in time and at any one of 121 federal penal facilities. Moreover, the requested disclosures would pose extreme risks to BOP inmates. To maintain institutional security in the face of security threat groups, BOP gathers information from inmates. Revelation of the information, and the information-gathering techniques, could lead to violence against the informants and undermine BOP's intelligence gathering apparatus. This request does not merely seek the intelligence gathering information of BOP components nationwide, but would require the individual disciplinary records of SAC members, associates and affiliates. Assuming there existed any possible way to identify these documents, the request seeks immaterial data. The defendant fails to indicate that he has ever had contact with more than a handful of SAC members at USP-TH. As such, the defendant provides no basis for concluding that an untold volume of records concerning the behavior of far-flung strangers to him might lead to information that would significantly alter the quantum of proof in his favor. He has failed to articulate how the requested information is material to the preparation of the defense and, therefore, discoverable under Rule 16. Likewise, the defendant has failed to articulate how any such information would lead to the discovery of possible mitigation evidence concerning his background, history or record, or the circumstances of his crime.

- Item 53:  All documents relating to the institutional conduct of BOP inmates who have been convicted of committing a murder in prison after the prison murder conviction, including, without limitation, those inmates who have been found by a capital jury to pose a future danger.

    The United States objects to this request as vague, burdensome, and overbroad. It embraces records concerning the conduct of inmates who committed murders in both federal and state custody. Identification of all such inmates would require a review of the criminal records of every

inmate who has entered BOP custody since 1930. The defendant does not make any specific

allegation about the purpose of his wide-ranging discovery request, leaving it to the United States

to imagine a use for data about unrelated offenders and their conduct in situations unfamiliar to

this defendant. Presumably, he will attempt to justify this expedition through 87 years of penal

history as necessary to educate some putative expert witness who will testify about rates of violent

offenses by convicted offenders. *See United States v. Taylor*, 814 F.3d 340, 355-61 (6th Cir. 2016)

(affirming the exclusion of testimony about rates of violence in prison to counter an allegation of

future dangerousness). The Northern District of West Virginia denied discovery for such a

purpose:

> there is no factual evidence presented which shows they are material to the defense.
> . . . While the information . . . may help [the defendant's] expert formulate more
> reliable opinions, no evidence has been produced to show that the expert's opinions
> would be favorable to Andrews if he had this information or would have led to the
> him [sic] being able to opine that the government's allegations were unsupported.

Ex. 6 (*United States v. Andrews*, No. 1:12-cr-00100-IMK-JSK, slip op. at 30 (W.D. W.Va. Feb.

13, 2014)); *see also* Ex. 7 (*United States v. Tsarnaev*, No. 1:13-10300-GAO, slip op. (D. Mass.

Nov. 27, 2013) (holding the defendant "essentially seeks access to the government's information

haystack because he is confident there are useful evidentiary needles to be found there. That is

simply not enough to trigger a disclosure obligation under Rule 16(a)(1)(E)(i)")). The defendant's

request proposes a massive fishing expedition unlikely to lead to information that would

significantly alter the quantum of proof in his favor, as there is no indication that untold quantities

of disciplinary data about unknown inmates in other institutions is material to the preparation of

the defense and, therefore, discoverable under Rule 16. Likewise, the defendant has failed to

articulate how any such information would lead to the discovery of possible mitigation evidence

concerning his background, history or record, or the circumstances of his crime.

- Item 54: All documents relating to the ability of USP-ADMAX (ADX) to safely and securely house BOP inmates who have been convicted of committing a murder or other violent act in prison:

The United States objects to this request as vague, burdensome, and overbroad. Because ADX exists largely to provide safe and secure housing for BOP inmates who have committed violent acts in prison, the request embraces most of the records concerning the prison, from its planning, to its staffing, budgeting, architecture, lighting, medical services, barber shop, and transportation plans, to say nothing of the disciplinary histories of all but a few inmates who have ever set foot in the institution. Though this fishing expedition would certainly result in the disclosure of a great deal of information, it does not appear that any of it would significantly alter the quantum of proof in the defendant's favor, he has failed to articulate how untold quantities of data about a prison this defendant has never laid eyes is material to the preparation of the defense and, therefore, discoverable under Rule 16. Likewise, the defendant has failed to articulate how any such information would lead to the discovery of possible mitigation evidence concerning his background, history or record, or the circumstances of his crime.

- Item 58: All documents reflecting the number of inmates in the THP SHU for January 1, 2009, through December 31, 2013, with indication whether the inmate was in the SHU for disciplinary segregation, protective custody, or other administrative detention.

The United States objects to this request as vague, burdensome, and overbroad. The defendant makes this request in regard to inmates housed in the TH- SHU years before he entered federal custody, much less the SHU. Furthermore, the request embraces the individual records of every inmate housed in SHU, as all such documents would reflect the number of prisoners in the unit. The requested information is immaterial, as the reason for other inmates' assignment to the

SHU, at the time of the Sim murder or before, is unlikely to lead to information that would significantly alter the quantum of proof in the defendant's favor. He simply fails to articulate how the housing assignment of any other inmate, individually or as a group, is material to the preparation of the defense and, therefore, discoverable under Rule 16. Likewise, the defendant has failed to articulate how any such information would lead to the discovery of possible mitigation evidence concerning his background, history or record, or the circumstances of his crime.

- Item 62: All documents relating to BOP investigation of inmate-on-inmate or inmate-on-staff violence at THP prior to December 27, 2013, without limitation.

The United States objects to this request as vague, burdensome, and overbroad. USP-TH opened its doors in 1940, 45 years before the defendant's birth, and 73 years before he murdered Sim. But the discovery request embraces individual records of every inmate ever investigated for any act of violence in the prison, no matter how *de minimus*. Upon information and belief, BOP does not log each of its investigations into acts of violence, and could only comply with this request by reviewing the central files of each inmate who ever served time at USP-TH. The requested information is entirely immaterial, as fruits of investigations conducted long ago, by people wholly uninvolved with this murder, is unlikely to lead to information that would significantly alter the quantum of proof in the defendant's favor. Even those acts of violence that occurred more recently have no apparent relationship to this case, as the defendant repeatedly stated that he murdered Sim simply to escape the need to serve his sentence with a cellmate. The defendant fails to articulate how information about any prior act of violence, or investigation thereof, is material to his defense and, therefore, discoverable under Rule 16. Likewise, the defendant has failed to articulate how any such information would lead to the discovery of possible mitigation evidence concerning his background, history or record, or the circumstances of his crime.

49

- Item 63: Any incident reports, reports of incidents, or other reports files, letters, memoranda, complaints, disciplinary reports, documents, or other information related to any incident where staff responded to the THP yard or an individual cell at THP from January 1, 2004, to December 31, 2013.

The United States objects to this request as it is vague, burdensome, and overbroad. It requests information that, upon information and belief, USP-TH does not log. In any event, staff respond to such locations for myriad reasons, from requests for psychological services to acts of gang violence. Given that many records responsive to the request would follow individual inmates, BOP would have to review the central files of each prisoner housed at USP-TH during pertinent time period, which, itself, lacks any meaningful nexus to this case, to identify the pertinent material. The defendant makes no effort to explain how staff responses to unrelated incidents could have the slightest bearing on his case. In short, the requested information is immaterial, as documentation of prior random events is unlikely to lead to evidence that would significantly alter the quantum of proof in his favor. The defendant fails to articulate how information concerning any historical staff response at USP-TH is material to the preparation of the defense and, therefore, discoverable under Rule 16. Likewise, the defendant has failed to articulate how any such information would lead to the discovery of possible mitigation evidence concerning his background, history or record, or the circumstances of his crime.

- Item 64: Any reports, files, letters, memoranda, complaints, disciplinary reports or information related to security problems involving the care and protection of inmates at USP-TH during the period of January 1, 2004 and December 31, 2013; and

- Item 65: All key indicator data or correctional services significant incident data for USP-TH for the period of January 1, 2009 and December 31, 2013.

The United States objects to these requests as vague, burdensome, and overbroad. As stated previously, the defendant murdered Sim while the two were alone together in their prison

cell.  As such, information concerning incidents where USP-TH staff responded to the yard or to the cell of unrelated individuals is immaterial to the preparation of a defense as the information is unlikely to alter the quantum of proof in the defendant's favor.  It is, therefore, not discoverable under Rule 16.  Furthermore, the defendant has failed to articulate how dating back to 2004, some nine-and-one-half years prior to his acceptance into custody at USP-TH is material to the preparation of a defense or potentially mitigating of the possible punishment.

- Item 68:   All housing unit log books, etc. for TH-SHU including, without limitation, documents relating to cell searches and unit activity, during the period of January 1, 2013 and December 31, 2013.

The United States objects to this request as vague, burdensome, and overbroad.  The defendant has failed to articulate how housing unit log books or documents relating to cell searches or unit activity occurring at any time, much less during the months prior to his incarceration in the SHU, is discoverable under Rule 16 because it is material to the preparation of a defense.  Likewise, this information will not lead to the discovery of mitigation evidence concerning the defendant, his history or record, or the circumstances of his crime.  If granted, this request would be burdensome upon BOP which would be required to cull through the central files of all inmates confined in the SHU in search of information concerning cell searches.  Finally, the term "unit activity" is vague.

- Item 73:   A description of all BOP referrals to the Office of the Inspector General of the Department of Justice for THP for each year between January 1, 2004, and December 31, 2013.

The United States objects to this request as vague, burdensome, and overbroad.  OIG's mission is to detect and deter waste, fraud, abuse, and misconduct in DOJ programs and personnel, and to promote economy and efficiency in Department operations.  Thus, the defendant seeks a trove of facially immaterial evidence in the form of a decade's worth of reports about BOP

employees who may, or may not, have defrauded the government or otherwise wasted its resources at USP-TH. There exists no allegation or reason to suspect that the defendant's murder of Sim had stemmed from waste, fraud and abuse at USP-TH, especially any such wrongdoing that long predated the defendant's incarceration. The proposed fishing expedition for information about such malfeasance is unlikely to lead to information that would significantly alter the quantum of proof in the defendant's favor, as there he has failed to articulate how information concerning OIG investigations is material to the preparation of the defense and, therefore, discoverable under Rule 16. Likewise, the defendant has failed to articulate how any such information would lead to the discovery of possible mitigation evidence concerning his background, history or record, or the circumstances of his crime.

- Item 74: The number of instances in which prisoners were transported outside of THP for any trauma care each year between January 1, 2004, and December 31, 2013.

The United States objects to this request as burdensome, and overbroad. Upon information and belief, BOP does not maintain a tally of data concerning transportation for trauma care, and could only create such statistics for the years 2009 to 2013 by reviewing an automated medical records system that came on line in 2009. Rogers has failed to articulate how the information is material to the preparation of a defense and, therefore, discoverable under Rule 16. While Sim was removed from the institution following the stabbing, the historical rate of trauma care for other prisoners, and for other reasons, has no bearing here. Likewise, the defendant has failed to articulate how any such information would lead to the discovery of possible mitigation evidence concerning his background, history or record, or the circumstances of his crime.

- Item 75: Any reports, files, letters, memoranda, complaints, disciplinary reports, or information related to any changes made regarding security as it relates to the care and protection of inmates at THP from January 1, 2004, through December 31, 2013.

The United States objects to this request as vague, burdensome, and overbroad. The mission of USP-TH is to protect society by confining high security offenders in a controlled prison environment that is safe, humane, cost-efficient, and appropriately secure. Given the centrality of security to the prison's mission these requests appear designed to force the disclosure of every document in the possession of the U.S. government concerning USP-TH. The institution's existence is premised on its ability to secure 1,374 dangerous felons from themselves and society at large, thereby bringing almost any document or record about the facility within the ambit of Rogers' requests. The fact that Rogers putatively limits the requests to the 10 years preceding his incarceration does nothing to make his request more reasonable, as material that long predated the prison's opening could potentially relate to security or subsequent changes in security during the period at hand. Furthermore, many of the reports embraced by the requests reside in the central files of individual inmates, and would require the review and disclosure of tens of thousands of prisoner records. The breadth of requests is impossible to exaggerate or fulfill. But the proposed fishing expeditions are unlikely to lead to information that would significantly alter the quantum of proof in the defendant's favor. He has failed to articulate how the requested information is material to the preparation of the defense and, therefore, discoverable under Rule 16. Likewise, the defendant has failed to articulate how any such information would lead to the discovery of possible mitigation evidence concerning his background, history or record, or the circumstances of his crime.

- Item 76: Maps or diagrams of the following as they existed on December 26, 2013: THP; the tiers and specific cell assignments of THP.

The United States objects to this request as burdensome, and overbroad (it seeks immaterial information that could undermine institutional security). Rogers murdered Sim in a locked cell at

the USP-TH SHU.  The universe of involved parties existed in that closed space, and Rogers in the only survivor.  The identity and location of other inmates has no apparent bearing on this case. Nonetheless, the United States has produced a SHU housing roster for the day of the murder, and will further provide a general floorplan for the facility.  Rogers can convert that information into diagrams, depicting the location of the 222 other inmates who did not murder Sim.  But he fails to allege any fact that might explain the need for this information or a decision to shift the burden to the government of creating his demonstrative exhibits.  This proposal is unlikely to lead to information that would significantly alter the quantum of proof in the defendant's favor, as there is no indication that information about the location of another inmate is material to the preparation of the defense and, therefore, discoverable under Rule 16.  Likewise, the defendant has failed to articulate how any such information would lead to the discovery of possible mitigation evidence concerning his background, history or record, or the circumstances of his crime.

- Item 77:  All Unit Officers' Post Orders in effect on December 26, 2013.

The United States objects to this request as burdensome, and overbroad.   The defendant murdered Sim in a locked cell at the USP-TH SHU.  The prison maintains literally hundreds of post orders, but the orders of unit officers unassigned to the SHU have no apparent bearing here. In any event, upon information and belief post orders are retained for three years, and the documents he seeks may well have been destroyed.  The defendant's request is unlikely to lead to information that would significantly alter the quantum of proof in his favor, as he has failed to articulate how information concerning the expectations for correctional staff in areas of a large prison to which the defendant had no access is material to the preparation of the defense and, therefore, discoverable under Rule 16.  Likewise, the defendant has failed to articulate how any

such information would lead to the discovery of possible mitigation evidence concerning his

background, history or record, or the circumstances of his crime.

- Item 78:   All logbooks, etc. or other information storage device regarding shakedown, confiscation, alcohol-testing, pat-and-search visuals, metal detector, referred-to-prosecution, Captain's file for USP-TH during the period of January 1, 2004 to December 31, 2013.

The United States objects to this request as vague, burdensome, and overbroad.   The term

"other information storage device" is vague.   The request, likewise, failed to indicate what it means

by the term "referred-to-prosecution."   Rogers has not articulated how the requested information

relating to shakedowns, confiscation, alcohol-testing, etc., is material to the preparation of a

defense and, therefore, discoverable under Rule 16.   As stated, Rogers murdered Sim while the

men were confined within a single prison cell.   There is no evidence that this case involves a

shakedown, confiscation, alcohol-testing, pat-and-search visuals, or metal detectors.   Furthermore,

the defendant, again, requests information that largely relates to a period of time when he was not

confined at USP-TH.   He has failed to articulate ho information dating back to 2004, some nine-

and-one-half years prior to his acceptance into custody at USP-TH is material to the preparation

of a defense or potentially mitigating of the possible punishment.

- Item 79:  A copy of any Division Program Review of THP addressing compliance with laws, rules, regulations or Bureau of Prison policy statements relating to prison staffing or prison safety for each year for the period between January 1, 2004, and December 31, 2013.

The United States objects to this request as burdensome, and overbroad.   Division Program

Reviews speak to every aspect of correctional services, from education, to psychology, to custody.

Rogers has not hinted why any of the targeted material would bear on his case, much less has he

indicated how reviews of chaplain staffing or safety in food service areas might prove material to

his defense, especially during the nine-and-a-half years before his federal incarceration.   This

request is unlikely to lead to information that would significantly alter the quantum of proof in the defendant's favor, as there is no indication that historical Division Program Reviews is material to the preparation of the defense and, therefore, discoverable under Rule 16. Likewise, Rogers has failed to articulate how any such information would lead to the discovery of possible mitigation evidence concerning his background, history or record, or the circumstances of his crime.

- Item 80: All Correctional Services quarterly perpetual audit schedule, etc. for USP-TH from January 1, 2010 to December 31, 2014.

The United States objects to this request as burdensome, and overbroad. Rogers was incarcerated at USP-TH for roughly one-third of the targeted time period, during which BOP conducted triennial program reviews and quarterly perpetual audits. The defendant provides no hint as to how these documents might assist him in his case or lead to information that would significantly alter the quantum of proof in his favor. Furthermore, he has failed to articulate how the requested documents are material to the preparation of the defense and, therefore, discoverable under Rule 16. Likewise, the defendant has failed to articulate how any such information would lead to the discovery of possible mitigation evidence concerning his background, history or record, or the circumstances of his crime.

- Item 81: All documents relating to SIS intelligence briefings provided to USP-TH executive staff from January 1, 2010 to December 31, 2014.

The United States objects to this request as vague, burdensome, and overbroad. Upon information and belief, USP-TH does not maintain records about such intelligence briefings. To the extent that information concerning intelligence briefings exist in some as yet unknown form that falls short of a briefing report, there exists no nexus between any prison intelligence briefing documents and the instant murder, which the defendant has repeatedly claimed to have committed

in order to escape the necessity of sharing a cell. By his own admission, the defendant's motives were entirely his own and, therefore, not amenable to prison intelligence gathering. This request is unlikely to lead to information that would significantly alter the quantum of proof in Rogers' favor, as there is no indication that the targeted documents are material to the defense and, therefore, discoverable under Rule 16. Likewise, Rogers has not articulated how such information would lead to the discovery of possible mitigation evidence concerning his background, history or record, or the circumstances of his crime.

- Item 82: The total number of BOP correctional officer positions eliminated at USP-TH from January 1, 2004 to December 31, 2013.

The United States objects to this request as burdensome and overbroad. Rogers murdered Sim in the relative privacy of their cell, in the middle of the night. As he is well aware, USP-TH has never stationed correctional officers in cells overnight in order to prevent violence between cellmates. If the defendant could establish a precipitous decline in staffing at USP-TH in the nine-and-a-half years before he set foot in that institution, he still could not demonstrate any relationship between that figure and his crime. This request is unlikely to lead to information that would significantly alter the quantum of proof in the defendant's favor, as there is no indication that statistics concerning staff elimination are material to the preparation of the defense and, therefore, discoverable under Rule 16. Likewise, the defendant has failed to articulate how any such information would lead to the discovery of possible mitigation evidence concerning his background, history or record, or the circumstances of his crime.

- Item 83: Any reports, files, etc., in whatever form it may exist, related to allegations of criminal activity, etc., by any BOP personnel at USP-TH from January 1, 2004 to December 31, 2013.

The United States objects to this request as vague, burdensome, and overbroad. Apart

57

from the fact that this request largely concerns a time period when the defendant was not present USP-TH, upon information and belief, the prison does not maintain a record concerning allegations of wrongdoing. The potential sources of information is almost as limitless as the request, as it which appears to encompass every sort of claim from sexual harassment amongst employees to arrests for driving under the influence outside the prison walls, none of which bears the slightest relationship to this case. To the extent that the defendant will argue in response that this request could lead to the disclosure of documents that concern the credibility of government witnesses, the United States is aware of her responsibility under *Giglio*, and intends to satisfy them in full. But this proposal, which targets mere allegations of wrongdoing against thousands of current and former employees, many of whom never had the slightest contact with the defendant, is unlikely to lead to information that would significantly alter the quantum of proof in his favor. It is, therefore, immaterial to the preparation of a defense and not discoverable under Rule 16. Likewise, the defendant has failed to articulate how any such information would lead to the discovery of possible mitigation evidence concerning his background, history or record, or the circumstances of his crime.

- Item 84: Copies of all indictments of BOP staff at USP-TH from January 1, 2004 to December 31, 2013.

Upon information and belief, neither BOP nor USP-TH have copies of indictments relating to staff members. Even if copies of indictment were maintained by USP-TH, this request is burdensome, and overbroad. It seeks immaterial information, as it largely concerns a time period when the defendant was not present at USP-TH and involves employees, both current and former, regardless of whether they had any contact with the defendant. The defendant cannot establish that the requested information would significantly alter the quantum of proof in his favor. He has

failed to articulate how the requested information is material to the preparation of a defense and, therefore, discoverable under Rule 16. Likewise, the defendant has failed to articulate how any such information would lead to the discovery of possible mitigation evidence concerning his background, history or record, or the circumstances of his crime. Should the defendant argue that the requested information could impact the credibility of a government witness, the United States is aware of her obligations under *Giglio* and intends to satisfy them in full.

- Item 85: All documents relating to labor/management relations at USP-TH for the period of January 1, 2004 to December 31, 2013; and

- Item 86: All documents relating to Unfair Labor Practice and local labor grievances filed at the local and regional level regarding USP-TH for the period of January 1, 2004 to December 31, 2013.

The United States objects to these requests as burdensome, and overbroad. The request largely concerns a time period when the defendant was not housed at USP-TH and, further, seeks information about aspects of the prison's management that have no bearing on this case. Not only is there no reason to suspect that the murder bore any relationship to labor/management relations, the defendant provides no reason to suspect that a staff member's response to the killing was impacted by friction with management. Accordingly, these requests are unlikely to lead to information that would significantly alter the quantum of proof in the defendant's favor. He has failed to indicate how the requested documents are material to the preparation of a defense and, therefore, discoverable under Rule 16. Likewise, the defendant has failed to articulate how any such information would lead to the discovery of possible mitigation evidence concerning his background, history or record, or the circumstances of his crime.

- Item 87: All Correctional Services Program Reviews and responses in regard to USP-TH from the date it opened to the present; and

- Item 88:  All ACA reviews regarding USP-TH from the date it opened to the present.

The United States objects to these requests as burdensome, and overbroad.  The requests largely concerns a time period when the defendant was not yet alive, much less present at USP-TH, which opened its door in 1940.   Moreover, the defendant provides no reason to suspect that the murder bore any relationship to any fact or allegation documented in a Correctional Services Program Review or response.  Accordingly, the request is unlikely to lead to information that would significantly alter the quantum of proof in the defendant's favor.  The defendant has failed to articulate how the requested information is material to the preparation of a defense and, therefore, discoverable under Rule 16.  Likewise, the defendant has failed to articulate how any such information would lead to the discovery of possible mitigation evidence concerning his background, history or record, or the circumstances of his crime.

- Item 89:  BOP Institution Supplement THX-5217.01K, Operation and Security of the Special Confinement Unit.

The United States objects to this request as they seek immaterial information. Indeed, the request seeks operating policies concerning the SCU, commonly known as "death row," which is located at USP-TH, but not in an area that the defendant has ever entered.  Accordingly, the request is unlikely to lead to information that would significantly alter the quantum of proof in the defendant's favor, as there is no indication that the documents are material to the preparation of a defense and, therefore, discoverable under Rule 16.  Likewise, the defendant has failed to articulate how any such information would lead to the discovery of possible mitigation evidence concerning his background, history or record, or the circumstances of his crime.

- Item 90:  All documents reflecting needs for separation between groups and specific prisoners and all policies/protocols regarding the same for the period of January 1, 2004 to December 31, 2013.

The United States objects to this request as burdensome and overbroad. The request largely concerns a period when Rogers was not present at USP-TH. Additionally, the requested information does not reside in any single location or even a discrete group of locations. Rather, information about inmate separations is documented in, among other places, the central files of individual inmates. The information is closely held, and its disclosure could easily undermine security throughout BOP. Additionally, the defendant provides no reason to believe that any inmate's status or need for separation from others played any role in this murder. Accordingly, the request is unlikely to lead to information that would significantly alter the quantum of proof in the defendant's favor. He has failed to articulate how the requested documents are material to the preparation of a defense and, therefore, discoverable under Rule 16. Likewise, the defendant has failed to articulate how any such information would lead to the discovery of possible mitigation evidence concerning his background, history or record, or the circumstances of his crime.

- Item 91: A copy of all named policy documents related to and/or applicable at USP-TH during 2013.

The United States objects to this request as burdensome and overbroad. The request ostensibly requests every rule, regulation and policy applicable to USP-TH staff in 2013. Much of this information is closely held, and its disclosure could easily undermine security throughout BOP. Additionally, the defendant provides no reason to believe that any rule, regulation or policy, or violation thereof, played a role in this murder. Accordingly, the request is unlikely to lead to information that would significantly alter the quantum of proof in the defendant's favor. The defendant has failed to articulate how the documents are material to the preparation of a defense and, therefore, discoverable under Rule 16. Likewise, the defendant has failed to articulate how any such information would lead to the discovery of possible mitigation evidence concerning his

61

background, history or record, or the circumstances of his crime.

- Item 92: Information regarding security staff vacancies, etc. for the period of January 1, 2004 and December 31, 2013.

The United States objects to this request as vague, burdensome, and overbroad. The United States cannot interpret the ambit of the term "information regarding security staff vacancies," whether that speaks to employee absenteeism, vacant posts, or simply the decision by citizens in a free society to leave the BOP's employment for health, retirement, or other positions. The United States does not, in any event, maintain records of unfilled positions, much less the reasons why they might have been vacated. Furthermore, before murdering Sim, the defendant was incarcerated at USP-TH for approximately five months of the period covered by this request, once again begging the question of their possible relevance. But, even if such the requested records existed and bore some relationship to the defendant's incarceration, they would not have any impact on this case. As noted, the defendant murdered Sim in their cell, in the middle of the night. As the defendant knows, USP-TH has never stationed correctional officers in cells to prevent violence between cellmates. Thus, if the defendant could establish a meaningful decline in staffing at USP-TH in the ten years before he murdered Sim or the nine-and-a-half before he set foot in the institution attributable to grossly negligent mismanagement by the United States government, he still could not demonstrate any relationship between those facts and this crime. The proposal is unlikely to lead to information that would significantly alter the quantum of proof in the defendant's favor. Furthermore, the defendant has failed to articulate how the requested information is material to the preparation of his defense and, therefore, discoverable under Rule 16. Likewise, the defendant has failed to articulate how any such information would lead to the discovery of possible mitigation evidence concerning his background, history or record, or the

circumstances of his crime.

- Item 93: All documents relating to administrative remedies submitted by any USP-TH inmate during the period of January 1, 2004 and December 31, 2013 concerning SAC.

The United States objects to this request as vague, burdensome, and overbroad. The request seeks production of records that long predate Rogers' incarceration at USP-TH, and presumably concerns individuals unknown to him. USP-TH does not maintain a record of administrative remedy requests.[6] This request would also potentially require the identification and disclosure of individual records of SAC members, associates and affiliates. Assuming there existed a way to locate all the responsive documents, the request would still concern immaterial information. It proposes a fishing expedition unlikely to lead to information that would significantly alter the quantum of proof in Rogers' favor, as there is no indication that the defendant knew all but a handful of SAC members at USP-TH, and no indication that any of those prisoners were the subject of a request for administrative remedy. Moreover, the defendant cannot show the prison failed to respond to concerns about SAC, as it housed him in SHU for his protection, at his request. Only then did Rogers murder Sim. As such there exists no basis for believing that records concerning the behavior of far-flung strangers to the defendant might lead to information that would significantly alter the quantum of proof in his favor. Furthermore, the defendant has failed to articulate how the requested information is material to the preparation of his defense and, therefore, discoverable under Rule 16. Likewise, the defendant has failed to articulate how any such information would lead to the discovery of possible mitigation evidence concerning his

---

[6] Once again, the requested disclosures would pose extreme risks to BOP inmates if USP-TH could disclose them. To maintain institutional security in the face of STGs BOP maintains records, like those requested here, in strict confidence.

background, history or record, or the circumstances of his crime.

- Item 94: All documents relating to direction from management to USP-TH staff requesting/requiring that staff document their observations of inmates and inmate group activities for the time period of January 1, 2004 to December 31, 2004; and

- Item 95: All documents relating to daily reports that memorialize or summarize BOP staff observations of inmate activities or groupings from January 1, 2009 to December 31, 2013;

The United States objects to this request as vague, burdensome, and overbroad. As the United States indicated USP-TH employees observe inmates for a living. Indeed, observing inmate activities is the *raison d'etre* of correctional employment. Thus, for not the first time, the defendant has propounded a request for essentially every document in the possession of the government concerning the operation of USP-TH for a five-year period though he was not even present in the institution until the last five months. The proposed fishing expedition is unlikely to lead to information that would significantly alter the quantum of proof in the defendant's favor, as there is no dispute that correctional employees observed prisoners before and after the defendant murdered Sim. The defendant has failed to articulate how proof that BOP's employees did so, for many years before the homicide, is material to the preparation of a defense and, therefore, discoverable under Rule 16. Likewise, the defendant has failed to articulate how any such information would lead to the discovery of possible mitigation evidence concerning his background, history or record, or the circumstances of his crime.

- Item 97: All documents relating to Staff Duty Officer Reports for USP-TH from January 1, 2004 to December 31, 2013.

The United States objects to this request is vague, burdensome, and overbroad. The request contemplates a host of material, much of which resides in the central files of individual inmates. Once again, Rogers requests a decade of documentation, though he only resided in the prison for

the last five months of that period. Furthermore, the requests seeks documentation from all corners of the prison, though the defendant lived almost exclusively, and murdered Sim, in the SHU. The proposed fishing expedition is unlikely to lead to information that would significantly alter the quantum of proof in the defendant's favor, as he has failed to demonstrate that extensive documentary proof that BOP employees faithfully completed Staff Duty Officer reports, for many years before the homicide, is material to the preparation of a defense and, therefore, discoverable under Rule 16. Likewise, the defendant has failed to articulate how any such information would lead to the discovery of possible mitigation evidence concerning his background, history or record, or the circumstances of his crime.

- Item 98: All documents relating to monthly Lieutenant's meetings at USP-TH for the period of January 1, 2004 through December 31, 2013.

The United States objects to this request as vague, burdensome, and overbroad. The request is vague because the term "documents relating to lieutenants' meetings" could contemplate a host of material, much of which resides in the central files of individual inmates. Here again, the requests a decade's worth of documentation, though he only resided in the prison for the last five months of that period. The proposed fishing expedition is unlikely to lead to information that would significantly alter the quantum of proof in the defendant's favor. He has failed to articulate how extensive documentary proof that employees at USP-TH conducted meaningful lieutenants meetings, for many years before the homicide, is material to the preparation of the defense and, therefore, discoverable under Rule 16. Likewise, the defendant has failed to articulate how any such information would lead to the discovery of possible mitigation evidence concerning his background, history or record, or the circumstances of his crime.

It should be noted that the United States has agreed, in full, with Item 60, which is the

65

defense request for minutes of Lieutenant's meetings from December 31, 2013 to June 1, 2014.

- Item 99:  SIA and SIS manuals in effect at THP on December 26, 2013.

The United States objects to this request as burdensome: it seeks immaterial and potentially privileged information.  The request will substantially burden security at the prison because information contained in the requested manuals concerns intelligence sources and techniques, the confidentiality of which are central to the continued effectiveness of SIA and SIS, at USP-TH and all of BOP's other facilities.  Moreover, the defendant has not alleged a single fact that might suggest the materiality of this sensitive information.  He does not imply that he or Sim were subject to, or information sources for, any SIA or SIS investigation.  The defendant's decision to murder Sim was, by his own repeated admissions, solely motivated by a desire for a single cell and the death penalty.  To the extent SIA and SIS investigated this homicide, after the defendant committed it, he fails to show how the manuals will assist him.  Whether or not investigators violated internal policies will not affect the reliability of their evidence gathering.  Only a failure of valid investigative technique will undermine reliability, regardless of whether those techniques were codified and mandated by a manual.  The proposed fishing expedition is unlikely to lead to information that would significantly alter the quantum of proof in the defendant's favor. Furthermore, the defendant has failed to articulate how the requested information is material to the preparation of a defense and, therefore, discoverable under Rule 16.  Likewise, the defendant has failed to articulate how any such information would lead to the discovery of possible mitigation evidence concerning his background, history or record, or the circumstances of his crime.

- Item 101:  Any employee "grievance" of whatever kind and name it may be known filed by any correctional officer or other employee at THP from January 1, 2010 to December 31, 2014.

The United States objects to this request as vague, burdensome, and overbroad.  The

request is vague in that it fails to define "grievance" or identify any particular category of targeted communication. Thus, it embraces any communication from any employee, to any other person, that expresses anything less than unmitigated support for any aspect of BOP. In its vase over breadth, it seeks complaints from years in which the defendant was not present at USP-TH and would capture complaints by staff members with whom he never interacted. This proposed fishing expedition through five years of communication records is unlikely to lead to information that would significantly alter the quantum of proof in the defendant's favor. He has failed to articulate how employee expressions of dissatisfaction, of any kind and about any subject, are material to the preparation of a defense and, therefore, discoverable under Rule 16. Likewise, the defendant has failed to articulate how any such information would lead to the discovery of possible mitigation evidence concerning his background, history or record, or the circumstances of his crime.

- Item 104: All documentation, minutes, or notes of whatever kind and in whatever form of all warden/executive staff meetings and or department head meetings that occurred at or regarding THP from January 1, 2010, through December 31, 2014.

The United States objects to this request as vague, burdensome, and overbroad. It is vague and overbroad in that it fails does not identify any particular category of targeted material, and appears to encompass records of every meeting conducted by any BOP employee ranging in rank from the head of USP-TH's hobby craft area to the director of the prison system. Moreover, it seeks five-years of records, of which the defendant was in federal custody for only six months. The defendant fails to suggest any relevance of the requested records, which embrace everything from hand written notes to formal minutes, by employees he has never encountered, concerning areas of the prison he has never entered, at times long preceding his entry into the prison. This proposed fishing expedition is unlikely to lead to information that would significantly alter the

quantum of proof in the defendant's favor, as there is no indication that evidence, however vast, that BOP managers discussed aspects of prison life that did not implicate him or the circumstances of the murder is material to the preparation of a defense and, therefore, discoverable under Rule 16. Likewise, the defendant has failed to articulate how any such information would lead to the discovery of possible mitigation evidence concerning his background, history or record, or the circumstances of his crime.

- Item 105: Copies of the position descriptions for the Warden, Associate Wardens and Captains that were prepared for use by the THP from the date that it was open until present.

The United States objects to this request as burdensome, and overbroad. It is overbroad in that it seeks decades of information about a prison that opened in 1940, though the defendant was only in BOP custody for six months of that time before fatally stabbing Sim. The defendant fails to show any relevance as to the trove of requested records concerning managerial employees with whom he had no contact, many of whom likely predeceased him by decades. This proposed fishing expedition through years of employment descriptions is unlikely to lead to information that would significantly alter the quantum of proof in the defendant's favor. He has failed to articulate how the requested information is material to the preparation of a defense and, therefore, discoverable under Rule 16. Likewise, the defendant has failed to articulate how any such information would lead to the discovery of possible mitigation evidence concerning his background, history or record, or the circumstances of his crime.

- Item 106: A copy of any organizational hierarchy chart of administrative and staff employees of THP for 2013.

The United States objects to this request as burdensome, and overbroad. The request is burdensome, in that no such chart exists, either generically describing the hierarchy of USP-TH's

staff organization or specifically identifying individuals on in the chain-of-command. *Cf. Saunders-El v. Rohde*, 778 F.3d 556, 562 (7th Cir. 2015) (holding *Brady* does not require the creation of exculpatory evidence). Furthermore, the defendant has failed to articulate how the requested information is material to the preparation of a defense and, therefore, discoverable under Rule 16. Likewise, the defendant has failed to articulate how any such information would lead to the discovery of possible mitigation evidence concerning his background, history or record, or the circumstances of his crime.

- Item 107: Copies of all Duty Officer Incident reports or reports of incident forms for THP from January 1, 2009, through December 31, 2014.

The United States objects to this request as burdensome, and overbroad. It is overbroad in that it seeks a half decade of information, though the defendant was only in BOP custody for six months of that time before murdering Sim. Further, it seeks reports about incidents without any apparent connection to this murder, which the defendant has repeatedly stated he committed for personal reasons. If he cannot, at this juncture, identify an incident that might have affected his intent or state of mind at the time of the killing, he does not require reports of unrelated events so that he can discover his defense. Of course, incidents that post-dated the murder could not possibly have informed the defendant's state of mind. This proposed fishing expedition through five years of reports is unlikely to lead to information that would significantly alter the quantum of proof in the defendant's favor, as there is no indication that evidence of unrelated incidents, is material to the preparation of a defense and, therefore, discoverable under Rule 16. Likewise, the defendant has failed to articulate how any such information would lead to the discovery of possible mitigation evidence concerning his background, history or record, or the circumstances of his crime.

- Item 108: All documents or electronically stored information regarding complaints of

whatever kind made by any Correctional Officer (CO) against the Administration or any member thereof or regarding safety or security at THP from the date that THP opened until present.

The United States objects to this request as vague, burdensome, and overbroad. It is vague in that it fails to meaningfully identify any particular category of targeted document, and embraces any communication from any employee to any other person that expresses any possible concern for safety or security, since the prison opened in 1940. Upon information and belief, no such file exists, and the request would require review of every record in the possession of BOP to find decades of possible communications involving concerns with no connection to this homicide. This proposed fishing expedition through nearly eighty years of records is unlikely to lead to information that would significantly alter the quantum of proof in the defendant's favor, as there is no indication that evidence that correctional employees have expressed concerns about prison security, is material to the preparation of a defense and, therefore, discoverable under Rule 16. Likewise, the defendant has failed to articulate how any such information would lead to the discovery of possible mitigation evidence concerning his background, history or record, or the circumstances of his crime.

- Item 109: A list of all lawsuits against personnel of FCC Terre Haute, in official or personal capacity where related to employment, for the period of January 1, 2005, to present.

The United States objects to this request as vague, burdensome, and overbroad. It is vague, in that it does not specify whether the putative list of lawsuits would concern employment at FCC-TH or simply involve litigants who have worked on the complex since 2005. The request also concerns a time period when the defendant was not present at FCC-TH, and the prison does not maintain a record of lawsuits against its employees, much less those people who have left the agency or not yet begun to work there. Lawsuits are, in any event, public records and therefore

outside the ambit of disclosures required of the government. *See Shields*, 789 F.3d at 747. To the extent that the defendant might argue that this request could lead to disclosure of documents that impact witness credibility, the United States is aware of its burdens under *Giglio*, and will satisfy them in full. But this proposal, which seeks civil allegations against current and former employees, regardless of whether they had any contact with the defendant, is unlikely to lead to information that would significantly alter the quantum of proof in his favor. He has failed to articulate how the requested information is material to the preparation of a defense and, therefore, discoverable under Rule 16. Likewise, the defendant has failed to articulate how any such information would lead to the discovery of possible mitigation evidence concerning his background, history or record, or the circumstances of his crime.

- Item 110: All documents relating to formal and informal materials and investigative materials maintained by the SIS/SIA office at USP Terre Haute regarding the inmates listed in Appendix 1, including, without limitation, STG and/or suspected gang activity; and

- Item 111: All documents contained in or relating to the Posted Picture Files, STG files, AIMS information, Disruptive Group Validation packages and information, cell assignment records, and Presentence Investigation Reports regarding the inmates listed in Appendix 1.

The United States objects to these requests as vague and burdensome. They also seek immaterial information. The first request is vague, in that "formal and informal" has no apparent meaning. Both requests suffer from the use of the term "relating to," which removes any categorical limitation from the information sought and would require the disclosure of any document in the possession of BOP, so long as it has any connection to an SIS/SIA or STG investigation of a laundry list of inmates, none of whom participated in killing Sim. These demands capture everything from the time cards of individual investigators to the work assignments of the named inmates. Furthermore, the requests will substantially burden security at

the prison because information contained in SIA and SIS files is presumptively confidential. Maintaining the confidentiality of intelligence gathering sources and techniques is necessary to ensuing security in the institution. The Presentence Investigation Reports sought in the second request are held in strict confidence, and are not disclosed to third parties on demand. *See United States v. Sherlin*, 67 F.3d 1208, 1218 (7th Cir. 1995) (presentence reports are compiled by the courts, not the Executive branch). The defendant has not alleged a single fact that suggests the materiality of this sensitive information. His decision to murder Sim was, by his own repeated admissions, motivated by a desire for a single cell and the death penalty. To the extent SIA and SIS investigated other inmates at the prison, the defendant fails to show how the fruits of those investigations, much less documents with tenuous connections to those investigations, might assist him. He does not state or imply that he or Sim had any meaningful contact with the listed inmates, and fails to suggest a reason why information collected about those men would have any impact on his defense. The proposed fishing expedition through some of the institution's most sensitive files is unlikely to lead to information that would significantly alter the quantum of proof in the defendant's favor. He has failed to articulate how the requested information is material to the preparation of a defense and, therefore, discoverable under Rule 16. Likewise, the defendant has failed to articulate how any such information would lead to the discovery of possible mitigation evidence concerning his background, history or record, or the circumstances of his crime.

- Item 112: It is important and material to the preparation of Mr. Roger's defense to have photographs of BOP inmates who are potential trial witnesses, because many BOP inmates are known to others not by their true names but rather by "street" names or prison nicknames. Thus, when conducting investigation interviews of current or former BOP inmates, the defense team is unable to adequately identify certain individuals by using those individuals' names, whereas having photographs of those individuals will often trigger recognition by the interviewee. Color photographs of the inmates listed in Appendix 2.

In this request, the defendant abandons all pretense of requesting material evidence and simply seeks a court order mandating that the United States disgorge color photos of hundreds of inmates, because it could expedite his investigation. Due process does not require discovery of evidence simply because it would assist the defense in preparing for trial. *See Agurs*, 427 U.S. at112 n.20. Even if it did, the defendant fails to show how these photographs might assist him, as he appears to concede he cannot identify some or all of the named men. Indeed, the defendant does not state or imply that he or Sim had any meaningful contact with the listed inmates, much less does he suggest a reason why any photographs collected by government officials would impact his defense.[7] The proposal to shift the burden of defense investigation to the government is unlikely to lead to information that would significantly alter the quantum of proof in the defendant's favor. He has not articulated how investigations into random inmates uninvolved with this murder are material to the preparation of a defense and, therefore, discoverable under Rule 16. Likewise, Rogers has not shown how such information would lead to the discovery of possible mitigation evidence about his background, history or record, or the circumstances of his crime.

- Item 113:  All documents relating to inmate profiles, inmate incident reports, and Disciplinary Hearing Officer (DHO) reports for the inmates listed in Appendix 2;

- Item 114:  All documents regarding requests for protective custody for the inmates listed in Appendix 2;

- Item 115:  All Special Housing Unit Records (form BP-A292.052) for the inmates listed in Appendix 2;

---

[7]     The United States acknowledges that purported threats from two of the listed inmates, Edwards and Roehm, led Rogers to seek protective custody in the SHU several months before he killed Sim. Given that Rogers was segregated from those prisoners, at his own request, he should bear a particular onus in justifying how their conduct might impact his defense to the murder, which he patently committed without assistance.

- Item 116: All SENTRY records for the inmates listed in Appendix 2;

- Item 117: All TruIntel entries for the inmates listed in Appendix 2, including without limitation Global Inmate Reports; and

- Item 118: All Presentence Investigation Reports for inmates listed in Appendix 2.

The United States objects to these requests as vague, burdensome, and overbroad. They are vague to the extent they ask for documents "regarding" or "related" to other categories of information, which would necessarily embrace thousands of records beyond even the broad, and unjustified, classes of information the defendant purports to request, including the individual files of hundreds, if not thousands, of unnamed inmates. They are burdensome and overbroad in that they seek, for no apparent reason, thousands of records for hundreds of inmates who played no role in this murder. Given that request no. 112 indicated that that the defendant cannot identify all of these inmates, he certainly cannot defend his requests with a showing of possible relevance. Furthermore, the requests contain no limitations as to time or geography and embrace material from prisons that the defendant never entered during periods when he was not incarcerated. The proposed fishing expeditions through files concerning third parties is unlikely to lead to information that would significantly alter the quantum of proof in the defendant's favor. He has failed to articulate how investigations into random inmates uninvolved with this murder has failed to articulate how the requested information is material to the preparation of a defense and, therefore, discoverable under Rule 16. Likewise, the defendant has failed to articulate how any such information would lead to the discovery of possible mitigation evidence concerning his background, history or record, or the circumstances of his crime.

- Item 120: All documents relating to the August 18, 2014, disassociation interview with Jeremy Edwards, potentially kept on file at the Sacramento Intelligence and

- Item 121:  The autobiography provided by Jeremy Edwards on or about July 29, 2014.

The United States objects to these requests as vague, burdensome, and overbroad.   The first request is vague in that it seeks all documents relating to Edwards' statement, which could contemplate anything from the inmate's entire central file, to every document in the possession of BOP concerning his gang, SAC.   Both requests are burdensome and overbroad in that they seek, without any justification, a seemingly limitless trove of records, including a presumptively confidential statement by a third-party who played no known part in the defendant's murder of Sim.   At most, it appears that the defendant was confined in the SHU because he wished to avoid the company of Edwards and Edwards' gang associates in SAC.   The defendant does not state or imply that he or Sim had any meaningful contact with Edwards, much less does he suggest a reason why the requested, confidential records, would have any impact on his defense.   The proposal to disclose sensitive files concerning an uninvolved inmate is unlikely to lead to information that would significantly alter the quantum of proof in the defendant's favor.   He has failed to articulate how investigations into the gang associations of an inmate uninvolved with this murder are material to the preparation of a defense and, therefore, discoverable under Rule 16.   Likewise, the defendant has failed to articulate how any such information would lead to the discovery of possible mitigation evidence concerning his background, history or record, or the circumstances of his crime.

- Item 122:  Letter to Joshua "Red" Daly relating to Jeremy Edwards with an Item Number DC-14-00286 and an Evidence Number DC-14-00280.

The United States objects to this request as vague, and overbroad.   The request is vague in that it refers to a document seemingly unconnected to this case: though it purports to identify a single document by number, the defendant fails to explain the source of those numbers.   Clearly,

the letter was not among the evidence seized from his cell after the murder. See Ex. 9. The request is overbroad in that it requests, without any justification, a document authored by an unknown person concerning third-party, Edwards, who played no known part in the murder of Sim. The proposal to simply disclose an unidentified letter about an uninvolved party is unlikely to lead to information that would significantly alter the quantum of proof in the defendant's favor. The defendant has failed to articulate how information of dubious provenance, concerning a person who clearly played no role in Sim' death, is material to the preparation of a defense and, therefore, discoverable under Rule 16. Likewise, the defendant has failed to articulate how any such information would lead to the discovery of possible mitigation evidence concerning his background, history or record, or the circumstances of his crime.

- Item 127: All documents describing "meaningful contact" with inmates with mental health conditions from January 1, 2011 to the present.

The United States objects to this request as vague and overbroad. The request fails to specify the type of document requested, the inmates in question, or the people having contact with inmates with mental health conditions. The defendant also places no limitation of the term "mental health conditions". According to the American Psychiatric Association, mental health conditions span a gamut from neurodevelopmental disorders to nonadherence to medical treatment. *See* APA, Diagnostic and Statistical Manual of Mental Disorders, 31-732 (5th ed. 2013). Some serious mental health conditions, like antisocial personality disorder (*id*. at 659), substance-related disorders (*id*. at 481-590), and paraphilic disorders (*id*. at 685-705) are likely diagnosable in broad segments of the prison population. As such, virtually any document concerning BOP prisoner (assuming the request is even limited to federal prisoners) contact with any other person could fall within the ambit of this request. Any attempt to respond to the request burdensome and pointless,

as the defendant has no more capacity to review the entirety of BOP's documentary history than the agency has to produce it. The proposal to simply disclose a limitless quantity of documents about virtually every prisoner in BOP for the last six years is unlikely to lead to information that would significantly alter the quantum of proof in the defendant's favor. He has failed to articulate how proof of the prevalence of mental illness in prison facilities is material to the preparation of a defense and, therefore, discoverable under Rule 16. Likewise, the defendant has failed to articulate how any such information would lead to the discovery of possible mitigation evidence concerning his background, history or record, or the circumstances of his crime.

- Item 132: All documents relating to the DOJ Bureau of Justice Statistics' September 2006 Special Report.

The United States objects to this request as vague, burdensome, and overbroad. The request refers, cryptically, to "any and all documents relating to" a mental health study completed in 2006. Results of the study are publicly available online at http://journals.sagepub.com/doi/pdf/10.1177/0093854808330390. If the study raises particular issues in the defendant's mind, he should say as much, rather than ask the United States to produce any document that might conceivably have any relationship to it. But as phrased, his request appears to embrace the individual mental health records of every inmate who has ever entered BOP custody. The defendant fails to explain how every document that supports or subsequently demonstrates the correctness of the study's findings would possibly assist him. The proposal seeks an undefined galaxy of documents unlikely to lead to information that would significantly alter the quantum of proof in the defendant's favor. The defendant has failed to articulate how information about third parties with no known involvement in this murder is material to the preparation of the defense and, therefore, discoverable under Rule 16. Likewise, the defendant

has failed to articulate how any such information would lead to the discovery of possible mitigation evidence concerning his background, history or record, or the circumstances of his crime.

- Item 133: All documents relating to the OIG's report entitled, Review of the Federal Bureau of Prisons' [sic] Efforts to Manage Inmate Health Care (February 2008) and

- Item 134: All documents relating to IGA's report entitled Review of the Federal Bureau of Prisons' Medical Staffing Challenges (March 2016) and

- Item 135: All documents relating to OIG's report entitled Review of the Federal Bureau of Prinson's Reimburseent Rates for Outside Medical Care (June 2016) and

- Item 136: All documents relating to OIG's report entitled Review of the Federal Bureau of Prisons' Use of Restrictive Housing for Inmates with Mental Illness (undated).

The United States objects to these requests. OIG is not part of the investigative team, and the defendant should not use his discovery request as an end run around his obligations to subpoena the desired information subject to applicable regulations under *Touhy v. Ragen*, 340 U.S. 462 (1951). Moreover, the request is vague, burdensome, and overbroad. The request is vague, overbroad and burdensome in that it refers, cryptically, to "any and all documents relating to" the various studies. These studies are publicly available online at https://oig.justice.gov/reports/2016/e1602.pdf. If a study raises particular issues, Rogers can identify them, rather than ask the United States to produce any document that might conceivably have any relationship to it. But as phrased, this proposal appears to embrace the individual health records of every inmate who has ever entered BOP custody and the employment records of countless health providers. The defendant fails to explain how every document that supports or subsequently demonstrates the correctness of the studies' findings would possibly assist him. The proposal seeks an undefined galaxy of documents unlikely to lead to information that would significantly alter the quantum of proof in the defendant's favor. Rogers has not articulated how

information about third parties with no known involvement in this murder is material to the preparation of a defense and, therefore, discoverable under Rule 16.  Likewise, the defendant has failed to articulate how any such information would lead to the discovery of possible mitigation evidence concerning his background, history or record, or the circumstances of his crime.

- Item 137:  All documents reflecting any change in treatment rates for inmates with any mental health condition at USP-TH since the adoption of the 2014 BOP mental health policy.

The United States objects to this request as vague, and overbroad.  The request does not specify the inmates with mental health conditions whom the defendant hopes to document.  Indeed, the request places absolutely no limitation on the term "mental health conditions."  As noted, above, almost any inmate in BOP custody is likely amenable to a diagnosis for some mental health condition, however trivial, and many may suffer from diagnosable conditions unamenable to treatment, like antisocial personality disorder.  As such, virtually any document concerning the mental health treatment of BOP prisoners could fall within the ambit of this request.  Any attempt to respond to the request burdensome and pointless, as the defendant has no more capacity to review the entirety of BOP's documentary history of mental health treatment over the last three years than the agency has of producing it.  The proposal to simply disclose a limitless quantity of documents about three years of mental health treatment in a penal system that incarcerates approximately 200,000 inmates is unlikely to lead to information that would significantly alter the quantum of proof in the defendant's favor.  The defendant has failed to articulate how proof of the treatment of uninvolved third parties is material to the preparation of a defense and, therefore, discoverable under Rule 16.  Likewise, the defendant has failed to articulate how any such information would lead to the discovery of possible mitigation evidence concerning his background, history or record, or the circumstances of his crime.

- Item 138: All documents relating to the implementation of Institution Care Coordinator and Reentry ("CCARE") Teams at any BOP Facility.

The United States objects to this request as vague, burdensome, and overbroad. The request is vague and overbroad in that it fails to meaningfully identify any particular category of targeted material, and appears to encompass every individual training and employment record of every employee who joined a CCARE team, wherever that may have occurred. The defendant fails to show how the records of employees he never encountered, in prisons he has never entered, might have any relevance to this case. He does not even attempt to explain how the formation of CCARE teams at his own prison, USP-TH, might have any relevance to his own case. This proposed fishing expedition through countless BOP records is unlikely to lead to information that would significantly alter the quantum of proof in the defendant's favor. He has failed to articulate how evidence about the formation of CCARE teams, especially at prisons that have never housed this defendant, is material to the preparation of a defense and, therefore, discoverable under Rule 16. Likewise, the defendant has failed to articulate how any such information would lead to the discovery of possible mitigation evidence concerning his background, history or record, or the circumstances of his crime.

- Item 139: All documents relating to the timing at BOP or USP-TH of responses to requests for medication from January 1, 2004 to December 31, 2013.

The United States objects to this request as vague, burdensome, and overbroad. The request appears to encompass the presumptively private medical records of individual inmates throughout BOP, over a ten-year period. Of that period, the defendant was only in BOP custody for about six months. He fails to show how the medical records of thousands of inmates he never encountered, in prisons he has never entered, might have any relevance to this case. He does not

even attempt to explain how the timing of responses to requests for medication, by inmates in different stages of distress, for conditions the defendant has never experienced, might have any relevance to his own case. This proposed fishing expedition through countless BOP medical records is unlikely to lead to information that would significantly alter the quantum of proof in the defendant's favor. He has failed to articulate how evidence about the treatment of other inmates, for other conditions, under other circumstances, at other institutions, is material to the preparation of a defense and, therefore, discoverable under Rule 16. Likewise, the defendant has failed to articulate how any such information would lead to the discovery of possible mitigation evidence concerning his background, history or record, or the circumstances of his crime.

- Item 141: All documents reflecting the number of requests for Wellbutrin and the number of approvals of such requests for the BOP during the period January 1, 2004, to present.

The United States objects to this request as burdensome, and overbroad. Upon information and belief, BOP does not maintain a record of medication requests, much less does it maintain such a record for requests of Wellbutrin. BOP could only compile such statistics by reviewing the individual records of every inmate in its custody since 2004. The request is overbroad in that it speaks to a time period with no rational relationship to this case and about inmates whose specific mental health conditions are presumably different than that of the defendant. The request to glean pointless statistics from hundreds of thousands of individual inmate records is unlikely to lead to information that would significantly alter the quantum of proof in the defendant's favor. He has failed to articulate how bare numerical data about the treatment of unknown third-parties, in unknown circumstances, at other points in time, is material to the preparation of a defense and, therefore, discoverable under Rule 16. Likewise, the defendant has failed to articulate how any such information would lead to the discovery of possible mitigation evidence concerning his

background, history or record, or the circumstances of his crime.

- Item 142: All documents reflecting the number of inmates designated MHCL 1, 2, 3, 4 at THP for each year from 2010-2014, broken down by MHCL classification and

- Item 143: All documents reflecting the number of inmates designated MHCL 1, 2, 3, 4 housed at any time in the SHU at THP for each year from 2010-2014, broken down by MHCL classification.

The United States objects to these requests as vague, burdensome, and overbroad. The requests vaguely seeks far more than the production of statistics concerning care levels – they demand the presumptively private records of mental health care for every inmate at USP-TH. The requests are burdensome in that, upon information and belief, BOP does not maintain records of care levels except in individual files, and could only compile such statistics by reviewing the records of every inmate who served time in USP-TH and its SHU during a four-year period. The requests are overbroad in that it speaks to the classification of inmates whose specific mental health conditions are necessarily different than that of the defendant, and wholly unknown to him. The request to glean irrelevant statistics concerning thousands of individual inmates, along with all supporting documentation, is unlikely to lead to information that would significantly alter the quantum of proof in the defendant's favor. He has not shwon how data about unknown third-parties, in unknown circumstances, at other points in time, is material to the preparation of a defense and, therefore, discoverable under Rule 16. Likewise, Rogers has failed to articulate how any such information would lead to the discovery of possible mitigation evidence concerning his background, history or record, or the circumstances of his crime.

- Item 144: All documents reflecting treatment protocols for inmates with suspected or diagnosed mental health conditions in the SHU at THP for each year from 2013-2017.

The United States objects to this request as vague, burdensome, and overbroad. The

request is vague in that it does not merely seek production of protocols, but also demands the presumptively private mental health records of every inmate at USP-TH for a four-year period. The request is also vague in that it does not identify whose suspicions of mental illness might give rise to a burden of production, and appears to embrace the concerns of inmates or correctional officers, as well as findings by trained professionals. It also vaguely fails to identify any particular mental health conditions, inviting a response as to every inmate ever suspected of insomnia, pedophilia, caffeine intoxication, and anti-social personality disorder – diagnoses that would likely include virtually the entire prison population. The request is burdensome in that BOP does not maintain a record of inmates with "suspected or diagnosed" mental health conditions and could only comply with this demand by disclosing the mental health records of every prisoner who served time in the SHU for four years. The request is unlikely to lead to information that would significantly alter the quantum of proof in the defendant's favor. He has failed to articulate how protocols used to treat unknown third-parties is material to the preparation of a defense and, therefore, discoverable under Rule 16. Likewise, the defendant has failed to articulate how any such information would lead to the discovery of possible mitigation evidence concerning his background, history or record, or the circumstances of his crime.

- Item 147: All documents reflecting the identity of mental health practitioners and officers designated by the THP warden to visit SHU inmates for each day for October-December 2013.

The United States objects to this request as vague, burdensome, and overbroad. The requests does not merely seek to determine who could enter the USP-SHU for a three month period, but appears to seek individual employment records for any mental health professional in the custody of BOP. A demand that contemplates employment records for staff members authorized to enter the SHU is unlikely to lead to information that would significantly alter the

quantum of proof in the defendant's favor. He has not articulated how the requested information is material to the preparation of a defense and, therefore, discoverable under Rule 16. Likewise, Rogers has not articulated how such information would lead to the discovery of possible mitigation evidence about his background, history or record, or the circumstances of his crime.

- Item 148: All documents relating to medical providers at FCC Terre Haute for the period January 1, 2004, to present, including, without limitation, contracts with outside medical providers and solicitations for offers.

The United States objects to this request as vague, burdensome, and overbroad. The request is vague and burdensome in that it does not merely seek to identify staff members, but demands the medical records of every inmate at FCC-TH for a 13-year period and the individual employment records of every health care professional who so much as sought work in the complex. The request is overbroad in that it speaks to the treatment of individuals unrelated to this case, and the employment of staff who never contacted Rogers, especially during the period preceding Sim's murder. The proposed fishing expedition through employment and medical records is unlikely to lead to information that would significantly alter the quantum of proof in Rogers' favor. He has failed to articulate how information concerning the treatment of unknown third-parties, by professionals who never me the defendant, is material to the preparation of a defense and, therefore, discoverable under Rule 16. Likewise, the defendant has failed to articulate how any such information would lead to the discovery of possible mitigation evidence concerning his background, history or record, or the circumstances of his crime.

- Item 150: All documents reflecting medical and/or mental health staffing and/or staff vacancies for FCC-TH for the period of June 1, 2013 to present.

The United States objects to this request as vague, burdensome, and overbroad. The United States cannot interpret the ambit of the term "information regarding security staff

vacancies," whether that speaks to employee absenteeism, vacant posts, or simply the decision by citizens in a free society to leave the BOP's employment for health, retirement, or other positions. The United States does not, in any event, maintain records of unfilled positions, much less the reasons why they might have been vacated. Before murdering Sim, Rogers was incarcerated at USP-TH for only about five months of the period for which he seeks records, once again begging the question of their possible relevance. But even if such the requested records existed, and bore some relationship to the defendant's incarceration, they would not have any impact on this case. As noted, the defendant murdered Sim in their cell, in the middle of the night. As Rogers knows, USP-TH has never stationed correctional officers in cells to prevent violence between cellmates. Thus, if the defendant could establish a meaningful decline in staffing at USP-TH in the ten years before he murdered Sim, and the nine-and-a-half before he set foot in the institution, attributable to grossly negligent mismanagement by the United States government, he still could not show any relationship between those facts and this crime. The proposal is unlikely to lead to information that would significantly alter the quantum of proof in the defendant's favor. He has failed to articulate how information concerning staff vacancies, or the reasons for them, is material to the preparation of a defense and, therefore, discoverable under Rule 16. Likewise, Rogers has not articulated how any such information would lead to the discovery of possible mitigation evidence about his background, history or record, or the circumstances of his crime.

- Item 154: All documents reflecting job descriptions for each psychologist or psychiatrist employed at USP-TH during the period of January 1, 2013 to the present.

The United States objects to this request as it seeks immaterial information. The defendant has failed to articulate how the requested information, which includes information relating to psychologists and psychiatrists who have never treated the defendant, is material to the preparation

of a defense and, therefore, discoverable under Rule 16.  Likewise, the defendant has failed to articulate how this information will lead to the discovery of mitigation evidence concerning his background, his history or record, or the circumstances of his crime.

- Item 157:  All reports, etc. in the possession, custody, or control of any government agency referencing any suspected crime of violence, regardless of completion, wherein Thomas Sim is mentioned; and

- Item 158:  All information in the possession of any government agency connecting Thomas Sim to any act of violence.

The United States objects to these requests on the grounds that they are vague, overbroad, burdensome.  They seek production of immaterial and potentially privileged information.  There is simply no way for the government to either know of or search for whether Sim is mentioned in a document referencing a suspected crime of violence.  If this request is granted, the government would be required to manually cull through thousands upon thousands of documents referencing any suspected crime of violence to see if Sim is mentioned in any way.  Furthermore, the United States is under no obligation to produce information to a defendant that is not in her possession, custody, or control such is the case with documents held by government agencies not involved in the investigation of the Sim homicide.  *See Wilson*, 237 F.3d at 832.  Finally, the United States notes that the term "crime of violence" is vague.

- Item 160:  All documents relating to any investigation, assessment and/or treatment of Thomas Sim for mental health issues; and

- Item 161:  All Presentence Investigation Reports for Thomas Sim.

The United States objects to these requests as vague, overbroad, and burdensome.  The defendant fails to identify that provider from whom the government should seek to obtain these records.  His request would require the government to cull through the files of all federal and state

86

organizations in search of information.  As stated previously, the government has no obligation to search the files of agencies not involved in the underlying investigation.  Furthermore, the defendant has failed to articulate how information concerning Sim's mental health condition or information contained with his presentence reports is material to the preparation of a defense and, therefore, discoverable under Rule 16.  Likewise, he has failed to articulate how this information will lead to the discovery of mitigation evidence concerning his background, his history or record, or the circumstances of his crime.

- Item 183:  Documents that were Bates-numbered for this case by the U.S. Attorney's Office but not yet turned over to the defense in discovery.

The United States objects to this request because discovery is not governed by whether a document was Bates-numbered by the government.  The government will produce documents as necessary to comply with her obligations under Rule 16, *Brady*, *Giglio*, and the Jencks Act.

- Item 185:  Anticipated trial witness list.

18 U.S.C. § 3432 requires the government, in a capital case, to provide to the defendant, at least three entire days before commencement of trial.  At present, this matter has not been scheduled for trial.  As such, the government objects to producing a witness list, including addresses, at this time.  The government agrees to provide the requested information in accordance with an order of this court, which establishes a reasonable time prior to trial for the production of this information.

E.      Requests to which the United States can provide no response

- Item 96:  Documents relating to entries in the Information Management System at USP-TH for the period of July 1, 2013 to December 31, 2013.

The United States cannot comply with this request because USP-TH does not maintain an

Information Management System.

- Item 119:  Written correspondence, email correspondence, or telephone calls to or from Jeremy Edwards, Terry Ackroyd, or William Roehm for the period July 25, 2013, through December 31, 2013.

Upon information and belief, the requested records were purged in accordance with a six-month retention schedule for such material.  To forestall any claim of spoliation, the United States notes that the defendant does not state or imply that any of the requested records had any known or suspected exculpatory value.  If they existed, the government would object to their disclosure because the proposed fishing expedition through the communications of third parties is unlikely to lead to information that would significantly alter the quantum of proof in the defendant's favor. He has failed to articulate how random correspondence by uninvolved individuals is material to the preparation of a defense and, therefore, discoverable under Rule 16.  Likewise, the defendant has failed to articulate how any such information would lead to the discovery of possible mitigation evidence concerning his background, history or record, or the circumstances of his crime.

- Items 171 to 182:  Discovery regarding witnesses working with the government.

The requests listed in items 171 to 182 seek information concerning cooperating witnesses. The United States advises the defendant that this matter does not involve any cooperating witnesses.

- Item 184:  Un-redacted copies of all documents turned over to the defense in discovery in a redacted format.

Upon information and belief, the United States has not produced any redacted copies in discovery.  If any such documents do exist, the defendant should file the appropriate motion to seek production of the document in an un-redacted form.

## <u>CONCLUSION</u>

WHEREFORE, the United States respectfully submits this Response in Answer to Motion

for Specific Discovery file on behalf of Andrew, Rogers, the defendant.

Respectfully submitted,

JOSH J. MINKLER
Acting United States Attorney

By: <u>/s/</u>
BARRY GLICKMAN
Assistant United States Attorney

<u>/s/</u>
JEFFREY B. KAHAN
Trial Attorney
United States Department of Justice

<u>/s/</u>
TERESA A. POLINSKE
Trial Attorney
United States Department of Justice