**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**TERRE HAUTE DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Cause No. 2:16-cr-18-WTL-CMM-1** |
| | ) | |
| **ANDREW N. ROGERS,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**ENTRY ON DEFENDANT'S MOTION TO DISMISS THE INDICTMENT OR STRIKE**
**THE DEATH PENALTY FOR PRE-INDICTMENT DELAY**

This cause is before the Court on Andrew Rogers' Motion to Dismiss the Indictment or to Strike the Death Penalty for Unjustified Pre-Indictment Delay (Dkt. No. 60). The motion is fully briefed, and the Court, being duly advised, **DENIES** the motion for the reasons set forth below.

**I.      BACKGROUND**

On December 26, 2013, at 1:37 a.m., Mr. Rogers told correctional staff at USP Terre Haute that his cellmate, Thomas Sim, was dead. Staff found Mr. Sim lying on the floor of the cell, dead from multiple stab wounds to his chest and neck. Mr. Rogers was immediately handcuffed and removed from the cell. Within hours, Mr. Rogers confessed to the killing. Witness interviews of all of the prisoners in the unit where the homicide occurred were completed by December 27, 2013.

On March 12, 2014, USP Terre Haute's warden indicated the official Bureau of Prisons (BOP) position in support of the death penalty for Mr. Rogers. On April 14, 2014, two of the decedent's brothers stated their position in favor of the death penalty and relayed that the entire family supported such a decision. The indictment against Mr. Rogers was filed on May 17, 2016, two and a half years after the homicide. The Notice of Intent to Seek Death Penalty was filed on May 31, 2016. On June 3, 2016, Mr. Rogers was arrested on the murder indictment, and he made his initial appearance in this court on the same day.

## II.   DISCUSSION

Mr. Rogers argues that the Government unjustifiably delayed charging him. He contends that the delay was prejudicial to him because some witnesses have died and some documents have been destroyed. Thus, Mr. Rogers argues, the Court should dismiss the Indictment, or, in the alternative, strike the death penalty. A district court may dismiss an indictment if unnecessary delay occurred in presenting the charge to a grand jury. Fed. R. Crim. P. 48(b)(1). The applicable statute of limitations provides a defendant with his primary safeguard against unreasonable prosecutorial delay. *United States v. McMutuary*, 217 F.3d 477, 481 (7th Cir. 2000). The Fifth Amendment's due process clause also "plays a limited role in assuring that the government does not subject a defendant to oppressive delay." *United States v. Spears*, 159 F.3d 1081, 1084 (7th Cir. 1998).

To establish a due process violation based on pre-indictment delay, a defendant "must demonstrate that the delay caused actual and substantial prejudice to his right to a fair trial." *McMutuary*, 217 F.3d at 482. "A defendant's burden to show actual and substantial prejudice is an exacting one; the showing must rest upon more than mere speculative harm." *Id.* "The defendant's allegations . . . must be 'specific, concrete, and supported by evidence.'" *Id.* (quoting *United States v. Sowa*, 34 F.3d 447, 450 (7th Cir. 1994)). The Seventh Circuit has described the defendant's burden as a "monumental hurdle." *Sowa*, 34 F.3d at 451.

With respect to the potential witnesses who have died, "the death of a witness alone is insufficient to establish actual prejudice." *United States v. Valona*, 834 F.2d 1334, 1338 (7th Cir. 1987). A court should "only conclude that the death of a witness has prejudiced a defendant where [it is] convinced that the witness would have testified, that his testimony would have withstood cross-examination, and that the jury would have found him a credible witness." *United States v. Doerr*, 886 F.2d 944, 964 (7th Cir. 1989) (quotation and citation omitted).

If a defendant succeeds in demonstrating actual and substantial prejudice, "the burden shifts to the government to 'show that the purpose of the delay was not to gain a tactical advantage over the defendant or for some other impermissible reason.'" *McMutuary*, 217 F.3d at 482 (quoting *Spears*, 159 F.3d at 1084-85). The government's "reasons are then balanced against the defendant's prejudice to determine whether the defendant has been denied due process." *Sowa*, 34 F.3d at 451. To constitute a due process violation, the "actual prejudice to the defendant . . . must be so substantial as to outweigh the preferable deference to legitimate prosecutorial priorities and bureaucratic realities." *United States v. Williams*, 738 F.2d 172, 175 n.2 (7th Cir. 1984).

Mr. Rogers argues that he has been prejudiced by the Government's delay in indicting him. Specifically, he points to the release from prison of several inmate witnesses and the death of at least two inmate witnesses. One witness who died, Terry Ackroyd, was housed nearby Mr. Rogers in the Special Housing Unit (SHU) on December 26, 2013, and had been in a prior altercation with Mr. Rogers. This prior altercation, Mr. Rogers explains, is what led Mr. Rogers to seek protective custody, which Mr. Rogers argues is directly tied to the homicide with which he is charged. Another inmate who was housed nearby in the SHU, Ivin Darrel Wozencraft, has also died. Mr. Rogers explains the importance of inmate witnesses as follows:

> Because there is no video evidence of the homicide itself, inmate witnesses housed nearby are crucial to the investigation of this case. Additionally, because Mr. Rogers' mental health state prior to and after the homicide will be central to the jury's determinations of both guilt and sentence, the importance of a witness like Mr. Ackroyd cannot be overstated. In his interview with BOP staff after the homicide, Mr. Ackroyd reported that Mr. Rogers had been involved in the prior assault on Mr. Ackroyd but that the two of them were "cool now." It was essential that Mr. Rogers' counsel have an opportunity to further investigate what Mr. Ackroyd had learned about Mr. Rogers beyond the two of them being "cool now." By losing access to witnesses such as Mr. Ackroyd, Mr. Rogers has lost the ability to present information vital to countering the government's argument of future dangerousness and to presenting evidence of mitigation.

Dkt. No. 60 at 5-6. A key source of mitigation evidence, Mr. Rogers' paternal grandmother, has also passed away.

Mr. Rogers also points to the destruction of documents that he asserts are necessary for him to prepare his defense. Specifically, he points to photographs related to his attempted suicide on September 29, 2014, which showed rope marks on his neck the next day. By the time counsel was appointed, the BOP was unable to locate the photographs. These photographs, Mr. Rogers asserts, would have been critical to use with experts and to explain Mr. Rogers' state of mind to a jury. Likewise, Mr. Rogers points to the likely destruction of unit officers' post orders in effect on December 26, 2013, which the Government has explained may have been destroyed because such orders are retained for only three years.

Most significant, Mr. Rogers asserts, is the fact that he has been held in isolation since the homicide. Holding him in such a manner, Mr. Rogers argues, has created evidence in support of the Government's argument of future dangerousness and has denied Mr. Rogers the ability to create evidence in support of mitigation because he has not been able to demonstrate that he can live peaceably and exhibit good behavior in a prison system outside of a SHU.

The Court finds that Mr. Rogers has not surmounted the monumental hurdle of proving prejudice based on pre-indictment delay. He has not made a concrete showing of how he has been substantially prejudiced by the loss of the potential witnesses' testimony and the records and photographs that appear to no longer be available. *See Sowa*, 34 F.3d at 451. Nor has he alleged that the testimony of the deceased witnesses is not available from other sources. *See Doerr*, 886 F.2d at 964 (In making determination of prejudice resulting from deceased witness, court must "[e]valuate

this testimony against the other trial evidence to determine if indeed its introduction would affect the trial outcome.") (internal quotations and citations omitted).[1]

Further, Mr. Rogers' argument that being held in the SHU has hindered him from creating evidence in support of mitigation and has affected his mental health is unavailing. Although holding him in the SHU prevents Mr. Rogers from creating the type of mitigation evidence that *Skipper v. South Carolina*, 476 U.S. 1 (1986), contemplates, it is his pre-trial placement there—not the length of time that he has been or will be held there—that precludes such evidence from being developed. And while his mental health might have been negatively affected by lengthy placement in the SHU, he has not demonstrated how this will prejudice him at trial.

The Court also finds that the Speedy Trial Clause of the Sixth Amendment and 18 U.S.C. § 3161 are not implicated by any pre-indictment delay. *See United States v. Lovasco*, 431 U.S. 783, 788-89 (1977) ("only 'a formal indictment or information or else the actual restraints imposed by arrest and holding to answer a criminal charge . . . engage the particular protections' of that provision") (quoting *United States v. Marion*, 404 U.S. 307, 322 (1971)). While Mr. Rogers was held in more restrictive custody following the homicide, heightened detention status—including being held in disciplinary segregation—is not an arrest under the Sixth Amendment. *United States v. Harris*, 12 F.3d 735, 736 (7th Cir. 1994).

SO ORDERED: 5/18/18

_William T Lawrence_
Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic communication.

---

[1]Because the Court finds that Rogers has not met his burden by showing actual and substantial prejudice, the Court need not reach the second stage of the analysis, which requires the Government to provide reasons for the delay. The Court notes, however, that the Government has not provided any such reasons in its Response.