UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Cause No. 2:16-cr-18-WTL-CMM-1 |
| ) | |
| ANDREW N. ROGERS, ) | |
| ) | |
| Defendant. ) | |

**ENTRY REGARDING REQUEST FOR ADDITIONAL DISCOVERY
CONCERNING ALLEGED GOVERNMENT MISCONDUCT**

On May 21, 2018, Andrew Rogers filed his response to the Government's motion to reconsider the Court's order permitting the taking of depositions. Dkt. No. 141. In that response, Rogers indicated that on May 14, 2018, a mere three days after it filed its motion for reconsideration, the Government provided Rogers with a document that appears to have been written by Assistant United States Attorney James Warden and reads as follows:

> To All Concerned:
>
> Sometime after the submission of the 16 SEP 2014 memorandum in which the U.S. Attorney for INS requested to not seek the death penalty as to Andrew N. Rogers, and prior to the submission of the 07 DEC 2015 memorandum to DAG Yates, in which that position was reversed, I was directed by the USA to evaluate the mental health issues concerning Rogers. I was the one and only AUSA assigned to the matter at that time.
>
> In that regard, I interviewed the FCC - Terre Haute chief psychologist, Dr. Steven Eckert, in person at the institution. Dr. Eckert had been advised as to the purpose of the interview and had reviewed Roger's BOP psychological records prior to our meeting. Dr. Eckert was thoroughly aware of Roger's psychological history and treatment at FCC – Terre Haute. During that meeting, Dr. Eckert advised that the BOP was not as responsive to Roger's mental health issues as it could have been and that certain additional intervention could have occurred prior to the murder.
>
> Dr. Eckert opined that, were these matters to be addressed in a death penalty proceeding, then the BOP might be embarrassed as a result of its incomplete response to Roger's mental health issues. In response to a question by me, Dr.

> Eckert specifically recommended that the death penalty not be sought in this case for the reasons stated above.
>
> I provided Dr. Eckert's information to the USA prior to the submission of the memorandum to DAG Yates.
>
> R/ Jim Warden

Dkt. No. 141-1 (errors in original).

The content of this document directly contradicts the position that the Government repeatedly has taken that it has not withheld any information that would indicate that the Bureau of Prisons was negligent in treating Rogers' mental health conditions. For example, the Government argued the following:

> In this case, the defendant has not established any of the elements of a *Brady* violation. The information provided to Mr. Peterson during his telephone interviews with BOP personnel was neither novel nor favorable to the defendant. To the contrary, the statements provided to Mr. Peterson confirmed or illuminated information contained within BOP records that were in the possession of the defendant prior to indictment and presented to the government by way of a written mitigation submission. *See* Att. 1 Exh. A. *The BOP personnel uniformly agreed with their earlier assessments that the defendant did not manifest symptoms of any mental health malady that required intervention beyond that which was requested and provided*. That information is not exculpatory. That information is not impeaching. That information was not, therefore, subject to disclosure under *Brady*.

Dkt. No. 99 at 8 (emphasis added). The Government further asserted:

> In April 2018, the FBI case agent interviewed the BOP employees regarding their communications with Mr. Peterson in November 2015. The case agent memorialized each interview in an official report. Exh. 1. None of the employees contradicted Mr. Peterson's disclosures. *Id. As in 2015, none of them offered any facts that would exculpate the defendant or impeach the government's witnesses against him. Id.* In fact, Dr. Steven J. Eckert, Chief Psychologist at the Federal Correctional Complex at Terre Haute ("FCC-TH"), stated that the defendant received the appropriate level of care based upon the circumstances. *Id.* He further opined that the defendant's mental health status did not contribute to the murder of Thomas Sim. *Id.*

Dkt. No. 137 at 4-5 (emphasis added). While the Government labeled Rogers' allegations that exculpatory evidence was being withheld "far-fetched," Dkt. No. 103, the recently produced document belies that characterization.

2

The Government has not responded to Rogers' revelation regarding the newly produced document and therefore has not provided any explanation for the apparent lack of candor in its earlier filings. Accordingly, the Court is left with many unanswered questions, and the Government's assurances that it understands, has complied with, and will comply with its *Brady* obligations ring hollow.

The Court finds that Rogers is entitled to the following:

1. Any and all documents reflecting the content of any interview by AUSA James Warden of Dr. Steven Eckert, Dr. Erin Conner[1], Dr. Ericka Schmitt, or any other FCC Terre Haute mental health personnel relating to Andrew Rogers, including, but not limited to, handwritten notes, memoranda, and emails.

2. Any and all documents reflecting the date(s) and location of any interview by AUSA James Warden of Dr. Steven Eckert, Dr. Erin Conner, Dr. Ericka Schmitt, or any other FCC Terre Haute mental health personnel relating to Andrew Rogers, including, but not limited to, calendar entries, handwritten notes, memoranda, and emails.

3. Any and all documents reflecting directions to AUSA James Warden to evaluate mental health issues concerning Andrew Rogers, including, but not limited to, handwritten notes, memoranda, and emails.

4. Any and all documents reflecting the content, date, and time of any interview attended by BOP attorney Robert Schalburg of Dr. Steven Eckert, Dr. Erin Conner, Dr. Ericka Schmitt, or any other FCC Terre Haute mental health personnel relating to Andrew Rogers, including, but not limited to, handwritten notes, memoranda, and emails.

5. A copy of the September 16, 2014, memorandum in which the office of the U.S. Attorney for the Southern District of Indiana recommended against seeking the death penalty against Andrew Rogers.

6. A copy of the December 7, 2015, memorandum in which the office of the U.S. Attorney for the Southern District of Indiana reversed its position on seeking the death penalty for Andrew Rogers.

The responsive documents shall be provided to Rogers' counsel and the Court **within 14 days of the date of this Entry.** If the Government claims privilege with respect to any of the

---

[1] Previously known as Erin Buchanan

3

documents, it shall file a privilege log that lists each responsive document that the Government withholds on privilege grounds. By the same date, the Government also shall deliver a copy of the privilege log, along with an unredacted copy of each document listed therein, to the undersigned's chambers so that the Court may conduct an *in camera* review.

SO ORDERED: 6/7/18

_William T. Lawrence_

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic communication.