# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
### TERRE HAUTE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Cause No. 2:16-cr-18-WTL-CMM-1 |
| | ) | |
| ANDREW N. ROGERS, | ) | |
| | ) | |
| Defendant. | ) | |

## ENTRY ON MOTION FOR SPECIFIC DISCOVERY

This cause is before the Court on Defendant Andrew Rogers' Motion for Specific

Discovery (Dkt. No. 49). The motion is **GRANTED IN PART** and **DENIED IN PART** as set

forth below.[1] All items ordered produced below shall be produced **within sixty days of the date**

**of this Entry**.

## I.     STANDARDS

### A.  Brady v. Maryland

Brady requires the prosecution to disclose "evidence favorable to an accused." *Brady v.*

*Maryland*, 373 U.S. 83, 87 (1963). "Evidence favorable to an accused" is exculpatory and

impeachment evidence that is material to either the issue of guilt or punishment. *Strickler v.*

*Greene*, 527 U.S. 263, 280 (1999). The prosecution must disclose, even in the absence of a

---

[1]In an earlier Entry, the Court ordered the Government to provide the items to which the Government had not asserted an objection (Dkt. No. 198).  The following items were included, in full, in that order: Item 3, Item 4, Item 6, Item 12, Item 15, Item 17, Item 18, Item 19, Item 20, Item 21, Item 25, Item 27, Item 56, Item 57, Item 59, Item 60, Item 61, Item 69, Item 70, Item 71, Item 72, Item 125, Item 162, Item 166, and Item 167. The Government also agreed to produce some of the information Rogers requested in Item 31, Item 33, and Item 35, and Rogers indicated that he was satisfied with that response. Rogers has withdrawn his request for Item 28, Item 41, Item 50, Item 63, Item 74, Item 97, Item 98, and Item 147. Items 171-180 pertain to cooperating witnesses, and the Government has indicated that there are no cooperating witnesses.

request from the defendant, all such evidence known by all individuals acting on its behalf in the case at hand. *Kyles v. Whitley*, 514 U.S. 419, 437 (1995).

*B. Federal Rule of Criminal Procedure 16*

Federal Rule of Criminal Procedure 16(a)(1)(E)(i) requires the prosecution to permit a defendant to inspect documents and objects that are "within the government's possession, custody, or control" and "material to preparing the defense." Documents are "material to preparing the defense" if they could "significantly help[ ] in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment and rebuttal." *United States v. Gaddis*, 877 F.2d 605, 611 (7th Cir. 1989) (quotation and citation omitted). To be entitled to the production of these documents, a defendant must make at least a prima facie showing of materiality. *United States v. Thompson*, 944 F.2d 1331, 1341 (7th Cir. 1991).

## II.   <u>PROTECTED ITEMS</u>

As the Government argues, some of the items requested by Rogers present valid security or privacy concerns. The Government shall mark each of those items as a "Protected Item." Defense counsel may, of course, challenge the designation of any item as a Protected Item. Unless and until that challenge is successful, Defense counsel and their office staff ("the Defense") shall maintain these Protected Items, including any copies the Defense makes, as follows:

1. The Defense and Rogers shall use the discovery materials solely and exclusively in connection with this case (including investigation, trial preparation, trial, and appeal), and not for any other purpose.

2. Copies of the discovery materials shall be maintained by the Defense in person, at their law firm, or with prison officials at the ADX in accordance with its policies. Rogers may review these items in the presence of counsel or on a computer outside his cell in accordance with the procedures in place at the ADX.

3. A copy of this Entry shall be kept with the copies of the Protected Items at all times.

4. In no event shall the Defense or Rogers disclose or describe any of the Protected Items to any other person or entity other than the Government, this Court, and any defense expert. Should the Defense or Rogers need to disclose or describe any of the Protected Items to any other court or in any other legal proceeding, it shall do so only with notice and permission from this Court.

5. Defense counsel shall promptly notify the Government and this Court if any Protected Items are disclosed to anyone not designated by this Order or further order of the Court, either intentionally or unintentionally. Rogers and any defense experts shall promptly notify defense counsel of any such disclosures.

6. At the end of these proceedings, the Defense shall retain the Protected Items according to defense regulations and requirements and shall thereafter destroy the same.

## III.    DISCOVERY ITEMS REQUESTED

The Court will address each discovery item objected to by the Government, in turn,

below.

*Item 1: An opportunity for the defense team and defense experts to tour USP Terre Haute in person and to view and photograph the prison, including, without limitation, the Special Housing Unit. The defense seeks an order permitting digital photography, video, and the use of electronic measuring equipment. The Court's order should further specify that any BOP personnel supervising or observing the defense tour are prohibited from revealing any information about the defense tour to the prosecution or anyone working with the prosecution in this case. The Court should further order that the BOP is not to reveal any video of the defense tour to the prosecution or anyone working with the prosecution in this case.*

The Government has agreed to allow the defense to tour and inspect USP Terre Haute.

However, the Government has indicated that it wants to have the BOP use its own equipment to

photograph, video-record, and measure areas of the prison and then release photographs, videos,

and measurements after the Warden reviewed them for security compliance. The Court does not

find the Government's restrictions reasonable; accordingly, Rogers' request is granted. The

defense may use digital photography, video, and electronic measuring equipment. Any BOP

personnel supervising or observing the defense tour shall not reveal any information about the

defense tour to the prosecution or anyone working with the prosecution in this case. Further, the BOP shall not reveal any video of the defense tour to the prosecution or anyone working with the prosecution in this case.

> *Item 2: Any and all documents relating to investigation by the Federal Bureau of Investigation (FBI) and/or the BOP of the Thomas Sim homicide on December 26, 2013, including, without limitation, the following documents:*
> *a. Correspondence between or among FBI agents, SIS staff, or other BOP personnel;*
> *b. Handwritten notes taken by FBI agents, SIS staff, or other BOP personnel;*
> *c. Written reports prepared by FBI agents, SIS staff, or other BOP personnel; and*
> *d. Any and all documents, or communications of any kind, reflecting the division of labor between the FBI and SIS with regards to the Sim homicide investigation*

The Government has agreed to provide information in its possession, custody, and control as necessary to comply with the requirements of *Brady*, *Giglio*, and the Jencks Act. However, the Government argues that the request is otherwise vague and overbroad and seeks immaterial information. The Court disagrees. Rogers has made a prima facie showing of materiality. The Government also argues that Rogers seeks potentially privileged information, but this blanket assertion of privilege is insufficient. The Government shall produce all documents responsive to this request. If any of the responsive documents are privileged, the Government shall produce a privilege log and file a motion for protective order that addresses each document contained therein.

> *Item 5: Any and all documents relating to interviews of inmates in connection with the Sim homicide investigation, including, without limitation, investigators' handwritten or computer entry notes*

The Government has agreed to provide information in its possession, custody, and control as necessary to comply with the requirements of *Brady*, *Giglio*, and the Jencks Act. However, the Government argues that the request is otherwise vague and overbroad and seeks immaterial information. The Court disagrees. Rogers has made a prima facie showing of materiality. The Government also argues that Rogers seeks potentially privileged information, but this blanket

assertion of privilege is insufficient. Further, the Court finds the Government's representations that the written reports contain all of the information found in the original notes to be insufficient. The Government shall produce all documents responsive to this request. If any of the responsive documents are privileged, the Government shall produce a privilege log and file a motion for protective order that addresses each document contained therein.

*Item 7: All Board of Inquiry Reports concerning the Sim homicide*

The Government has agreed to provide After-action Reports related to the Sim homicide that were in the custody of the BOP. The Government shall produce reports by the Board of Inquiry as defined by BOP Program Statement 1210.21 at 7-8.

https://www.bop.gov/policy/progstat/1210_021.pdf (last visited 11/28/2018).

*Item 8: Any and all correspondence, emails, notes, memoranda, or other documents between or among BOP personnel, FBI personnel, and/or DOJ personnel regarding the decision to seek the death penalty in this case*

*Item 9: Any and all phone logs, calendar entries, datebooks, or other documents relating to conversations between or among BOP personnel, FBI personnel, and/or DOJ personnel regarding the decision to seek the death penalty in this case*

*Item 10: Any drafts of the memorandum analyzing the justification for seeking the death penalty in this case located in discovery at Bates pages 000799-000805*

The Government argues that these requests seek immaterial and privileged information and documents that are protected by the deliberative process privilege. The Government already has produced some of these materials to Rogers in conjunction with his claims of misconduct. Requests for information beyond what has been produced will be addressed in conjunction with the issues that have arisen in that regard.

*Item 11: Documents relating to SIS card files and other files and materials regarding the Defendant, Sim, and SAC*

The Government has agreed to produce SIS card files concerning Rogers and Sim. However, it argues that the request for the SIS card files regarding the SAC is vague, burdensome, and overbroad and is presumably subject to investigative privilege. The blanket assertion of privilege is insufficient, but the Court agrees that the request is overbroad. The Government shall produce SIS card files from USP Terre Haute for the time period of January 1, 2010, to January 1, 2014. The Court finds that Rogers has made a prima facie showing of materiality as to this limited set of documents. If any of the responsive documents are privileged, the Government shall produce a privilege log and file a motion for protective order that addresses each document contained therein.

*Item 13: Any and all documents prepared by or maintained by the Office of Internal Affairs and/or the Office of Inspector General relating to the Sim homicide investigation*

The Government has agreed to produce documents prepared by the OIA or OIG that relate to the Sim homicide investigation to the extent that the documents are in the custody of the BOP, but has objected to producing documents that are in the possession, custody, or control of either the OIA or OIG. The objection is overruled; the Government shall produce any and all documents prepared by or maintained by the OIA and/or the OIG relating to the Sim homicide investigation.

*Item 14: Any computer entries by BOP personnel relating to the death of Thomas Sim*

The Government argues that this request is vague, burdensome, and overbroad. The Court agrees that the request is vague and overbroad, and Rogers' request is denied.

*Item 16: Any information regarding the author and date of a handwritten note alleging that Mr. Rogers made a statement threatening a guard found at pages 000490 and 000491 of discovery*

The Government argues that this request is vague, burdensome, and overbroad. The Court disagrees. Rogers indicates that he received two copies of a handwritten note in initial discovery but that the discovery gives no indication as to the author of the note, the date it was written, or who received it. The Government shall provide this information to Rogers.

*Item 22: Any and all documents relating to the THP's acceptance, designation, and classification, and transportation of Andrew Rogers*

*Item 23: Any documents relating to requests for transfer [of] Andrew Rogers, including but not limited to, any communications regarding eligibility and suitability for transfer, requests for review, and all other documents and communications*

*Item 24: All information obtained at any time by the Designation and Sentencing Computation Center (DSCC) that references Andrew Rogers, and all pipeline information related to his transfer to any BOP facility, including, without limitation, any information sent to a receiving facility or any information given to transportation officers regarding classification or security issues for Mr. Rogers*

The Government has agreed to turn over the information requested to the extent that the information is contained in Rogers' central file, but indicates that, upon information and belief, the BOP does not maintain records outside of the central file. To the extent that any email communications, letters, or other documents regarding this topic exist, the Government shall produce them.

*Item 26: All documents, communications, memoranda, recordings, and all other forms of memorialization of any communication between Mr. Rogers and the THP Warden following Mr. Sim's death, including, but not limited to, any and all materials forward by the THP Warden to . . . any prosecutorial or law enforcement agency concerning statements made by Mr. Rogers, and opinions expressed by the Warden regarding this case*

The Government has agreed to produce the requested materials to the extent that they are contained within Rogers' files. It has objected to producing information about opinions expressed by the Warden about this case. The Government shall produce the information sought

by Rogers. Any statements made by Rogers are discoverable under Federal Rule of Criminal Procedure 16(a)(1)(A) and (B). Statements made by the THP Warden are relevant to the allegations of misconduct that have arisen in addition to being disclosable under the Jencks Act and Fed. R. Crim. P. 26.2 if the Warden testifies.

*Item 29: A list of the number of series 100 incidents of assaults on inmates as counts and rates per year at each United States Prison each year between January 1, 2009, and December 31, 2013*

*Item 30: The Correctional Services Significant Incident Data for incidents of assaults on inmates as counts and rates per 5,000 inmates for all United States Prisons for each year between January 1, 2009, and December 31, 2013*

*Item 32: A list of the number of series 100 incidents of assaults on inmates as counts and rates per year in each Special Housing Unit in BOP facilities each year between January 1, 2004, and December 31, 2013*

The Government argues that these requests are overbroad and seek immaterial information. The Court finds that the requests are not overbroad and Rogers has made a prima facie showing of materiality. Accordingly, the Government shall produce this information. To the extent possible, the Government shall provide the raw data in spreadsheet format rather than PDF. It shall also provide a codebook for the data elements contained in the spreadsheets.

*Item 34: The Federal Bureau of Prisons State of the Bureau Report for the years 2008-2014*

The Government has pointed Rogers to the reports for 2008, 2009, and 2010, but indicates that it cannot produce reports for the years 2011 to 2014 because, upon information and belief, the BOP stopped publishing the report in 2010. In response, Rogers seeks the source of the information that the BOP ceased publication of the report and information about whether the BOP stopped preparing such reports. The Government shall produce the information that Rogers has requested in his response.

*Item 36: Any and all documents relating to reports of Code 101 violations within the BOP from January 1, 2009, through December 31, 2013, including graphs, supporting data, and supporting documentation*

*Item 37: Any and all documents relating to reports of Code 104 violations within the BOP from January 1, 2009, through December 31, 2013, including graphs, supporting data, and supporting documentation*

The Government argues that these requests are vague, burdensome, and overbroad. In his response, Rogers limits his request to USPs. With this limitation, the Court finds that the requests are not vague, burdensome, or overbroad, and the Government shall produce this information.

*Item 38: Any and all BOP After-Action Reports prepared from January 1, 2009, through December 31, 2013*

The Government argues that this request is burdensome and overbroad. The Court agrees that the request is overbroad and thus limits the Government's required production to BOP After-Action Reports prepared from January 1, 2009, through December 31, 2013, for USP TH and other Special Housing Units ("SHUs") within the BOP.

*Item 39: Any and all documents relating to the BOP's mission critical post initiative, including, without limitation, the following:*
*a. A memorandum from the Assistant Director of Correctional Programs describing how each BOP facility was to gather information for 6 months regarding overtime and staffing under the mission critical post initiative;*
*b. The information gathered in response to such memorandum; along with . . . supporting documentation; [and]*
*c. Any and all documents reflecting the BOP's analysis of such information and/or evaluation of the effectiveness of the mission critical post initiative*

The Government argues that this request is vague, burdensome, and overbroad. Rogers responds that part of his mitigation argument may be that understaffing contributed to the conditions surrounding Sim's death. The Court agrees that information regarding understaffing could be relevant but finds that this particular request is overbroad. The Government is not required to respond to this request.

*Item 40: Any and all documents relating to BOP or THP policies, practices, guidelines, or procedures for conducting mass interviews*

The Government argues that this request is vague, burdensome, and overbroad. In his response, Rogers limits his request to documents relating to BOP or THP policies, practices, guidelines, or procedures for conducting mass interviews in place from December 25-31, 2013, that established policies, practices, guidelines, or procedures for THP. With this limitation, the Court finds that the request is not vague, burdensome, or overbroad, and the Government shall produce this information.

*Item 42: Any and all documents relating to the average length of SHU incarceration for each BOP facility for the time period January 1, 2009, through December 31, 2013*

The Government argues that this request is vague, burdensome, and overbroad. It further indicates it does not believe that the BOP maintains statistics about the average length of SHU stay by facility. However, Rogers points to a publication that does provide statistics of this sort, suggesting that the BOP does in fact maintain such statistics. Further, the Court finds that the request is not vague or overbroad and Rogers has made a prima facie showing of materiality. Accordingly, the Government shall produce this information.

*Item 43: Any and all documents relating to BOP and/or THP policies, procedures, practices, or guidelines regarding SHU housing decisions for inmates in disciplinary segregation or administrative detention for the time period January 1, 2009, through December 31, 2013*

The Government argues that this request is vague, burdensome, and overbroad. The Government interprets this request as encompassing the housing and disciplinary records of every inmate who entered a SHU during that five-year period. The Court disagrees with this interpretation and instead views the request as seeking the policies, procedures, practices, or guidelines themselves. Further, Rogers has made a prima facie showing of materiality. The Government shall produce this information.

*Item 44: Any and all documents indicating that SHU housing may contribute to mental health conditions, including, but not limited to, depression, anxiety, or bipolar disorder*

The Government argues that this request is vague, burdensome, and overbroad. Again, the Government interprets the request more broadly than does the Court. Rogers has made a prima facie showing of materiality. The Government shall comply with this request to the extent that such documents exist and with the understanding that the request does not encompass the medical and mental health records of individual inmates.

*Item 45: Any and all documents reflecting training of BOP staff regarding policies and procedures for supervising inmates in the SHU prior to and including December 26, 2013*

The Government argues that this request is vague, burdensome, and overbroad. In his response, Rogers limits his request to January 1, 2004, through December 26, 2013. With this limitation, the Court finds that the request is not vague, burdensome, or overbroad, and Rogers has made a prima facie showing of materiality, and the Government shall produce this information.

*Item 46: Any and all documents relating to the CNA Analysis & Solutions December 2014 report titled, "Federal Bureau of Prisons: Special Housing Unit Review and Assessment," including, without limitation, any documents provided by BOP to CNA Analysis & Solutions*

The Government argues that this request is vague, burdensome, and overbroad. In his response, Rogers limits his request to the information and documents that were provided to CNA. With this limitation, the Court finds that the request is not vague, burdensome, or overbroad, and Rogers has made a prima facie showing of materiality, and the Government shall produce this information.

*Item 47: Any and all documents relating to the creation of the Reintegration Housing Unit (RHU) at Oakdale, Louisiana, including, without limitation, the following:*
*a. Any and all documents relating to the need or desire for the creation of the RHU;*
*b. Any and all documents relating to criteria for placement in the RHU;*
*c. Any and all documents relating to the means and/or methods for*

*placement of an inmate in the RHU;*
*d. Any and all documents relating to inmates placed in the RHU in 2013; [and]*
*e. The October 2013 memorandum regarding procedures and criteria for*
*placement of inmates in the RHU referenced in the CNA Audit at page*
*220*

*Item 48: Any and all documents relating to the transition of FCI Otisville, New York to a*
*Security Threat Group Drop-Out institution, including, without limitation, the following:*
*a. Any and all documents relating to the need or desire for the creation of the*
*Security Threat Group Drop-Out institution;*
*b. Any and all documents relating to criteria for placement in the Security*
*Threat Group Drop-Out institution;*
*c. Any and all documents relating to the means and/or methods for*
*placement of an inmate in the Security Threat Group Drop-Out institution; [and]*
*d. Any and all documents demonstrating the number of and facility of origin*
*for inmates placed in the Security Threat Group Drop-Out institution from*
*opening to the present*

The Government argues that these requests are vague, burdensome, and overbroad. The

Court agrees that these requests are overbroad, and they are therefore denied. The Government

need not respond to these requests.

*Item 49: Any and all documents relating to BOP guidelines for assessing, classifying, and*
*validating an inmate as a gang/STG member, associate, or affiliate for the period of January 1,*
*2009, through December 31, 2013*

The Government argues that this request is vague, burdensome, and overbroad. The

Court disagrees. Rogers argues that the information is relevant. The Court finds that Rogers has

made a prima facie showing of materiality, and the Government shall produce this information.

*Item 51: Any and all documents relating to the amount of time from a request for transfer*
*to transfer for inmates who are in SHU placement due to protective custody status for the time*
*period January 1, 2004, through December 31, 2013*

The Government argues that this request is vague, burdensome, and overbroad. The

Court disagrees. Rogers has made a prima facie showing of materiality. Accordingly, the

Government shall produce this information.

*Item 52: Any and all documents relating to the philosophy, practices, and activities of the*
*Soldiers of Aryan Culture or SAC in the BOP, including, without limitation:*

1. *Documents relating to any "constitutions" for the Soldiers of Aryan Culture or SAC;*
2. *Documents relating to membership in the Soldiers of Aryan Culture or SAC and how an inmate becomes a member of the Soldiers of Aryan Culture or SAC;*
3. *Documents relating to alleged gang-related disciplinary violations by Soldiers of Aryan Culture or SAC members and affiliates;*
4. *Any and all documents relating to efforts by the Soldiers of Aryan Culture or SAC to increase their power and influence in the BOP; [and]*
5. *Any and all documents relating to the Soldiers of Aryan Culture or SAC at FCC Terre Haute*

The Government argues that this request is vague, burdensome, and overbroad. The Court agrees to an extent and limits production to relevant documents at USP Terre Haute. With this limitation, Rogers has made a prima facie showing of materiality. Accordingly, the Government shall produce this information.

*Item 53: Any and all documents relating to the institutional conduct of BOP inmates who have been convicted of committing a murder in prison after the prison murder conviction, including, without limitation, those inmates who have been found by a capital jury to pose a future danger*

*Item 54: Any and all documents relating to the ability of USP-ADMAX (ADX) to safely and securely house BOP inmates who have been convicted of committing a murder or other violent act in prison. This request includes, but is not limited to, the following:*
*a. Documents providing the data referenced on pages 58-66 of the CAN Audit and in Tables 13, 14, 15, 16, 17, 18, 19, 20, and Figure 3 of the CAN Audit; [and]*
*b. Any documents of a similar nature for the time period following those referenced in the CNA Audit to the present*

The Government argues that these requests are vague, burdensome, and overbroad. The Court disagrees. Rogers has made a prima facie showing of materiality. Accordingly, the Government shall produce this information.

*Item 55: Any and all documents reflecting staffing and staff assignments at THP for December 1-31, 2013*

The Government has agreed to produce the names and assignments of all officers, staff, and others working at USP-TH during the time period of December 25 to 27, 2013. Rogers has

responded that a full month's worth of information is necessary to be able to make a comparative analysis of staffing. The Court finds that Rogers has made a prima facie showing of materiality and the Government shall produce the requested information.

> *Item 58: Any and all documents reflecting the number of inmates in the THP SHU for January 1, 2009, through December 31, 2013, with indication whether the inmate was in the SHU for disciplinary segregation, protective custody, or other administrative detention*

The Government argues that this request is vague, burdensome, and overbroad. The Court disagrees. Again, the Government interprets the request more broadly than does the Court. Rogers has made a prima facie showing of materiality. The Government shall comply with this request to the extent that such documents exist and with the understanding that the request does not encompass the individual records of inmates.

> *Item 62: Any and all documents relating to BOP investigation of inmate-on-inmate or inmate-on-staff violence at THP prior to December 27, 2013, including, without limitation, the following:*
> *a. Reports, files, letters, memoranda, complaints, disciplinary reports, or other information;*
> *b. Board of Inquiry Reports;*
> *c. Regional Inquiry Team Reports;*
> *d. After-Action Reports;*
> *e. Local Inquiry Team Reports;*
> *f. Summary Reports;*
> *g. Drafts of and memoranda or correspondence related to the Reports identified in (a) through (e);*
> *h. Documents reflecting any THP response and/or corrective action plan developed and/or implemented in response to the recommendations set forth in the Reports identified in (a) through (e); [and]*
> *i. Documents, records, working papers, and/or personal records created by members of the Boards or Teams selected to prepare any of the Reports identified in (a) through (e)*

The Government argues that this request is vague, burdensome, and overbroad. The Court agrees that the request is overbroad and limits the request to the time period of January 1, 2012, to December 27, 2013. The Court finds that Rogers has made a prima facie showing of materiality as to this limited set of documents. The Government shall produce this information.

*Item 64: Any reports, files, letters, memoranda, complaints, disciplinary reports, or information related to security problems involving the care and protection of inmates at THP from January 1, 2004, to December 31, 2013. This request includes, but is not limited to, all identified security issues, problems, concerns, and policies. This request also includes, but is not limited to, all changes in security policies, protocols, and arrangements*

The Government argues that this request is vague, burdensome, and overbroad. The Court agrees that the request is overbroad. The Government shall produce the items listed above from the time period of January 1, 2012, to December 31, 2013. The Court finds that Rogers has made a prima facie showing of materiality as to this limited set of documents. The Government shall produce this information.

*Item 65: All key indicator data or correctional services significant incident data for THP for January 1, 2009, through December 31, 2013, including, but not limited to, data reflecting rates of assaults on inmates, rates of assaults of staff, hit rates of random urinalysis and hit rates of suspect group urinalysis tests*

The Government argues that this request is vague, burdensome, and overbroad. The Court agrees that the request is overbroad. The Government shall produce the items listed above from the time period of January 1, 2012, to December 31, 2013. The Court finds that Rogers has made a prima facie showing of materiality as to this limited set of documents. The Government shall produce this information.

*Item 66: Any and all documents reflecting guidelines, policies, protocols, or rules regarding the conducting of rounds in the THP SHU prior to and including December 26, 2013*

The Government has agreed to produce the guidelines, policies, protocols, and rules regarding the conducting of rounds at THP-SHU in effect on December 26, 2013, but argues that the request for the production of historical documents is vague, burdensome, and overbroad. The Court agrees that the request is overbroad. The Government shall produce the items listed above for the time period of January 1, 2012, to December 31, 2013. The Court finds that Rogers has

made a prima facie showing of materiality as to this limited set of documents. The Government shall produce this information.

*Item 67: Any and all documents reflecting policies, guidelines, or protocols governing cell searches at THP, including, without limitation, any document reflecting any internal procedures enacted by THP to implement the section of the policy statement entitled, "Search of Inmate Housing and Work Areas §552.14," from the date THP opened to the present*

The Government has agreed to produce the guidelines, policies, protocols, and rules governing cell searches at THP-SHU in effect on December 26, 2013, but argues that the request for the production of historical documents is vague, burdensome, and overbroad. The Court agrees that the request is overbroad. The Government shall produce the items listed above for the time period of January 1, 2012, to December 31, 2013. The Court finds that Rogers has made a prima facie showing of materiality as to this limited set of documents. The Government shall produce this information.

*Item 68: Any and all housing unit log books or documents for the SHU at THP, including, without limitation, documents relating to cell searches and unit activity, for the time period of January 1, 2013, through December 31, 2013*

The Government argues that this request is vague, burdensome, and overbroad. The Court disagrees. Rogers has made a prima facie showing of materiality. Accordingly, the Government shall produce this information.

*Item 73: A description of all Bureau of Prisons referrals to the Office of the Inspector General of the Department of Justice for THP for each year between January 1, 2004, and December 31, 2013*

The Government argues that this request is vague, burdensome, and overbroad. Rogers has agreed to limit his request to referrals to OIG for assault, acts of violence, and incidents of weapons smuggling at THP. Even with this limitation, the Court finds that the request is somewhat overbroad. The Government shall produce referrals to OIG for assault, acts of violence, and incidents of weapons smuggling at THP for the time period of January 1, 2009, to

December 31, 2013. The Court finds that Rogers has made a prima facie showing of materiality as to this limited set of documents. The Government shall produce this information.

*Item 75: Any reports, files, letters, memoranda, complaints, disciplinary reports, or information related to any changes made regarding security as it relates to the care and protection of inmates at THP from January 1, 2004, through December 31, 2013*

The Government argues that this request is vague, burdensome, and overbroad. The Court agrees that the request is overbroad. The Government shall produce the items listed above for the time period of January 1, 2009, to December 31, 2013. The Court finds that Rogers has made a prima facie showing of materiality as to this limited set of documents. The Government shall produce this information.

*Item 76: Maps or diagrams of the following as they existed on December 26, 2013: THP; the tiers and specific cell assignments of THP*

The Government argues that this request is vague, burdensome, and overbroad but agrees to provide a general floorplan. The Court finds that this floorplan, coupled with the SHU housing roster that the Government indicates it has already produced, will satisfy this request.

*Item 77: Any and all Unit Officers' Post Orders in effect on December 26, 2013*

The Government argues that this request is vague, burdensome, and overbroad. In his response, Rogers agrees to limit his current request to post orders applicable to any personnel working in the SHU at the relevant time. With this limitation, the Court finds that the request is not vague, burdensome, or overbroad, and Rogers has made a prima facie showing of materiality. The Government shall produce this information.

*Item 78: All logbooks/files/folders or other information storage device regarding: shakedowns, confiscation, alcohol-testing, pat-and-search visuals, metal detector, referred-to-prosecution, Captain's file for THP from January 1, 2004, through December 31, 2013*

The Government argues that this request is vague, burdensome, and overbroad. The Court agrees that the request is overbroad. The Government shall produce the items listed above

for the time period of January 1, 2011, to December 31, 2013. The Court finds that Rogers has made a prima facie showing of materiality as to this limited set of documents. The Government shall produce this information.

*Item 79: A copy of any Division Program Review of THP addressing compliance with laws, rules, regulations or Bureau of Prison policy statements relating to prison staffing or prison safety for each year for the period between January 1, 2004, and December 31, 2013*

The Government argues that this request is burdensome and overbroad. The Court agrees that the request is overbroad. The Government shall produce the items listed above for the time period of January 1, 2009, to December 31, 2013. The Court finds that Rogers has made a prima facie showing of materiality as to this limited set of documents. The Government shall produce this information.

*Item 80: Any and all Correctional Services quarterly perpetual audit schedule and audits and correction action plans for THP for the period of January 1, 2010, through December 31, 2014*

The Government argues that this request is vague, burdensome, and overbroad. The Court agrees that the request is overbroad. The Government shall produce the items listed above for the time period of January 1, 2011, to December 31, 2013. The Court finds that Rogers has made a prima facie showing of materiality as to this limited set of documents. The Government shall produce this information.

*Item 81: Any and all documents relating to SIS intelligence briefings provided to THP executive staff for the period of January 1, 2010, through December 31, 2014*

The Government argues that this request is vague, burdensome, and overbroad. The Court disagrees and finds that Rogers has made a prima facie showing of materiality. The Government shall produce this information.

*Item 82: The total number of Bureau of Prisons correctional officer positions eliminated at THP for each year from January 1, 2004, through December 31, 2013*

The Government argues that this request is burdensome and overbroad. The Court agrees that the request is overbroad. The Government shall produce the items listed above for the time period of January 1, 2009, to December 31, 2013. The Court finds that Rogers has made a prima facie showing of materiality as to this limited set of documents. The Government shall produce this information.

*Item 83: Any reports, files, letters, memoranda, complaints, disciplinary reports, or information in whatever form it may exist, related to allegations of criminal activity, false information, official misconduct or negligence by any BOP personnel including guards, administrators, and contractors at THP from January 1, 2004, through December 31, 2013*

The Government argues that this request is vague, burdensome, and overbroad. The Court agrees that the request is overbroad. The Government shall produce the items listed above for the time period of January 1, 2009, to December 31, 2013. The Court finds that Rogers has made a prima facie showing of materiality as to this limited set of documents. The Government shall produce this information.

*Item 84: Copies of all indictments of BOP staff at THP per year from January 1, 2004, through December 31, 2013*

The Government indicates that it does not believe that either the BOP or USP-TH has copies of indictments relating to staff members. Even if they were maintained, the Government argues that the request is burdensome and overbroad. The Court agrees that the request is overbroad. The Government shall produce the items listed above for the time period of January 1, 2009, to December 31, 2013. The Court finds that Rogers has made a prima facie showing of materiality as to this limited set of documents. The Government shall produce this information or indicate definitively that it does not have any responsive documents.

*Item 85: Any and all documents relating to Labor/Management Relations at THP from January 1, 2004, through December 31, 2013, including, without limitation, minutes of Labor/Management meetings*

*Item 86: Any and all Unfair Labor Practices and local labor grievances filed at the local and regional level regarding THP from January 1, 2004, through December 31, 2013*

The Government argues that these requests are burdensome and overbroad. The Court agrees that the requests are overbroad. The Government shall produce the items listed above for the time period of January 1, 2009, to December 31, 2013. The Court finds that Rogers has made a prima facie showing of materiality as to this limited set of documents. The Government shall produce this information.

*Item 87: All Correctional Services Program Reviews and responses that have been conducted and completed in regard to THP from the date it opened to the present*

*Item 88: All ACA reviews that have been conducted and completed in regard to THP from the date it opened to the present*

The Government argues that these requests are burdensome and overbroad. The Court agrees that the requests are overbroad. The Government shall produce the items listed above for the time period of January 1, 2003, to December 31, 2013. The Court finds that Rogers has made a prima facie showing of materiality as to this limited set of documents. The Government shall produce this information.

*Item 89: A copy of BOP Institution Supplement THX-5217 01K, Operation and Security of the Special Confinement Unit*

The Government argues that this request seeks immaterial information. The Court disagrees. The Court finds that Rogers has made a prima facie showing of materiality. The Government shall produce this information.

*Item 90: Any and all documents reflecting needs for separation between groups and specific prisoners and any and all policies and protocols regarding the same from January 1, 2004, through December 31, 2013*

*Item 91: Any and all of the following policy documents relating to and/or applicable at THP during 2013:*
*a. Institutional or Complex Supplements to BOP Program Statements;*
*b. Operations Memoranda;*
*c. Technical Reference Manuals;*
*d. Document Retention Policies; and*
*e. Memoranda regarding the placement and transfer of inmates*

The Government argues that these requests are burdensome and overbroad. The Court finds that the requests are not burdensome or overbroad, and Rogers has made a prima facie showing of materiality. The Government shall produce this information.

*Item 92: Information regarding security staff vacancies and reason for vacancy from January 1, 2004, through December 31, 2013*

*Item 93: Any and all documents relating to administrative remedies submitted by any THP inmate from January 1, 2004, through December 31, 2013, concerning the Soldiers of Aryan Culture or SAC, including, without limitation, BP-8s, BP-9s, BP-10s, and BP-11s*

*Item 94: Any and all documents relating to direction from management to THP staff requesting or requiring that staff document their observations of inmates and inmate group activities, for the time period of January 1, 2004, through December 31, 2013*

*Item 95: Any and all documents relating to daily reports that memorialize or summarize BOP staff observations of inmate activities or groupings, including, without limitation, daily sensitive reports, for THP for the time period of January 1, 2009, through December 31, 2013*

The Government argues that these requests are vague, burdensome, and overbroad. The Court agrees that the requests are overbroad. The Government shall produce the items listed above for the time period of January 1, 2009, to December 31, 2013. The Court finds that Rogers has made a prima facie showing of materiality as to this limited set of documents. The Government shall produce this information.

*Item 96: Any and all documents relating to entries in the Information Management System at THP for the time period of July 1, 2013, through December 31, 2013*

The Government asserts that it cannot respond to the request because THP does not maintain an Information Management System. Rogers has responded that, while he is unaware of the precise name of the system in use at THP in 2013, he seeks the documents that relate to the entries in the system in use at that time. The Government shall produce this information.

*Item 99: The SIA and SIS manuals in effect at THP on December 26, 2013*

The Government argues that this request is burdensome and seeks immaterial and potentially privileged information. The Court disagrees. The Court finds that Rogers has made a prima facie showing of materiality. Any security concerns can be addressed through the protective order. The Government shall produce this information.

*Item 100: Any and all documents reflecting policies for single-celling or double-celling inmates either in SHUs within the BOP generally or in the SHU at THP specifically*

The United States has agreed to disclose the BOP Program Statements and local supplements concerning SHU housing in effect on December 26, 2013, and the pertinent CNA audit. The Government otherwise argues that the request is vague, burdensome, and overbroad. Rogers has agreed to limit the time frame of his request to January 1, 2008, to December 31, 2013. The Court finds that Rogers has made a prima facie showing of materiality as to this limited set of documents. The Government shall produce this information.

*Item 101: Any employee "grievance" of whatever kind and name it may be known filed by any correctional officer or other employee at THP from January 1, 2010, through December 31, 2014*

The Government argues that this request is burdensome and overbroad. The Court finds that the request is not burdensome or overbroad, and Rogers has made a prima facie showing of materiality. The Government shall produce this information.

*Item 102: Any and all documents regarding first responder training provided to institutional staff at THP from January 1, 2010, through December 31, 2014*

The Government has agreed to disclose the first responder slide show provided to USP-TH staff in 2013. It objects to the remainder of the request as vague, burdensome, and overbroad. Rogers has agreed to review what the Government has agreed to produce.

*Item 103: Any and all documents reflecting mental health training for THP staff from January 1, 2013, to present*

The Government has agreed to disclose the refresher mental health slide show provided to USP-TH in 2013. It objects to the remainder of the request as vague, burdensome, and overbroad. The Court finds that the request is not vague, burdensome, or overbroad, and Rogers has made a prima facie showing of materiality. The Government shall produce this information.

*Item 104: All documentation, minutes, or notes of whatever kind and in whatever form of all warden/executive staff meetings and or department head meetings that occurred at or regarding THP from January 1, 2010, through December 31, 2014*

The Government argues that this request is vague, burdensome, and overbroad. The Court disagrees. Rogers has made a prima facie showing of materiality. Accordingly, the Government shall produce this information.

*Item 105: Copies of the position descriptions for the Warden, Associate Wardens and Captains that were prepared for use by the THP from the date that it was open until present*

The Government argues that this request is vague, burdensome, and overbroad. In his response, Rogers agrees to limit his request from January 1, 2005, to the present. With this limitation, the Court finds that the request is not vague, burdensome, or overbroad, and Rogers has made a prima facie showing of materiality. The Government shall produce this information.

*Item 106: A copy of any organizational hierarchy chart of administrative and staff employees of THP for 2013*

The Government argues that this request is burdensome and overbroad, and it also argues that no such chart exists. If a chart does exist, the Government shall produce it.

*Item 107: Copies of all Duty Officer Incident reports or reports of incident forms for THP from January 1, 2009, through December 31, 2014*

The Government argues that this request is burdensome and overbroad. The Court finds that the request is overbroad but disagrees that the request is overly burdensome. Further, the Court finds that Rogers has made a prima facie showing of materiality, and the Government shall produce this information from January 1, 2012, through December 31, 2014.

*Item 108: All documents or electronically stored information regarding complaints of whatever kind made by any Correctional Officer (CO) against the Administration or any member thereof or regarding safety or security at THP from the date that THP opened until present*

*Item 109: A list of all lawsuits against personnel of FCC Terre Haute, in official capacity or in personal capacity where related to employment, for the period of January 1, 2005, to present*

The Government argues that these requests are vague, burdensome, and overbroad. The Court agrees that the requests are overbroad. The Government shall produce the items listed above for the time period of January 1, 2009, to December 31, 2013. The Court finds that Rogers has made a prima facie showing of materiality as to this limited set of documents. The Government shall produce this information.

*Item 110: Any and all documents relating to formal and informal materials and investigative materials maintained by the SIS/SIA office at USP Terre Haute regarding the inmates listed in Appendix 1, including, without limitation, STG and/or suspected gang activity*

*Item 111: Any and all documents contained in or relating to the Posted Picture Files, STG files, AIMS information, Disruptive Group Validation packages and information, cell assignment records, and Presentence Investigation Reports regarding the inmates listed in Appendix 1*

The Government argues that these requests are vague and burdensome and will substantially burden security. In his response, Rogers agrees to remove the phrase "relating to." The Court finds that this modification will alleviate any concerns regarding vagueness and burden, and security issues can be addressed through the use of the protective order.

*Item 112: It is important and material to the preparation of Mr Roger's defense to have photographs of BOP inmates who are potential trial witnesses, because many BOP inmates are known to others not by their true names but rather by "street" names or prison nicknames Thus, when conducting investigation interviews of current or former BOP inmates, the defense team is unable to adequately identify certain individuals by using those individuals' names, whereas having photographs of those individuals will often trigger recognition by the interviewee [Color photographs of the inmates listed in Appendix 2]*

The Government argues that Rogers has not articulated how this information is material to the defense and therefore it is not discoverable. The Court disagrees. The Court finds that Rogers has made a prima facie showing of materiality. The Government shall produce this information.

*Item 113: Any and all documents relating to inmate profiles, inmate incident reports, and Disciplinary Hearing Officer (DHO) reports for the inmates listed in Appendix 2*

*Item 114: Any and all documents regarding requests for protective custody for the inmates listed in Appendix 2*

*Item 115: Any and all Special Housing Unit Records (form BP-A292 052) for the inmates listed in Appendix 2*

*Item 116: Any and all SENTRY records for the inmates listed in Appendix 2*

*Item 117: Any and all TruIntel entries for the inmates listed in Appendix 2, including without limitation Global Inmate Reports*

*Item 118: Any and all Presentence Investigation Reports for the inmates listed in Appendix 2*

The Government argues that these requests are vague, burdensome, and overbroad. The Court disagrees. Rogers has made a prima facie showing of materiality. Accordingly, the Government shall produce this information.

*Item 119: Any and all written correspondence, email correspondence, or telephone calls to or from Jeremy Edwards, Terry Ackroyd, or William Roehm for the period July 25, 2013, through December 31, 2013*

The Government indicates that, upon information and belief, the requested records were purged in accordance with a retention schedule. In Rogers' response, he asks that the Government produce any documents reflecting the retention schedule and requests that the Court hold an evidentiary hearing. Rogers' request for any documents reflecting the retention schedule is granted, but the Court denies his request for an evidentiary hearing at this time.

*Item 120: Any and all documents relating to the August 18, 2014, disassociation interview with Jeremy Edwards, potentially kept on file at the Sacramento Intelligence Unit*

*Item 121: A copy of the autobiography provided by Jeremy Edwards on or about July 29, 2014*

The Government argues that these requests are vague, burdensome, and overbroad. The Court disagrees. Rogers has made a prima facie showing of materiality. Accordingly, the Government shall produce this information.

*Item 122: A copy of a letter to Joshua "Red" Daly relating to Jeremy Edwards, with an Item Number DC-14-00286 and an Evidence Number DC-14-00280*

The Government argues that this request is vague and overbroad and indicates that the document is seemingly unconnected to this case and fails to explain the source of the number used to identify the document. Rogers has pointed out that the document requested is referenced in discovery that the Government has provided in Rogers' case. Given this information, the

Government's argument is puzzling. Rogers has made a prima facie showing of materiality. The Government shall produce this information.

*Item 123: Any and all documents reflecting the menu of food served in the SHU at THP for the dates December 24-26, 2013*

The Government has agreed to produce BOP's national menu for the period of December 24, 2013, to December 26, 2013, but indicates that upon information and belief, USP-TH does not maintain a record of meals served in the SHU. Rogers asks for the basis of this belief. The Government shall provide the basis for this belief.

*Item 124: Any and all records, including, but not limited to, handwritten notes or contemporaneous entries by other means (audio recorded, etc.) for any medical provider seeing, treating, evaluating, or providing services to Andrew Rogers at any facility where Mr. Rogers has been housed while in federal custody, whether BOP or U.S. Marshals Service. This request includes, without limitation, the following:*
*a. Records from THP;*
*b. Records from Chicago MCC;*
*c. Records from Tazewell County Justice Center;[and]*
*d. Records from off-site or tele-psychiatry providers*

The Government has agreed to produce records related to medical treatment provided to Rogers in BOP custody to the extent that such records are contained within his BOP central file. It objects to providing records that are in the possession, custody, or control of an entity that is not part of the prosecution team. The Court finds that the Government also shall produce information within the possession of other entities described above, including the United States Marshals Service.

*Item 126: Any and all mental health records of Thomas Sim, including, but not limited to, those maintained in the Prisons Electronic Medical Record System and Psychology Data System (BEMR-PDS)*

The Government has agreed to produce mental health records of Thomas Sim to the extent that such records are contained within his BOP central file. It objects to providing records that are in the possession, custody, or control of an entity that is not part of the prosecution team.

It also shall produce information within the possession of other entities, including the United States Marshals Service.

*Item 127: Any and all documents describing or outlining "meaningful contact" with inmates with mental health conditions, from January 1, 2011, to present*

The Government argues that this request is vague and overbroad. Rogers has clarified his request by explaining the source of the term "meaningful contact," and the Court finds that the clarification is sufficient to clarify this request. The Government shall produce this information.

*Item 128: Any and all documents reflecting BOP or THP policy for the diagnosis and/or documentation of mental health conditions and the provision of mental health treatment in effect for January 1-December 31, 2013*

The Government has agreed to provide the program statements and institutional supplements concerning the provision of mental health care at USP-TH. It indicates that, to the extent that the documents are not publicly available online, it has no objection to the request as it relates to the time period of July 25, 2013, to December 31, 2013. Rogers has responded that his request is not limited to program statements and institutional supplements. Rogers has made a prima facie showing of materiality. The Government shall provide the information as requested by Rogers.

*Item 129: Any and all documents reflecting guidelines or policies for the use of tele-psychiatry for the year 2013 at BOP generally and THP specifically*

The Government has agreed to provide the program statements and institutional supplements concerning the provision of tele-psychiatry at USP-TH. It indicates that, to the extent that the documents are not publicly available online, it has no objection to the request as it relates to July 25, 2013, to December 31, 2013. Rogers has responded that his request is not limited to program statements and institutional supplements. Rogers has made a prima facie showing of materiality. The Government shall provide the information as requested by Rogers.

*Item 130: Any and all documents relating to the BOP Mental Health Prevalence Project*

The Government has not responded to Rogers' request for this information. It shall provide the information to Rogers.

*Item 131: Copies of the BOP Psychology Services Manual in effect for 2013 to present*

The Government has not responded to Rogers' request for this information. It shall provide the information to Rogers.

*Item 132: Any and all documents relating to the U.S. Department of Justice Bureau of Justice Statistics' September 2006 Special Report titled, Mental Health Problems of Prison and Jail Inmates, including, without limitation, any and all documents providing data underlying the statistical conclusions in Table 16*

The Government argues that this request is vague, burdensome, and overbroad. The Court agrees. The Government need not respond to this request.

*Item 133: Any and all documents relating to the U.S. Department of Justice Office of the Inspector General Audit Division's February 2008 report titled, The Federal Bureau of Prison's [sic] Efforts to Manage Inmate Health Care (Audit Report 08-08), including, without limitation, the following:*
*a. Any and all documents reviewed relating to FCC Terre Haute; [and]*
*b. Any and all documents reflecting a response by the BOP or FCC Terre Haute*

*Item 134: Any and all documents relating to the U.S. Department of Justice Office of the Inspector General Audit Division's March 2016 report titled, Review of the Federal Bureau of Prisons' Medical Staffing Challenges (Evaluation and Inspection Division 16-02)*

*Item 135: Any and all documents relating to the U.S. Department of Justice Office of the Inspector General Audit Division's June 2016 report titled, The Federal Bureau of Prisons' Reimbursement Rates for Outside Medical Care (Evaluation and Inspections Division 16-04)*

*Item 136: Any and all documents relating to the U.S. Department of Justice Office of the Inspector General's report titled, Review of the Federal Bureau of Prisons' Use of Restrictive Housing for Inmates with Mental Illness (Evaluation and Inspections Division 17-05), including, without limitation, the following:*
*a. Any and all documents reflecting the data cited in the following paragraph:*
*BOP data showed that, as of 2015, only 3 percent of the BOP's sentenced inmate population was being treated regularly for mental illness. Yet, the BOP's FY 2016 Performance Budget Congressional Submission cited an internal BOP study, which suggested that approximately 19 percent of federal inmates had a history of mental illness. Moreover, a 2006*

*Bureau of Justice Statistics report concluded that 45 percent of federal inmates had symptoms or a recent history of mental illness*
*OIG Report, p. ii*
*b. Any and all documents reflecting the data cited in the following paragraph:*
*The BOP's data indicates that approximately 22 percent of inmates in RHUs had a history of mental illness at the end of FY 2014. Specifically, according to our analysis of BOP data, 37 percent of ADX inmates, 27 percent of SMU inmates, and 21 percent of SHU inmates had a history of mental illness*
*OIG Report, p. 35 (footnote omitted);*
*c. Any and all documents reflecting the average length of SHU stays for the years 2013-2017 across the BOP for inmates designated MHCL 1, 2, 3, and 4, broken down by MHCL level;*
*d. Any and all documents reflecting the average length of SHU stays for the years 2013-2017 at THP for inmates designated MHCL 1, 2, 3, and 4, broken down by MHCL level;*
*e. Any and all documents underlying the 2015 estimate of the BOP Chief Psychiatrist that approximately 40 percent of BOP inmates have mental illness; [and]*
*f. A copy of the letter from Thomas E. Perez, Assistant Attorney General, DOJ Civil Rights Division, and David J. Hickton, U.S. Attorney, Western District of Pennsylvania, to the Honorable Tom Corbett, Pennsylvania Governor's Office, May 31, 2013*

The Government objects to these requests, arguing that it should not have to obtain information from the OIG on behalf of Rogers. Rogers has responded that he is seeking the documents that the BOP provided to the OIG for these reports. The Government has further argued that Rogers' requests are vague, burdensome, and overbroad. The Court disagrees. Rogers has made a prima facie showing of materiality. The Government shall produce this information sought by Rogers.

*Item 137: Any and all documents reflecting any change in treatment rates for inmates with any mental health condition at THP since adoption of the 2014 BOP mental health policy*

The Government argues that this request is vague and overbroad. The Government's interpretation of what Rogers seeks is much broader than the Court's, and Rogers has responded that he is seeking documents reflecting a change in treatment rates. Rogers has made a prima facie showing of materiality. The Government shall produce this information sought by Rogers.

*Item 138: Any and all documents relating to the implementation of Institution Care Coordinator and Reentry (CCARE) Teams at any BOP facility*

The Government argues that this request is vague, burdensome, and overbroad. The Court disagrees. Rogers has made a prima facie showing of materiality. Accordingly, the Government shall produce this information.

*Item 139: Any and all documents relating to the timing in the BOP generally or THP specifically of responses to requests for medication for the period January 1, 2004, through December 31, 2013*

The Government argues that this request is vague, burdensome, and overbroad. The Court agrees that the request is overbroad but disagrees with the Government's other arguments. Rogers has made a prima facie showing of materiality. The Government shall produce this information for the time period from January 1, 2012, to December 31, 2013.

*Item 140: Any and all documents relating to the types of psychiatric medicine available at THP for the period January 1, 2013, to present, including, without limitation, any documents relating to THP formulary medications*

The Government has agreed to provide a list of formulary of mental health medications available for care at USP-TH, to the extent this information is not publicly available on line, from July 25, 2013, to the present. Rogers responds that his request is not limited to the formulary for THP and also requests that the Government indicate where any responsive information might be found online. Rogers has made a prima facie showing of materiality. The Government shall produce this information.

*Item 141: Any and all documents reflecting the number of requests for Wellbutrin and the number of approvals of such requests for the BOP during the period January 1, 2004, to present*

The Government argues that this request is burdensome and overbroad and indicates that, upon information and belief, it does not maintain a record of medication requests. The Court agrees that the request is overbroad and limits the date range to January 1, 2011, to the present. If

the Government does not maintain a record of medication requests, it shall provide a statement from the BOP so indicating.

> *Item 142: Any and all documents reflecting the number of inmates designated MHCL 1, 2, 3, 4 at THP for each year from 2010-2014, broken down by MHCL classification*

> *Item 143: Any and all documents reflecting the number of inmates designated MHCL 1, 2, 3, 4 housed at any time in the SHU at THP for each year from 2010-2014, broken down by MHCL classification*

> *Item 144: Any and all documents reflecting treatment protocols for inmates with suspected or diagnosed mental health conditions in the SHU at THP for each year from 2013-2017*

The Government argues that these requests are vague, burdensome, and overbroad. The Court disagrees. Rogers has made a prima facie showing of materiality. Accordingly, the Government shall produce this information.

> *Item 145: Any and all documents reflecting psychologist and psychiatrist staffing for the BOP for January 1, 2013, to present*

The Government has agreed to disclose the number of authorized psychiatric and psychological positions at USP-TH during 2013, but objects to the remainder of the request as vague, burdensome, and overbroad. The Court disagrees. Rogers has made a prima facie showing of materiality. Accordingly, the Government shall produce this information.

> *Item 146: Any and all documents reflecting THP staffing of psychologist and psychiatrist positions for January 1, 2013, to the present*

The Government has agreed to disclose the number of authorized psychiatric and psychological positions at USP-TH during 2013, but objects to the remainder of the requests as vague, burdensome, and overbroad. The Court disagrees. Rogers has made a prima facie showing of materiality. Accordingly, the Government shall produce this information.

*Item 148: Any and all documents relating to medical providers at FCC Terre Haute for the period January 1, 2004, to present, including, without limitation, contracts with outside medical providers and solicitations for offers*

The Government argues that this request is vague, burdensome, and overbroad. The Court agrees. The Government shall provide the contracts with outside medical providers and solicitations for offers from January 1, 2009, to the present. Rogers has made a prima facie showing of materiality as to this limited set of documents.

*Item 149: A listing of all medical and mental health staff at FCC Terre Haute for the period of June 1, 2013, to present*

The Government has agreed to provide the names of those medical and mental health staff members who have had contact with Rogers during the period of July 25, 2013, to the present. It objects to providing information prior to July 25, 2013, and about staff members who have not had contact with Rogers. Rogers has made a prima facie showing of materiality of the full information he seeks. Accordingly, the Government shall produce this information.

*Item 150: Any and all documents reflecting medical and/or mental health staffing and/or staff vacancies for FCC Terre Haute for the period June 1, 2013, to present*

The Government argues that this request is vague, burdensome, and overbroad. The Court disagrees that Rogers' request is vague, burdensome, and overbroad. Rogers has made a prima facie showing of materiality. Accordingly, the Government shall produce this information.

*Item 151: Any and all documents relating to mental health programming options available at THP for the period June 1, 2013, to present*

The Government has agreed to provide documents relating to mental health programming options available at THP for the time period from July 25, 2013 to December 26, 2013. It objects to requests for production of documents for periods outside that date range as overbroad and seeking immaterial information. The Court disagrees. Rogers has made a prima facie showing of

materiality of the full information he seeks. Accordingly, the Government shall produce this information.

> *Item 152: Any and all documents reflecting medical and/or mental health guidelines, policies, or protocols in place at FCC Terre Haute for the period June 1, 2013, to present*

The Government has agreed to provide documents reflecting medical and/or mental health guidelines, etc. in place at FCC-TH for the time period from July 25, 2013 to December 26, 2013. It objects to requests for production of documents for periods outside that date range as overbroad and seeking immaterial information. The Court disagrees. Rogers has made a prima facie showing of materiality of the full information he seeks. Accordingly, the Government shall produce this information.

> *Item 153: Any and all documents relating to response times between requests and responses for psychological or psychiatric services at THP and in the BOP generally from June 1, 2013, to present*

For the period of July 25, 2013 to December 26, 2013, the Government has agreed to provide information about response times to requests for psychological/psychiatric services at THP. It objects to requests for production of documents for periods outside that date range as overbroad and seeking immaterial information. The Court disagrees. Rogers has made a prima facie showing of materiality of the full information he seeks. Accordingly, the Government shall produce this information.

> *Item 154: Any and all documents reflecting job descriptions for each psychologist or psychiatrist employed at THP for January 1, 2013, to present*

The Government argues that this request seeks immaterial information. The Court disagrees. Rogers has made a prima facie showing of materiality of the information he seeks. Accordingly, the Government shall produce this information.

*Item 155: The entire personnel files, including, without limitation, curriculum vitae/resumes, employment applications, reviews, complaints, and disciplinary actions for all medical or mental health personnel who have evaluated or treated Andrew Rogers, including, but not limited to, the following:*

*a. Sara Booth, RN*
*b. Tracy Heiser, RN*
*c. Joseph May, RN*
*d. Kelly Scamihorn, RN*
*e. Michele Smith, RN*
*f. Matthew Worthington, RN*
*g. Sarah Wence, RN*
*h. Erin Conner, PsyD*
*i. Erin E. Buchanan, Psychology predoctoral intern/PsyD*
*j. Stephen Eckert, PhD*
*k. Stacie Kalvels, PsyD*
*l. Jasmine Jones, Psychology predoctoral intern*
*m. Melissa Macke, Psych Tech*
*n. Ericka Schmitt, PsyD*
*o. Dr. Wolfson (first name unknown)*
*p. William Wilson, MD*
*q. Roger Cox, FNP*
*r. Diana Sanchez, MD*
*s. Heather Mata, PA*
*t. Diana Rypska, PsyD*
*u. Jessica Sawyer, LPN*
*v. Tammy McDaniel, RN*

The Government has agreed to produce information contained within the personnel files of the individuals named in Rogers' motion to the extent that such production is necessary to comply with the requirements of *Brady*, *Giglio*, and the Jencks Act. It objects to the request for production of any other information contained within the personnel files of the named individuals as overbroad and seeking immaterial and potentially privileged information. The Court disagrees. Rogers has made a prima facie showing of materiality of the full information he seeks. Accordingly, the Government shall produce this information.

*Item 156: Any and all reports, transcripts, or other documents in the possession, custody, or control of any government agency of any investigation regarding Thomas Sim*

The Government has agreed to produce incident reports relating to an investigation regarding Thomas Sim that pertain to any investigation regarding Sim during his adult years that are contained within Sim's BOP central file or in the possession, custody, and control of a government agency involved in the investigation of his murder. It objects to the request to the extent that this request seeks production of reports that pertain to any investigation regarding Sim prior to his attaining the age of 18 on the grounds that this request seeks privileged information and pertains to a time period that is too remote and, therefore, immaterial to the preparation of a defense and not discoverable under Rule 16. The Court disagrees. Rogers has made a prima facie showing of materiality of the full information he seeks. Accordingly, the Government shall produce this information.

*Item 157: Any and all reports, transcripts, or other documents in the possession, custody, or control of any government agency referencing any suspected crime of violence, whether completed or not, wherein Thomas Sim is mentioned*

*Item 158: Any and all information in the possession of any government agency connecting Thomas Sim to any act of violence*

The Government argues that this request is vague, burdensome, and overbroad. The Court agrees that the request is overbroad and limits this request to the federal law enforcement agencies and the BOP. Rogers has made a prima facie showing of materiality as to this limited category of documents. Accordingly, the Government shall produce this information.

*Item 159: Any and all documents relating to the THP's acceptance, designation, and classification, and transportation of Thomas Sim*

The Government agrees to this request, to the extent that the information is contained within Sim's BOP central file. The Court finds the Government's response to be acceptable, and the Government shall provide this information.

*Item 160: Any and all documents relating to any investigation, assessment, and/or treatment of Thomas Sim for mental health issues*

*Item 161: Any and all Presentence Investigation Reports for Thomas Sim*

The Government argues that these requests are vague, burdensome, and overbroad. The Court disagrees that Rogers' requests are vague, burdensome, and overbroad. Rogers has made a prima facie showing of materiality. Accordingly, the Government shall produce this information.

*Item 163: Any Administrative Detention Orders referencing Thomas Sim*

*Item 164: Any Disciplinary Segregation Orders referencing Thomas Sim*

The Government has agreed to these requests, to the extent that the information is contained within Sim's BOP central file. The Court finds the Government's response to be acceptable, and the Government shall provide this information.

*Item 165: Any photographs of Thomas Sim within the possession, custody, or control of the U.S. government*

The Government has agreed to produce photos taken by government agencies involved in the investigation of the Sim murder that depict the victim's remains at the crime scene or at autopsy. It objects to producing any other photograph depicting Sim on the grounds that the request is vague, overbroad, and burdensome. The Court disagrees that Rogers' request is vague, burdensome, and overbroad. Rogers has made a prima facie showing of materiality. Accordingly, the Government shall produce this information.

*Item 168: All information regarding the policies in effect at THP on December 26, 2013, concerning the "planned response" of all employees at THP to a body alarm and/or other emergency situations*

The Government has agreed to provide the policy in effect on December 26, 2013, at USP-TH that pertained to the response of THP employees to body alarms and emergency situations, but objects to the production of "information regarding" such policies as vague,

overbroad, and burdensome. The Court agrees. Rogers may request additional documents if he believes that the policy itself is inadequate.

> *Item 169: All performance logs for all Associate Wardens and Captains that were employed by BOP and assigned to THP in the 6 months preceding December 26, 2013*

The Government has agreed to provide information concerning Associate Wardens and Captains as necessary to comply with the requirements of *Brady*, *Giglio*, and the Jencks Act. It objects that the other information sought is privileged and immaterial. The Court disagrees. Rogers has made a prima facie showing of materiality. Accordingly, the Government shall produce this information.

> *Item 170: Copies of the Institutional Training File, including office of personnel file (OPF), training file, and background file for officers on duty during the shift ending on the morning of December 26, 2013*

The Government has agreed to provide information concerning officers on duty during the shift ending on the morning of December 26, 2013, as necessary to comply with the requirements of *Brady*, *Giglio*, and the Jencks Act. It objects that the other information sought is privileged and immaterial. The Court disagrees. Rogers has made a prima facie showing of materiality. Accordingly, the Government shall produce this information. If any of the responsive documents are privileged, the Government shall produce a privilege log and file a motion for protective order that addresses each document contained therein.

*Item 181: All recordings of telephone calls made by any known government witness (whether or not the witness has been identified as a government informant) from December 26, 2013, to present*

*Item 182: All copies of letters or correspondence or emails received or sent by any known government witness (whether or not the witness has been identified as a government informant) from December 26, 2013, to present*

The Government has asserted that there are no cooperating witnesses but did not respond to these specific requests. Rogers has made a prima facie showing of materiality. Accordingly, the Government shall produce this information to the extent it exists.

*Item 183: Any and all documents that were Bates-numbered for this case by the U.S. Attorney's Office but not yet turned over to the defense in discovery*

The Government objects to this request, arguing that discovery is not governed by whether a document was Bates-numbered by the government and indicates that it will produce documents as necessary to comply with its obligations under Rule 16, *Brady*, *Giglio*, and the Jencks Act. The Government shall produce this information to Rogers, produce it to the Court for in camera review, or produce a privilege log.

*Item 184: Unredacted copies of all documents turned over to the defense in discovery in a redacted format*

At the time the Government filed its response, it asserted that no such documents existed. Such documents do now exist, but the Court will address them on a case-by-case basis as Rogers makes requests.

*Item 185: A complete witness list*

The Court will establish a deadline for witness and exhibit lists at a later date.

SO ORDERED: 12/4/18

_William T. Lawrence_
Hon. William T. Lawrence, Senior Judge
United States District Court
Southern District of Indiana

Copy via counsel of record via electronic communication

.