**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**TERRE HAUTE DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
|          v.           ) | 2:16-cr-0018-WTL-CMM |
| ) | |
| ANDREW N. ROGERS, ) | |
| ) | |
| Defendant. ) | |

---

**MR. ROGERS' RESPONSE IN OPPOSITION TO GOVERNMENT'S MOTION FOR AN ORDER LIMITING THE SCOPE OF DEPOSITIONS (DKT. 260)**

---

Defendant Andrew Rogers, by and through undersigned counsel, hereby respectfully files this Response in Opposition to the Government's Motion for an Order Limiting the Scope of Depositions (Dkt. 260). For the reasons stated herein, the Court should order expedited briefing on this matter and deny the government's request.

In order to help determine the scope of government wrongdoing in this case, the Court has found it necessary and appropriate to order depositions of three current or former government lawyers—one a current Assistant U.S. Attorney in this district, one a current attorney with the Department of Justice Capital Case Section (CCS), and one a former attorney with CCS. The purpose of these depositions is to discover information that will assist the Court in determining whether to hold an in-court evidentiary hearing on Mr. Rogers' Motion to Strike the Notice of Intent to Seek the Death Penalty for the Government's Intentional Withholding and Destruction of *Brady* Information (Dkt. 92). (*See* Dkt. 243 at 2 ("Given the information that has already come to light in this case, the Court is of the belief that the depositions are necessary to determine whether an

evidentiary hearing will be required on Rogers' misconduct allegations.").) In furtherance of that goal, the Court has allowed additional discovery preliminary to those depositions. (*See* Dkt. 114, 135, 161.)

Since initially ordering discovery relating Mr. Rogers' Motion to Strike, the Court and the defense have learned that the government's misconduct went beyond that laid out in Mr. Rogers' original motion. Most notably, the government continued to withhold information that, in the words of the Court, "directly contradicts the position that the Government has repeatedly taken that it has not withheld any information that would indicate that the Bureau of Prisons was negligent in treating Rogers' mental health conditions." (Dkt. 161 at 2.) The Court determined that the government displayed an "apparent lack of candor" in its previous filings with the Court. (Dkt. 161 at 3.)

The government previously asked the Court to reconsider its order for depositions altogether. (Dkt. 137.) Having lost that request (Dkt. 243), the government now comes and asks the Court to limit the scope of depositions of the government attorneys in a manner that would defeat the Court's goal of obtaining information necessary to determine the scope of government misconduct.[1]

The timing of the government's request is significant. The government has known about the Court's order for depositions since March 2018. (*See* Dkt. 114.) The government has known about the scope of pre-deposition discovery since May 2018 (Dkt. 135) and June 2018 (Dkt. 161). The government has had the defense *Touhy* affidavits since November 29, 2018 (Dkt. 238-1, 238-2, 238-3, 238-4). And the

---

[1] The government does not seek to limit the scope of the deposition of the fourth deponent, Dr. Steven Eckert. (Dkt. 260 at 11.)

government has known that the defense has been trying to work with the government to schedule the depositions for months, and subpoenas for Dr. Eckert and AUSA Warden were issued on December 11, 2018 (Dkt. 244). Depositions of Mr. Warden and Mr. Peterson will occur on January 22 and 24.

In its order denying the government's motion to reconsider—eleven days after the *Touhy* affidavits and with no objections thereto from the government—the Court indicated its understanding that the scope of the depositions stated in the *Touhy* affidavits was acceptable: "[A]ny concerns that may have existed as to Touhy regulations have been eliminated by Rogers' provision of affidavits and testimony summary." (Dkt. 243 at 2.) But now, on the eve of depositions, the government deems it important to ask the Court for an order limiting their scope. On many prior occasions, Mr. Rogers has had to call out the government's continuing litigation tactics of obstruction, obfuscation, and delay. (*See* Dkt. 128 at 1, 7; 141 at 9, 18; 227 at 5; 238 at 2 and n.3.) Although the government has moved on to a new set of lawyers,[2] it appears the strategy remains the same.

The Court has issued two separate discovery orders specific to the issues to be addressed in the upcoming depositions. (Dkt. 135, 161.) The Court's discovery orders *preliminary to the depositions* help define the parameters of the depositions themselves. The first discovery order indicated that the scope of pre-deposition discovery, and hence the scope of the depositions themselves, was not limited in the manner the government contends. For instance, the order included, *inter alia*: "Any email correspondence concerning the Rogers case to or from either James Peterson or P. Kevin

---

[2] By counsel's count, there have been four different Assistant United States Attorneys and four different Capital Case Section attorneys assigned to this case.

Carwile *concerning the authorization process or the investigation undertaken by CCS protocol attorneys* in furtherance of authorization of the death penalty from November 12, 2015, through November 17, 2015." (Dkt. 135 at 1 (emphasis added).) The order also required the disclosure of "[a]ny documents, including notes, emails, or word processing documents, reflecting the questions Mr. Peterson asked, intended to ask, or was directed to ask during the interviews of [the FCC Terre Haute mental health personnel]." (Dkt. 135 at 1-2.) The discovery order was not limited to documents created by Mr. Peterson or to documents specific to the witnesses interviewed but included "[a]ny emails or other documents reflecting directions to Mr. Peterson to prepare a memorandum for disclosure to Mr. Rogers's defense counsel regarding interviews of [the FCC Terre Haute mental health personnel]." (Dkt. 135 at 2.)

Before delineating specific areas of discovery, the second order for pre-deposition discovery noted that "the Court is left with many unanswered questions, and the Government's assurances that it understands, has complied with, and will comply with its *Brady* obligations ring hollow." (Dkt. 161 at 3.) Accordingly, the purpose of the ordered depositions is surely to try to answer those questions the Court is left with. To that end, the Court ordered broad discovery regarding AUSA Warden's multiple witness interviews and the shifting position of the U.S. Attorney's Office for the Southern District of Indiana regarding whether to seek the death penalty in this case. (Dkt. 161 at 3.)

Beyond those discovery orders, the Court's order denying the government's motion for reconsideration itself helped define the scope of the depositions: whatever is reasonably aimed at eliciting information "necessary to determine whether the Government has committed misconduct in [the] course of this case that is so egregious as to require the dismissal of the indictment." (Dkt. 243 at 2.)

4

With these general parameters of the depositions in mind, Mr. Rogers will address the specific limitations suggested by the government. Mr. Rogers notes that he is not yet in possession of much of the pre-deposition discovery ordered by the Court because the government has claimed various privileges and has submitted much of the discovery *in camera*. Because it was the Court's stated purpose in having this discovery produced for use in the depositions, Mr. Rogers hopes that the Court will be able to rule shortly on the government's claims of privilege. Obviously, documents that have yet to be produced to the defense may further inform arguments about the scope of depositions.

<u>CCS Attorneys Amanda Haines and James Peterson</u>

The government asks the Court to limit the depositions of Ms. Haines and Mr. Peterson to five narrow topics defined by the government. (Dkt. 260 at 7.) The government bases these limitations on Mr. Rogers' original Motion to Strike, ignoring this Court's later discovery orders or the additional information that has come to light since this litigation began. (Dkt. 260 at 4-8.)

Perhaps very tellingly, the government objects to Mr. Rogers questioning Ms. Haines or Mr. Peterson about "other information regarding the withholding of discoverable information in the *Rogers* case[.]" (Dkt. 260 at 6-7.) Clearly, the withholding of discoverable information is well within the scope of information this Court is interested in for purposes of deciding Mr. Rogers' Motion to Strike. If the government has not withheld other information (like it did with the Warden-Eckert interview), then it should have nothing to fear from such questions.

The government also seeks to avoid questions about many of the topics raised in the Peterson Declaration (Dkt. 99-1). In asking to limit the deposition of Mr. Peterson in the manner suggested, the government ignores the fact that *it* submitted the Peterson Declaration. In fact, the government has now submitted that Declaration *twice*. (Dkt. 99-1; 260-3.) Thus, topic #1 in Mr. Rogers' *Touhy* letter merely says that his counsel intends to ask about the statements in the Peterson Declaration the government has submitted. The government has sought to use that Declaration to defeat Mr. Rogers' Motion to Strike but then objects to questions arising from that document. It was the government who decided to raise, *inter alia*, Mr. Peterson's role in the protocol process, his drafting of the eight-page memorandum, the "urgent question," and his subsequent memorandum. (Dkt. 99-1 at 1-3.) But the government asks the Court to prohibit Mr. Rogers from asking about any of these things. The government thus seeks to deny the Court the very information the Court needs to determine whether to hold an evidentiary hearing.

Similarly, the government wants to limit the deposition of Ms. Haines to a category even narrower than the information contained in her affidavit in the Rodriguez-Coss case. (*See* Dkt. 92-1.) Certainly, the topics raised in that document are fair game. But even limiting her deposition to the topics therein would wrongly deprive this Court of the information it needs. For instance, even the heavily redacted pre-deposition discovery that has been provided outside Ms. Haines' affidavit shows that Ms. Haines learned (and the government failed to disclose) that:

> t the chief psychologist had opined that the case was not appropriate for the death penalty because the mental health records would actually support that there were issues with Roger's mental health treatment (that he had sought but not received treatment) and that we would be crushed on cross-examination.

That same, redacted discovery demonstrates that the death-penalty-authorization process was heavily biased against Mr. Rogers and against the local U.S. Attorney's Office:

> , Kevin learned that the defendant had made threats towards him personally. Kevin instructed Jim (and at this point Jim's recitation was very vague) to conduct some sort of investigation into the state of the mental health records and treatment and report back to him pronto before the USAO submitted their position to the AG. At that point, Jim conducted his "off the record" investigation where he interviewed at least a dozen mental health witnesses and obtained all of the defendant's medical and mental health records. The notes of these interviews, to the extent they existed, were not preserved. A memo was then prepared over the course of a few days which insinuated that the USAO was up to "shenanigans" (Jim's word) or in cahoots with the defense to derail a death penalty case. The memo was submitted to Kevin. Jim claimed that he didn't know what conversations Kevin had "behind closed doors" with the USAO but clearly that did happen. Less than three weeks after Jim communicated his findings to Kevin, the USAO changed their position as to seeking the death penalty. Kevin was also on the Committee voting to seek.

The government, however, would have this Court prohibit Mr. Rogers from asking Ms. Haines about CCS Chief P. Kevin Carwile's bias against Mr. Rogers or about Mr. Peterson's assertion that the local U.S. Attorney's Office was up to "shenanigans" or in cahoots with the defense. While it is certainly understandable that the government does not want these facts to be fleshed out—or to come to light at all—just because something is embarrassing for the Department of Justice does not mean that it is an improper topic for these depositions.

The government further wants to preclude Mr. Rogers from asking about discovery and investigation policies of CCS Attorney Peterson or the Department of Justice. (Dkt. 260 at 7.) The failure to comply with these policies is central to Mr.

7

Rogers' claims, and both his Motion to Strike and his Reply in support thereof fully address these issues. (Dkt. 92 at 5-12, 14; Dkt. 106 at 6.)

### AUSA James Warden

Amazingly, the government seeks to limit the scope of the deposition of AUSA Warden to simply his interview of Dr. Eckert and the preparation of his submission. (Dkt. 260 at 11.) If this is all that matters from Mr. Warden, why did the Court order pre-deposition discovery about *any* interviews of FCC Terre Haute mental health staff by Mr. Warden? (Dkt. 161 at 3.) Why did the Court order the production of both the "no-seek" and "seek" memos from the U.S. Attorney if those decisions were not relevant? (Dkt. 161 at 3.) Why did the Court order the production of documents relating to BOP attorney Robert Schalburg (Dkt. 161 at 3) if that was beyond the proper scope of a deposition of AUSA Warden? The Court ordered all of these materials because the Court is interested in finding out just how deep and broad the government's misconduct goes. That, the Court has made clear, is the defining limitation of what is relevant in this process.

As with Mr. Peterson and Ms. Haines, the scope of depositions outlined in Mr. Rogers' *Touhy* letters is appropriate to get at the information necessary to inform the Court of the necessity of an evidentiary hearing regarding the government's misconduct in this case.

In sum, the scope of depositions of Mr. Peterson, Ms. Haines, and Mr. Warden may not be as broad as civil depositions, but it is not so limited as the government suggests. The goal here is to get to the truth. The government has demonstrated a determination to do whatever it can to prevent that truth from coming out. These

depositions are not a substitute for trial testimony, and they are not a substitute for live testimony before this Court at an evidentiary hearing. Rather, they are for *discovery* to determine if an evidentiary hearing is appropriate. To that end, and in light of the government's demonstrated obstruction and obfuscation in this case, the Court should allow counsel for Mr. Rogers significant leeway to conduct the depositions in a manner designed to elicit the relevant and needed information. The topics outlined in Mr. Rogers' *Touhy* letters are appropriate, as evidenced by the government's failure to object previously or to attempt to negotiate the scope of the information demanded. *See* 28 C.F.R. 16.24(c) (requiring government to seek to limit any demands for information in the first instance through negotiation and through motions only "if necessary").

It has been almost ten months since the Court ordered depositions in this case. So far none have occurred. Now that depositions are being scheduled, the government seeks to erect more roadblocks to the truth. The Court's orders to date and Mr. Rogers' *Touhy* affidavits have adequately defined the scope of depositions. The Court should thus deny the government's request altogether. Additionally, so as to prevent additional delay at the instigation of the government, the Court should order expedited briefing of this matter and require the government to file any reply within seven days of this Response.

WHEREFORE, Mr. Rogers respectfully requests that the Court deny the Government's Motion for an Order Limiting the Scope of Depositions (Dkt. 260).

DATED this 10th day of January 2019.

Respectfully submitted,

*Nathan D. Chambers*
Nathan D. Chambers
303 16th Street, Suite 200
Denver, Colorado 80202
Telephone: (303) 825-2222
Facsimile: (303) 825-4010
nchambers@nathanchamberslaw.com

*Patrick J. Burke*
Patrick J. Burke
303 16th Street, Suite 200
Denver, Colorado 80202
Telephone: (303) 825-3050
Facsimile: (303) 825-2992
Patrick-J-Burke@msn.com

*Monica Foster*
Monica Foster
Indiana Federal Community Defenders, Inc.
111 Monument Circle, Suite 3200
Indianapolis, IN 46204
Telephone: 317-383-3520
Facsimile: 317-383-3525
Monica_Foster@fd.org

*Gwendolyn M. Beitz*
Gwendolyn M. Beitz
Indiana Federal Community Defenders, Inc.
111 Monument Circle, Suite 3200
Indianapolis, IN 46204
Telephone: 317-383-3520
Facsimile: 317-383-3525
Gwendolyn_Beitz@fd.org

## CERTIFICATE OF SERVICE

I certify a copy of the foregoing MR. ROGERS' RESPONSE IN OPPOSITION TO GOVERNMENT'S MOTION FOR AN ORDER LIMITING THE SCOPE OF DEPOSITIONS (DKT. 260) was filed electronically this 10th day of January 2019. Notice of this filing will be sent to the parties of record by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*Monica Foster*
Monica Foster