UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

UNITED STATES OF AMERICA,   )
                            )
            Plaintiff,      )
                            )
vs.                         ) CAUSE NO. 2:16-cr-00018-WTL-CMM-01
                            ) Indianapolis, Indiana
ANDREW N. ROGERS,           ) Friday, May 3, 2019
                            ) 2:03 o'clock p.m.
            Defendant.      )


                    Before the
        HONORABLE WILLIAM T. LAWRENCE, SENIOR JUDGE


        TRANSCRIPT OF PLEA AND SENTENCING HEARING



APPEARANCES:
FOR THE GOVERNMENT:      United States Attorney's Office
                         By:  William Lance McCoskey and
                         Abhishek Kambli
                         10 West Market Street, Suite 2100
                         Indianapolis, Indiana 46204


FOR THE DEFENDANT:       Indiana Federal Community Defenders
                         By:  Monica Foster and
                         Gwendolyn M. Beitz
                         111 Monument Circle, Suite 3200
                         Indianapolis, Indiana 46204


FOR THE DEFENDANT        Nathan D. Chambers, LLC
BY VIDEO CONFERENCE:     By:  Nathan D. Chambers
                         303 Sixteenth Street, Suite 200
                         Denver, Colorado 80202


                         Patrick J. Burke, P.C.
                         By:  Patrick J. Burke
                         303 Sixteenth Street, Suite 200
                         Denver, Colorado 80202


ALSO PRESENT:            The Defendant by video conference.

```
COURT REPORTER:          Jean A. Knepley, RDR, CRR, CRC, FCRR
                         46 East Ohio Street, Room 301
                         Indianapolis, Indiana 46204



           PROCEEDINGS TAKEN BY MACHINE SHORTHAND
                COMPUTER-AIDED TRANSCRIPTION
```

1                          I  N  D  E  X

2      PLEA HEARING                               4
       SENTENCING HEARING                        32
3
           Certificate of Court Reporter ..........44
4

5                  I N D E X   O F   E X H I B I T S

6      DESCRIPTION                              RECEIVED

7       (There were no exhibits produced or marked.)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          *(In open court.)*

2          THE COURT:  We are on the record on Cause No.

3    2:16-cr-18, United States of America versus Andrew N. Rogers.

4    Good afternoon, everyone.

5          Before -- I want to go around and certainly get everybody

6    to introduce themselves, but first of all I would like to

7    indicate that this matter was previously set for a hearing on

8    Defendant's motion to strike the notice of intent to seek the

9    death penalty, but the Court was notified that the parties

10   have reached an agreement whereby the Defendant, Andrew

11   Rogers, will plead guilty to murder in the first degree.

12         And the Government, after the plea hearing, will withdraw

13   its request for the death penalty.  This would result in a

14   fixed statutory sentence of life in prison without the

15   possibility of parole; is that correct, Mr. McCoskey?

16         MR. McCOSKEY:  Yes, Your Honor.

17         THE COURT:  All right.  Very well.  Let's go around

18   here and start with Mr. McCoskey, if you will introduce

19   yourself and who is with you.

20         MR. McCOSKEY:  Yes, Your Honor --

21         THE COURT REPORTER:  I'm sorry, microphones, please?

22         MR. McCOSKEY:  -- I'm so sorry.  Will McCoskey on

23   behalf of the United States.  I am joined at counsel's table,

24   to my immediate right is Assistant United States Attorney

25   Abhishek Kambli, and to his immediate right is Special Agent

1    Jake Overton of the FBI.

2              THE COURT:  Good afternoon, you-all.

3              MR. McCOSKEY:  Good afternoon, Your Honor.

4              THE COURT:  Ms. Foster, good afternoon to you.

5              MS. FOSTER:  Good afternoon, Your Honor.  Monica

6    Foster from the Indiana Federal Defender for Mr. Rogers, and

7    with me is Gwendolyn Beitz, also from the Defender's office.

8              THE COURT:  Welcome.  And Mr. Chambers?  Good

9    afternoon to you.

10             MR. CHAMBERS:  Good afternoon, Your Honor.  With the

11   Court's permission, we will remain seated when we address the

12   Court so that we can stay on camera?  I am Nathan Chambers,

13   along with Pat Burke, we represent Andrew Rogers, who is

14   present, seated between us.  And we are coming to you from

15   United States Penitentiary, Administrative Maximum in

16   Florence, Colorado.

17             THE COURT:  Very well.  Good afternoon to you-all.

18        The record should reflect, as Mr. Chambers indicated,

19   that this proceeding this afternoon is being conducted by

20   videoconferencing.  Present in person for the Government are

21   Mr. McCoskey and Mr. Kambli, as well as Special Agent Overton.

22   Present in person for the Defendant, Andrew Rogers, are Ms.

23   Foster and Ms. Beitz.  Mr. Rogers is present by

24   videoconferencing from the United States Penitentiary,

25   Administrative Maximum facility, Florence, Colorado.  And with

1    Mr. Rogers at that location is defense counsel, Mr. Chambers.

2    Mr. Rogers, have you been able to see and hear everything so

3    far?

4              THE DEFENDANT:  Yes, sir.

5              THE COURT:  Please know that we can also see and

6    hear you.  During the course of today's proceeding, I will be

7    asking you questions.  Please bear in mind that some of these

8    questions will be repetitious.  I would ask that you respond

9    verbally to my questions.  If you fail to hear any question or

10   a part of any question that I ask, please know that you may

11   ask for clarification from me.  In the event you wish to talk

12   to your counsel in private prior to answering any questions,

13   please let me know, and we will allow you whatever time you

14   need.

15       I say this because it is important over the course of

16   this hearing that you be able to hear me and that also, you

17   are able to understand what I am talking about.  So as I said,

18   if at any point I am not loud enough or clear enough or if you

19   just need more information about what I am trying to explain

20   or discuss with you, please ask me questions.  Will you do

21   that?

22             THE DEFENDANT:  Yes, sir.

23             THE COURT:  And again, I want to make sure that you

24   know that you can consult with Mr. Chambers also at any time

25   during this conference or during this hearing and ask him

1    anything you need to ask him and it can be done privately so

2    no one will listen in on it, all right?

3              THE DEFENDANT:  Yes, sir.

4              THE COURT:  All right.  The first thing that I need

5    to do is to go into some matters relating to your personal

6    history, Mr. Rogers.  In order to do that, I would ask that

7    you take an oath so that I can get truthful questions

8    from -- truthful answers to my questions.

9        Do you have any reservations about taking the oath, Mr.

10   Rogers?

11             THE DEFENDANT:  No.  No, sir.

12             THE COURT:  All right.  Would you raise your hand,

13   right hand, please.

14             MR. CHAMBERS:  It is --

15             THE COURT:  As best you can.

16             MR. CHAMBERS:  Yeah, that is about as best he can

17   do, I believe.

18             THE COURT:  I understand.

19       (Defendant sworn.)

20             THE COURT:  All right.  You may lower your hand.

21   You do now understand that you are now under oath, and if you

22   answer any of my questions falsely, your answers may be later

23   used against you for another prosecution for perjury or for

24   making a false statement, understood?

25             THE DEFENDANT:  Yes, sir.

1    THE COURT:  All right.  Could you state your full

2  name for the record, please.

3    THE DEFENDANT:  Andrew Neil Rogers.

4    THE COURT:  How old are you, Mr. Rogers?

5    THE DEFENDANT:  Thirty-four.

6    THE COURT:  And how far did you go in school?

7    THE DEFENDANT:  Um, eighth grade with a GED.

8    THE COURT:  Where did you go to school?

9    THE DEFENDANT:  Manito, Illinois.

10    THE COURT:  And you went through the eighth grade?

11    THE DEFENDANT:  Yes, sir.

12    THE COURT:  And you have subsequently received your

13  GED; is that right?

14    THE DEFENDANT:  Yes, sir, in prison.

15    THE COURT:  Can you read and write and understand

16  the English language?

17    THE DEFENDANT:  Yes, sir.

18    THE COURT:  Did you have any trouble communicating

19  with counsel during the representation of you?

20    THE DEFENDANT:  No, sir.

21    THE COURT:  You were able to ask questions and get

22  answers back that you understood?

23    THE DEFENDANT:  Yes, sir.

24    THE COURT:  Did you have occasion to read through

25  the petition to enter a plea of guilty and the plea agreement

1     as well as the indictment filed in this case?

2                    THE DEFENDANT:  Yes, sir.

3                    THE COURT:  Have you discussed both documents with

4     counsel?

5                    THE DEFENDANT:  Yes.

6                    THE COURT:  Do you feel that you understood that

7     petition to enter a plea of guilty and plea agreement after

8     you discussed it with counsel?

9                    THE DEFENDANT:  Yes, sir.

10                    THE COURT:  Now, just a few moments ago I was handed

11    a plea agreement.  I think it goes on for, like, 15 pages, and

12    I would simply ask, did you read this petition?

13                    THE DEFENDANT:  Yes, sir.

14                    THE COURT:  And it appears that there are several

15    signatures on pages 14 and 15, and I believe that the third

16    one down on page 14 purports to be yours; is that your

17    signature?

18                    THE DEFENDANT:  Yes, sir.  Yes, sir.

19                    THE COURT:  You signed it, correct?

20                    THE DEFENDANT:  Yes, sir.

21                    THE COURT:  And again, you understood and went over

22    that document, both by yourself and with counsel prior to

23    signing it; is that correct?

24                    THE DEFENDANT:  Yes, sir.

25                    THE COURT:  All right.  As you sit here this

1    afternoon, are you under the influence of any form of drug,

2    medication, or alcoholic beverage?

3         THE DEFENDANT:  No.

4         THE COURT:  Are you suffering from any sort of

5    medical, mental, physical, or emotional condition that would

6    interfere with your ability to understand and participate in

7    this afternoon's hearing?

8         THE DEFENDANT:  No, sir.

9         THE COURT:  Do you feel that your mind is free and

10   clear?

11        THE DEFENDANT:  As far as this plea agreement, yeah,

12   yes.  Yes, sir.

13        THE COURT:  That —

14        THE DEFENDANT:  It don't affect — it is not

15   affecting this right now.

16        THE COURT:  Okay.  What is not affecting this?

17        THE DEFENDANT:  I have been diagnosed with severe

18   depression, anxiety, and so forth, but it has nothing to do

19   with this.

20        THE COURT:  Does it impact on your ability to

21   understand, and as I suggest, participate in the proceedings

22   this afternoon?

23        THE DEFENDANT:  No.

24        THE COURT:  All right.  Let's take a look at the

25   indictment, Mr. Rogers, and in that indictment, which charges

1    you with first degree premeditated murder, the grand jury

2    charged that on or about the 26th day of December, 2013, in

3    the Southern District of Indiana, the Terre Haute Division,

4    that you, Andrew N. Rogers, the Defendant herein, at the

5    Federal Correctional Complex, Terre Haute, Indiana, a place

6    within the special maritime and territorial jurisdiction of

7    the United States, did unlawfully, willfully, deliberately,

8    maliciously, and with premeditation and malice aforethought,

9    kill Thomas W. Sim, in violation of Title 18 of the United

10   States Code, Section 1111.  You understand that is what you

11   are charged with?

12             THE DEFENDANT:  Yes, sir.

13             THE COURT:  You have any questions about that

14   particular charge?

15             THE DEFENDANT:  No.

16             THE COURT:  All right.  I will tell you, Mr. Rogers,

17   that that charge has certain elements or subparts, and it

18   would be those elements that Mr. McCoskey, on behalf of the

19   Government, would have to prove to the satisfaction of a jury

20   beyond a reasonable doubt before you could be convicted of

21   that charge.  Now, I believe those elements also appear in

22   your plea agreement towards the top of page 2, and I just want

23   to briefly review those with you.

24        The elements for Count I, and again, this is what Mr.

25   McCoskey and the Government would have to prove beyond a

1    reasonable doubt to the satisfaction of that jury before you

2    could be convicted would be first of all, that on the date

3    charged in the indictment, that you unlawfully killed Thomas

4    W. Sim; secondly, that you killed Thomas W. Sim with malice

5    aforethought; third, that the killing was premeditated; and

6    lastly, that the killing took place within the territorial

7    jurisdiction of the United States.

8         Do you have any question about any of those things that

9    the Government would have to prove beyond a reasonable doubt

10   before you could be convicted?

11                 THE DEFENDANT:  No, sir.

12                 THE COURT:  There are a couple of terms contained in

13   those elements, Mr. Rogers, that maybe I want to make special

14   mention of.  The first is, malice aforethought.  This means to

15   kill intentionally and deliberately or to act with total

16   disregard for human life; do you understand this term?

17                 THE DEFENDANT:  Yes, sir.

18                 THE COURT:  Any questions about that?

19                 THE DEFENDANT:  No.

20                 THE COURT:  The other term is premeditated.  This

21   means the killing with the result -- excuse me, was the result

22   of planning or deliberation or formulating a method for doing

23   something or achieving some result.  You understand that is

24   the definition of premeditated?

25                 THE DEFENDANT:  Yes, sir.

1      THE COURT:  Again, any question about that?

2      THE DEFENDANT:  No.

3      THE COURT:  You understand that by pleading guilty,

4  you are admitting to this charge and to these elements; you

5  understand that?

6      THE DEFENDANT:  Yes, sir.  Yes, sir.

7      THE COURT:  All right.  Have you and counsel talked

8  about the sentencing process and things like the advisory

9  sentencing guidelines in the event I accept your plea?

10      THE DEFENDANT:  Yes, sir.

11      THE COURT:  You understand that in determining

12  whether to accept this plea and the plea agreement, that I am

13  obligated to consider the applicable advisory sentencing

14  guidelines and to consider any range that that guideline

15  suggests.  I am also to consider a certain statute designated

16  as Title 18 of the United States Code, Section 3553(a).  That

17  would ask me to consider such things as the nature and

18  circumstances of this particular crime.  I am also to look at

19  your personal history and characteristics; you understand?

20      THE DEFENDANT:  Yes, sir.

21      THE COURT:  Do you know what the potential penalties

22  are that you face if you plead guilty to Count I of the

23  indictment?

24      THE DEFENDANT:  Yes.

25      THE COURT:  You understand that Count I is, indeed,

1    a felony offense, and as charged it may be punished by death

2    or imprisonment for life and up to a $250,000 fine; you

3    understand that?

4              THE DEFENDANT:  Yes, sir.

5              THE COURT:  Now, in your case, Mr. Rogers, the

6    Government has filed on the 31st day of May, 2016, a notice of

7    intent to seek the death penalty in your case.  You are aware

8    of that; are you not?

9              THE DEFENDANT:  Yes, sir.

10              THE COURT:  You have had a chance to read through

11    that notice?

12              THE DEFENDANT:  Yes.

13              THE COURT:  I am not going to discuss that too much

14    because it is my understanding that in the event the Court

15    accepts your plea of guilty to first degree premeditated

16    murder and I also accept the plea agreement, that the

17    Government would be withdrawing that notice; is that your

18    understanding also?

19              THE DEFENDANT:  Yes.

20              THE COURT:  Do you further understand that by

21    pleading guilty to Count I, if I accept the plea agreement,

22    that the Court has no choice but to sentence you to the

23    statutory sentence of imprisonment for life without the

24    possibility of parole?

25              THE DEFENDANT:  Yes.

1      THE COURT:  There is another penalty that I will

2  mention, Mr. Rogers; and that is, that you would have to pay

3  what they call a special assessment.  And that would amount to

4  $100 as a court cost.  Is that your understanding also?

5      THE DEFENDANT:  Yes.

6      THE COURT:  You have any question about any of these

7  potential penalties, Mr. Rogers?

8      THE DEFENDANT:  No, sir.

9      THE COURT:  As I mentioned before, the offense to

10  which you are pleading guilty is, indeed, a felony offense.

11  Please know that if your plea is accepted, you will be

12  adjudged guilty of that offense, and such a finding may

13  deprive you of valuable civil rights such as the right to

14  vote, the right to hold public office in some cases, the right

15  to serve on a jury, and certainly, the right to possess any

16  type of firearm.  Understood?

17      THE DEFENDANT:  Yes, sir.

18      THE COURT:  All right.  I mentioned the plea

19  agreement, and we have already looked at a couple of parts of

20  it.  Did you authorize your counsel to negotiate with the

21  Government to try to work out a plea agreement in this case?

22      THE DEFENDANT:  Yes.

23      THE COURT:  You understand that I was not a party to

24  any of those negotiations?

25      THE DEFENDANT:  Yes.

1        THE COURT:  Did you have the opportunity, as I asked

2    before, to read and discuss the plea agreement with counsel

3    before you signed it?

4        THE DEFENDANT:  Yes.

5        THE COURT:  And the document that you signed, is

6    that, indeed, the agreement that was reached?

7        THE DEFENDANT:  Yes.

8        THE COURT:  All right.  I want to go through the

9    plea agreement with you, Mr. Rogers.  I am not going to read

10   every word or every paragraph, but I just want to make sure

11   that I have a sense that you understand the basic concept of

12   this plea agreement, okay?

13       THE DEFENDANT:  Yeah.

14       THE COURT:  And again, if you have any questions,

15   please let me know, and we will stop.  And as I suggested

16   earlier, we will take whatever time is necessary.

17   Paragraph 1 of the plea agreement tells me that it is

18   your intent this afternoon to plead guilty to Count I of the

19   indictment, which charges you with first degree premeditated

20   murder.

21   Paragraph 2 talks simply about those penalties, which

22   essentially is, that is punishable by death or imprisonment

23   for life and a fine of up to $250,000.

24   Paragraph 3 talks about those four elements that you and

25   I have already talked about.

1    Paragraph 4 indicates that you, you understand that if I

2  accept the plea in the plea agreement, that I will sentence

3  you to a specific sentence as set forth later in this plea

4  agreement.  You understand, again, that I will be looking at

5  this plea agreement and deciding whether to accept or reject

6  it.  I will consider those factors of 3553(a).  I will also be

7  looking at the advisory sentencing guidelines.  You understand

8  that those guidelines are not binding upon me and are simply

9  advisory in nature.

10    Importantly, in Paragraph 5, you are acknowledging and

11  indicating to the Court that you understand that this plea

12  agreement is governed by the Federal Rules of Criminal

13  Procedure; and specifically, Rule 11(c)(1)(C), and that there

14  is a specific sentence recommended both by you and the

15  Government in this case.  You understand that I must either

16  accept or reject that specific sentence.

17    If I reject the plea agreement, that either party may

18  withdraw from the plea agreement.  Also, if you decide to

19  withdraw your plea, based upon the fact that I would reject

20  that plea, you would have the opportunity to go to trial or to

21  renegotiate the plea agreement.  In any case, I will tell you

22  in advance whether or not I am willing to accept this plea

23  agreement.

24    Paragraph 9 talks about that specific sentence, and it

25  tells me that you have agreed to a sentence and to recommend

1   to the Court, along with your counsel and the counsel for the

2   Government, that you receive a sentence of life without the

3   possibility of parole.  Is that your understanding also?

4           THE DEFENDANT:  Yes, sir.

5           THE COURT:  All right.  Paragraph 10 is certainly

6   important because that tells me that the Government has agreed

7   that in the event you abide by all the conditions of this

8   agreement, that the Government will withdraw its notice of

9   intent to seek the death penalty following -- it says the

10  imposition of a sentence, but I assume that it would be at the

11  conclusion of and the acceptance of the plea and plea

12  agreement, Mr. McCoskey?  Is that probably more accurate?

13          MR. McCOSKEY:  However the Court wants to

14  characterize it, Your Honor.  If the Court accepts the plea,

15  of course, that would entail a sentence of life imprisonment

16  so that would be fine, and we are prepared to file that motion

17  before we leave here today.

18          THE COURT:  Very well.  Thank you, Mr. McCoskey.

19     That is your understanding too, is it not, Mr. Rogers?

20          THE DEFENDANT:  Yes, sir.

21          THE COURT:  All right.  In regards to a fine, the

22  parties reserve the right to present argument on whether a

23  fine should be imposed.  We had talked about that $100 special

24  assessment.  There is -- it appears to be an issue in regards

25  to your placement and/or programs and/or treatment that you

1    are to receive while incarcerated at the BOP.  I assume that

2    Ms. Foster or counsel will advise me as we go along if there

3    are certain recommendations for placement and/or programs

4    and/or treatment.

5         Paragraph 11 is important, and I would ask you to look at

6    that.  The title of that paragraph is factual basis for the

7    guilty plea.  Now, have you read that very very closely?

8              THE DEFENDANT:  Yeah.  Yes, sir.

9              THE COURT:  That tells me what facts the Government

10   could establish if indeed this matter would go to trial and

11   tells me, essentially, what happened on December the 26th of

12   2013.  Now, is there anything in that paragraph — and it goes

13   on for, oh, about a page and a half.  Is there anything

14   contained in that paragraph that is not true in regards to

15   what you did as to Mr. Sims on December the 26, 2013?

16             THE DEFENDANT:  No, sir.

17             THE COURT:  Does it speak the truth about what you

18   did?

19             THE DEFENDANT:  Yeah.

20             THE COURT:  You have any question or anything you

21   want to add to or take away from that paragraph?

22             THE DEFENDANT:  No, sir.

23             THE COURT:  Mr. McCoskey, is it the Government's

24   intent to supplement that factual basis this afternoon?

25             MR. McCOSKEY:  No, it is not, Your Honor, unless the

1    Court requires additional clarification of any issue.

2              THE COURT:  Very well.  Ms. Foster, anything you

3    want to say in that regard?

4              MS. FOSTER:  No, Your Honor.

5              THE COURT:  All right.  Moving on to Paragraph 13.

6    There is a certain calculation contained in Paragraph 13 that

7    would be your recommendation and that of the Government as to

8    that advisory sentencing guideline that I mentioned before,

9    Mr. Rogers.  You are agreeing that the base offense level of

10   43 is appropriate in this case.

11        You are to receive two levels off for acceptance of

12   responsibility.  Mr. McCoskey has noted that in the event and

13   at sentencing, the Government may, indeed, be asking for that

14   third level of acceptance.  And if the Court accepts that

15   third level, the final offense level in this case would be

16   found to be a level 40.

17        Paragraph 14 is also important because that tells me that

18   you understand that you have a statutory right to appeal your

19   conviction and your sentence and the manner in which that

20   sentence was imposed.  However, acknowledging that right, and

21   in exchange for the plea agreement, you are agreeing in

22   Paragraph 14 that in the event I accept this plea and the plea

23   agreement and sentences you consistent with the agreement,

24   that you are expressly waiving your right or giving up your

25   right to appeal the conviction and the sentence imposed in

1    this case on any ground.

2         You are further expressly waiving any and all challenges

3    to the statutes to which you are pleading guilty on

4    constitutional grounds as well as any challenge to your

5    admitted conduct that does not fall within the scope of the

6    applicable statute; you understand that?

7              THE DEFENDANT:  Yes, sir.

8              THE COURT:  All right.  You have any question about

9    that waiver of appeal?

10             THE DEFENDANT:  No, sir.

11             THE COURT:  All right.  Paragraph 15 tells me that

12   you also understand that you know that there are pending

13   motions in this case, and that all of those motions will be

14   rendered moot upon sentencing.

15        Paragraph 16 kind of goes hand in glove with Paragraph

16   14, Mr. Rogers, because in that paragraph, you are expressly

17   agreeing not to contest or to seek to modify your conviction

18   or your sentence or the manner in which either was determined

19   in any type of legal proceeding after today.  This waiver does

20   not, however, prevent you from claims that you might have in

21   regards to ineffective assistance of counsel.

22        Paragraph 17 indicates that you, along with the

23   Government, will be requesting that the Court waive the

24   preparation, submission of a presentence investigation report.

25   The Court notes that a pleading has been filed in that regard,

1   and it, you know, would be your request and that of the

2   Government to proceed to sentencing on this matter yet this

3   afternoon.

4        Now, is there anything, Mr. Rogers, that I just kind of

5   went over with you as a more or less summary of the plea

6   agreement that is new to you?

7              THE DEFENDANT:  No, sir.

8              THE COURT:  Everything I said are things that you

9   and counsel have already gone over?

10              THE DEFENDANT:  Yes.

11              THE COURT:  And again, you, you believe that you

12   understand all the terms and conditions of that particular

13   plea agreement, correct?

14              THE DEFENDANT:  Yes, sir.

15              THE COURT:  And again, you understand that the

16   agreement we have just gone over amounts to an agreement

17   between you and the Government.  I was not a party to this

18   agreement.  I played no part in any of the negotiations, that

19   I can either accept the agreement or reject it.  If I accept

20   the plea agreement, then, I am bound to sentence you pursuant

21   to the terms contained in that agreement.

22        In the event I do not accept the plea agreement, then, I

23   would tell you in advance, as I suggested earlier, and you may

24   withdraw your plea in this matter, then, to proceed to trial.

25   Is that clear?

1          THE DEFENDANT:  Yes, sir.

2          THE COURT:  Similarly, if I do not accept the plea

3    agreement and you nonetheless decided to go ahead and plead

4    guilty, I would not be bound by the agreement in that case

5    either, understood?

6          THE DEFENDANT:  Yes, sir.

7          THE COURT:  All right.  I want to make sure, Mr.

8    Rogers, that you know that pleading guilty is not your only

9    choice and that there are a whole bunch of rights that you

10   have if you plead not guilty.  I want to go over them with you

11   to make sure they are clear in your mind and also as to what

12   happens to them if you do, indeed, plead guilty.

13       You have the right to a speedy and public jury trial.

14   This trial would be open so your friends and family and the

15   public could come and watch the trial if they would want to do

16   so, and they could see and hear everything that happens in

17   your case.

18       At this trial you would be presumed to be innocent, and

19   the Government would have to prove your guilt beyond a

20   reasonable doubt.  You would have the right to have an

21   attorney represent you during this trial and to appeal any

22   conviction that you might receive.  So you would never have to

23   face this charge alone, you would always have a lawyer there

24   to advise you at each step of the process.

25       At this trial you have the right to remain silent.  You

1    would not have to testify or explain anything or do anything

2    because the entire burden of proof in this case is on the

3    Government.

4         You also don't have to call any witnesses.  It is the

5    Government that is obligated to prove those four elements that

6    you and I talked about earlier, and they would have to do that

7    to the satisfaction of a jury beyond a reasonable doubt.

8         If you would choose to remain silent and not to testify,

9    and if you would choose not to call any witnesses, I would

10   instruct those jurors that they are not to consider the fact

11   that you don't testify or call any witnesses in any way in

12   arriving at a verdict.  So it would not factor into this case

13   at all.

14        At trial you would also have what is called the right of

15   confrontation.  What this means is, nothing happens in your

16   case unless you are right here in the courtroom to see it and

17   to hear it.  Part of that right of confrontation also includes

18   the right to challenge the witnesses that the Government calls

19   by having your lawyer cross-examine them.

20        And this might bring out facts favorable to any defenses

21   that you might have, and it also might bring out information

22   or the lack of information that might make this case more

23   difficult for the Government to prove.  So that is what

24   cross-examination can do for you.

25        Now, I mentioned that you don't have to testify or call

1   any witnesses, but you do have the right to testify if you

2   would choose to do that at trial.  You also have the right to

3   call witnesses and not just hope they show up because you have

4   asked them.  You would have the opportunity to issue orders to

5   witnesses called subpoenas that would require them to come to

6   court.  If you couldn't afford the expense of having those

7   witnesses brought here, paying the witnesses' fees and travel

8   expenses, you could apply to the Court to pay those expenses

9   for you also.

10          Now, if you would be convicted at that trial, you would

11  have the right to appeal your conviction and your sentence to

12  the Seventh Circuit Court of Appeals, which is located in

13  Chicago.  They would impanel three judges that would consider

14  any argument that your lawyer might make about things you and

15  your lawyer felt were not done correctly, and the appellate

16  court could reverse your conviction if any error was made.  Or

17  if that error was actually that there was not enough evidence

18  for you to be convicted on these charges, not enough evidence

19  to prove beyond a reasonable doubt that your conviction could

20  be thrown out so that you would never have to face this charge

21  again.  You understand all of those rights, Mr. Rogers?

22          THE DEFENDANT:  Yes, sir.

23          THE COURT:  You understand that by pleading guilty

24  to Count I for the charge of first degree premeditated murder,

25  that you are waiving; that is, giving up each and every one of

1  those rights?

2            THE DEFENDANT:  Yes, sir.

3            THE COURT:  Just to be clear, by pleading guilty,

4  there will be no trial, no jury, no cross-examination.  There

5  will be no right to remain silent, understood?

6            THE DEFENDANT:  Yes, sir.

7            THE COURT:  Now, there is another aspect of this

8  that I want to be sure you know, and that is that money should

9  not be a factor in deciding whether to use those rights and to

10 plead not guilty because if you cannot afford the expense of

11 an attorney, if you cannot afford the cost of having those

12 witnesses brought here, as I mentioned before, and if you

13 cannot afford the expense of taking an appeal, the Court would

14 pay all those expenses for you, and there is no charge for

15 having a jury.  So you realize that money should not be a

16 factor in deciding whether to use those rights or whether to

17 give them up?

18           THE DEFENDANT:  Yes, sir.

19           THE COURT:  Have you discussed all of this with your

20 counsel?

21           THE DEFENDANT:  Yes, sir.

22           THE COURT:  And is this what you want to do?  Are

23 you willing to give up these rights as part of your overall

24 agreement with the Government in this case?

25           THE DEFENDANT:  Yes, sir.

1          THE COURT:  All right.  The Court notes that as part

2    of the plea agreement, and I have noted it already, there is a

3    stipulated factual basis for the guilty plea.  And Mr.

4    McCoskey has indicated that the Government is not in a

5    position, does not necessarily want to supplement.  The

6    Defendant has offered nothing in that regard either.  I will

7    ask you one more time, Mr. Rogers, is there anything you want

8    to add to that stipulated factual basis contained in

9    paragraph ---

10          THE DEFENDANT:  No, sir, no.

11          THE COURT:  --- Paragraph 11.

12          THE DEFENDANT:  No, sir.  No, sir.

13          THE COURT:  All right.  The Court, then, would

14   preliminarily find that the anticipated plea is supported by

15   an independent basis in fact with respect to the essential

16   legal elements based upon that stipulated factual basis

17   contained in Paragraph 11 of the plea agreement that I now

18   place into evidence.

19      Mr. Rogers, we certainly talked about a lot of things

20   already this afternoon.  We have talked about the plea

21   agreement.  We have talked about this case.  We have talked

22   about your rights.  Do you have any questions for me about

23   anything I have covered with you or anything related to your

24   case or the consequences of pleading guilty?

25          THE DEFENDANT:  No, sir.

1        THE COURT:  You do know that you have the absolute

2    right to plead not guilty and have this case heard and

3    considered by a jury?

4        THE DEFENDANT:  Yes, sir.

5        THE COURT:  With respect to Counsel's representation

6    of you, do you feel you have had sufficient time to talk with

7    them and to work with them to try to consider any options that

8    you might have had regarding this case?

9        THE DEFENDANT:  Yes, sir, more than enough.

10       THE COURT:  And you are satisfied with their

11   counsel, their reputation, and the advice that they have given

12   you as your lawyers?

13       THE DEFENDANT:  Yes, sir.

14       THE COURT:  Is there anything you wanted them to do

15   as your lawyers that they have failed to do?

16       THE DEFENDANT:  No, sir.

17       THE COURT:  All right.  Let me ask you this, then.

18   With respect to the charge against you contained in Count I of

19   the indictment, which is that on or about the 26th day of

20   December, 2013, in the Southern District of Indiana, the Terre

21   Haute Division, that you, Andrew N. Rogers, the Defendant, at

22   the Federal Correctional Complex, Terre Haute, Indiana, a

23   place within the special maritime and territorial jurisdiction

24   of the United States, did unlawfully, willfully, deliberately,

25   maliciously, and with premeditation and malice aforethought,

1  kill Thomas W. Sim.  How do you plead, guilty or not guilty?

2          THE DEFENDANT:  Guilty.

3          THE COURT:  Are you offering this plea of guilty

4  voluntarily and of your own free will?

5          THE DEFENDANT:  Yes, sir.

6          THE COURT:  Has anybody forced you to plead guilty?

7          THE DEFENDANT:  No, sir.

8          THE COURT:  Has anybody threatened you if you did

9  not plead guilty?

10         THE DEFENDANT:  No, sir.

11         THE COURT:  It is certainly clear to me, Mr. Rogers,

12  that you are fully competent and capable of entering this

13  informed plea.  You are aware of the nature of the charge

14  against you and the consequences of pleading guilty.  I will

15  conclude that your plea of guilty is knowing and voluntary and

16  did not result in force, threats, or promises except those

17  particular promises that are contained in the plea agreement

18  that the Government has obligated itself to.  I will conclude

19  that the plea is supported by an independent basis in fact

20  with respect to the essential legal elements based upon the

21  stipulated factual basis placed into evidence this afternoon.

22     Mr. Rogers, having reviewed the plea agreement, the

23  stipulated factual basis, the pleadings submitted in this

24  case, and the arguments of counsel that the Court has

25  received, I will accept your plea of guilty to Count I of the

1  indictment and the 11(c)(1)(C) plea agreement.

2       Counsel, Ms. Foster, is it your desire and that of your

3  client to proceed to sentencing on this matter also this

4  afternoon?

5            MS. FOSTER:  It is, Your Honor.

6            THE COURT:  And that is the Government's request

7  also; is it not?

8            MR. McCOSKEY:  Yes, Your Honor.

9            THE COURT:  I would like to because the Court has,

10 indeed, considered -- when I talked about the arguments of

11 counsel, I was really talking about information that the Court

12 has considered.  I would like to put that on the record.

13 Those are three documents that I have.

14      First of all, is the memorandum in aid of sentencing,

15 which has been filed this morning, I believe, as well as the

16 Government's submission to the Capital Case Review Committee,

17 as well as a presentence investigation report done in

18 preparation for Mr. Rogers' sentencing out of the Central

19 District of Illinois under that Cause No. 1:12-cr-10152.  Any

20 objection to, by the Government or the Defendant, to entering

21 those documents of record?

22           MS. FOSTER:  Your Honor, when you refer to the

23 Government submission of the Capital Case Review Committee, do

24 you reference the one that was submitted in September of 2014?

25           THE COURT:  No, the one in February of '15.

1          MS. FOSTER:  I am not sure that I have seen one in

2    February of '15.

3          THE COURT:  You want to approach?

4          MS. FOSTER:  Yes.  Thank you.

5       (Complied.)

6          THE COURT:  Did that refresh your recollection?

7          MS. FOSTER:  Your Honor, I misheard you.  I thought

8    you said the Government's submission.  What you were —— what

9    you apparently referenced, and I didn't hear you, was the

10   defense submission.  We have no objection to that.

11         THE COURT:  And if I said the Government's, I

12   misspoke.

13         MS. FOSTER:  I probably heard you wrong.

14         THE COURT:  Mr. McCoskey, any objection to the Court

15   making those items of record?

16         MR. McCOSKEY:  No objection, Your Honor.  Just for

17   clarification, the Court had referred earlier to the parties'

18   joint submission requesting that the Court forego the PSR, and

19   what I understand the Court stating, then, that this is

20   material information present in the record from which the

21   Court may make its findings without having to have a PSR; is

22   that correct?

23         THE COURT:  Essentially, that is correct.  I am

24   going to talk in a minute about that.  I have considered those

25   documents as well as the notice, as well as the plea agreement

1    also.

2            MR. McCOSKEY:  Thank you, Your Honor.

3            THE COURT:  All right.  And again, it is your

4    request, Ms. Foster and Mr. McCoskey, that we proceed to

5    sentencing in this matter this afternoon?

6            MS. FOSTER:  Yes, Your Honor.

7            MR. McCOSKEY:  Yes, Your Honor.

8            THE COURT:  Okay.  Mr. McCoskey, I have indicated

9    the 11(c)(1)(C) plea agreement, and I have accepted the

10   contents.  I have accepted an obligation on the part of the

11   Government to withdraw the notice of intent to seek the death

12   penalty in the case, in this case.  Does the Government now

13   withdraw said notice?

14           MR. McCOSKEY:  Your Honor, and my understanding, of

15   course, is yes, the Court has accepted the plea agreement and

16   its terms.  And therefore, in anticipation of a sentence in

17   accordance with that plea agreement, yes, the United States

18   would move to withdraw the notice.  I have got a written

19   pleading.  I will make the motion orally right now,

20   respectfully ask that the Court grant the motion to withdraw

21   the notice that was filed under Docket 13 in this matter.

22           THE COURT:  Very well.  I assume no objection to

23   that, Ms. Foster?

24           MS. FOSTER:  No objection.

25           THE COURT:  All right.  The Court will, then, allow

1    that notice to be withdrawn.

2         Moving, as Mr. McCoskey indicated earlier, the Court has

3    received that joint motion to forego the presentence

4    investigation in this matter, and that is still counsel's

5    request, Ms. Foster?

6              MS. FOSTER:  Yes, Your Honor.

7              THE COURT:  Mr. McCoskey?

8              MR. McCOSKEY:  Yes, Your Honor.

9              THE COURT:  The Court, however, is still bound by

10   the requirement of Rule 32(c)(1)(A)(2)(i), and I note, first

11   of all, that this is an 11(c)(1)(C) plea, and the Court has

12   stated that it would be accepting the plea and the plea

13   agreement; as a result, the sentencing options are rather

14   limited in this case.  I would also note that I have certainly

15   read the many pleadings submitted in this intense case.

16        I have read the submission by defense counsel to the

17   Capital Case Review Committee, and I have read the presentence

18   investigation report filed in the robbery case out of the

19   Central District of Illinois that resulted in Mr. Rogers'

20   current incarceration.

21        I have also had the benefit of Defendants' memorandum in

22   aid of sentencing that was filed this morning.  The Court has

23   made these documents a part of the record.  Counsel for the

24   Government and the Defendant have also been privy to these

25   documents, as well as this Defendant; is that correct,

34

1    counsel?

2            MS. FOSTER:  Yes, Your Honor.

3            THE COURT:  And Mr. Rogers, you were aware of these

4    documents; were you not?

5            THE DEFENDANT:  Yes, sir.

6            THE COURT:  The Court is satisfied that the

7    information in the record will enable the Court to

8    meaningfully exercise its sentencing authority.  The joint

9    motion to forego the presentence investigation report in this

10   matter is hereby granted.

11       We will, then, proceed to sentencing.  Mr. Rogers, would

12   you, once again, state your full name for the record?

13           THE DEFENDANT:  Andrew Neil Rogers.

14           THE COURT:  Mr. Rogers, as you know, a few moments

15   ago I conducted a plea hearing on your case, and at the

16   conclusion of that hearing I accepted your plea of guilty to

17   the charge of first degree premeditated murder pursuant to

18   Title 18 of the United States Code, Section 1111.  I also

19   accepted the 11(c)(1)(C) plea agreement.  Do you realize that

20   we are now moving forward to the sentencing portion of your

21   case?

22           THE DEFENDANT:  Yes, sir.

23           THE COURT:  All right.  I would like to, at least,

24   note the advisory sentencing guidelines.  The Court finds

25   consistent with the representations of the plea agreement,

that the base offense level, pursuant to Section 2A1.1, would be a level 43.  Note 2(A) of that section also recites that in the case of a premeditated killing, life imprisonment is the appropriate sentence if a sentence of death is not imposed.

I find it appropriate to reduce the base offense level by two levels based upon Mr. Rogers' timely acceptance of responsibility and his willingness to accept the plea agreement and enter a plea of guilty to the criminal conduct underlying this instant charge.

Mr. McCoskey, you have otherwise noted that the Court would be — or the Government would be in a position to request that additional third level.  Does the Government do so?

MR. McCOSKEY:  We make that motion at this time, Your Honor.

THE COURT:  Very well.  The Court will accept the Government's motion and allow that third level of acceptance to be subtracted from the base offense level.  That results in a final offense level of 40.  Ms. Foster, do you agree with the Court's calculation?

MS. FOSTER:  I do, Your Honor.

THE COURT:  And Mr. McCoskey?

MR. McCOSKEY:  Yes, Your Honor.

THE COURT:  Next, I would like to turn my attention to that section on Mr. Rogers' criminal history, and in that

1   regard the Court has reviewed the presentence investigation

2   report from the Central District of Illinois.  I find that Mr.

3   Rogers would have a criminal history score that would be the

4   same as calculated as his prior sentencing hearing, and that

5   would be a subtotal score of 30.  And because Mr. Rogers

6   committed the offense we are here on this afternoon while

7   under a criminal justice sentence for that conviction out of

8   the Central District of Illinois, two additional points are

9   added.  Therefore, the total criminal history score the Court

10  would be finding would be 32.

11       Ms. Foster, is there anything in that section that you

12  would believe is an error or that you dispute?

13              MS. FOSTER:  No, Your Honor.

14              THE COURT:  And Mr. McCoskey, same question.

15              MR. McCOSKEY:  No, Your Honor.

16              THE COURT:  All right.  Based upon your criminal

17  history then, Mr. Rogers, under the guidelines, you have 32

18  criminal history points based on the sentencing table in

19  Chapter 5, Part A of the guidelines, that would place you in

20  criminal history category VI.  I find that that computation is

21  correct and would accordingly note that the advisory guideline

22  range for imprisonment on Count I would be 360 months to life.

23  However, as previously noted, the binding 11(c)(1)(C) plea

24  agreement, as well as the statutory penalty for first-degree

25  premeditated murder; and more specifically, Note 2(A) as I

1   referenced of Section 2A1.1(a) of the advisory sentencing

2   guideline, calls for a life sentence.

3       Ms. Foster, do you degree with the Court's calculation

4   and explanation?

5           MS. FOSTER:  I do, Your Honor.

6           THE COURT:  And Mr. McCoskey?

7           MR. McCOSKEY:  Yes, Your Honor.

8           THE COURT:  All right.  Moving forward, then, I

9   indicated that I have received the memorandum in aid of

10  sentencing.  Ms. Foster, do you or Mr. Chambers wish to be

11  heard by way of argument?

12          MS. FOSTER:  Your Honor, just very briefly.  In

13  light of the fact that there -- may I stay here?

14          THE COURT:  Yes.

15          MS. FOSTER:  In light of the fact that there is

16  really no sentencing options for the Court, I will be very

17  brief, and Mr. Rogers has nothing more to say.  I would note

18  that he has, by tendering this agreement and pleading guilty

19  this morning, that is his expression of remorse.

20      We would ask the Court, you know, it has been a long time

21  getting here, but I think there is no question that this plea

22  agreement is in the best interest of all concerned.  And we

23  would ask the Court to sentence accordingly.

24      I would also ask Your Honor to recommend that Mr. Rogers

25  be permitted to stay at the ADX in Florence, Colorado, and we

1    would ask that the memorandum in aid of sentencing that we

2    filed this morning be sent to the BOP.  I think there is some

3    good mental health information in that memorandum that I think

4    that would be helpful for the BOP to see in that form.  Other

5    than that, I have nothing to say.

6         THE COURT:  Mr. Rogers, before we move to the

7    Government's argument, I want to make sure that you understand

8    that you have the absolute right at this sentencing hearing to

9    make any statement that you wish to make. You don't have to

10   make any statement at all, but it is certainly your right to

11   make a statement if you so choose.  And I will listen to

12   anything and everything you have to say.  Do you wish to make

13   a statement?

14        THE DEFENDANT:  No, sir.

15        THE COURT:  Very well.  All right, Mr. McCoskey?  Do

16   you wish to be heard by way of argument?

17        MR. McCOSKEY:  Very briefly also, Your Honor.  I do

18   want to state, for the record, that the victim's family has

19   been kept, of course, apprised throughout this process.

20   Unfortunately, no member of the family was able to be present

21   today in light of the short timeline.  The United States did

22   make all reasonable efforts to inform the victim's family that

23   this was coming, but in any event, they had already agreed

24   with this disposition -- potential disposition some time ago.

25   That said, Your Honor, the Court is well aware of, as the

1    Court has stated, the factors that this Court must consider in

2    rendering a sentence as counsel has stated as well, that there

3    is, in light of the plea agreement of the parties, there is

4    really no options here other than what has been stated in the

5    plea agreement.

6         So the United States would simply ask that the Court

7    sentence the Defendant appropriately in accordance with that

8    plea agreement.  Thank you.

9              THE COURT:  Thank you, Mr. McCoskey.  Anything

10   further, Ms. Foster?

11             MS. FOSTER:  No, Your Honor.

12             THE COURT:  Very well.  The Court would ordinarily

13   be going through the factors of Title 18 of the United States

14   Code, Section 3553(a) and explain the reasons for the

15   sentence.  And the Court does that simply because it is my

16   responsibility to impose a sentence that is sufficient, but

17   not greater than necessary to comply with the purposes set

18   forth in Paragraph 2 of that subsection.

19        The Court, in determining the particular sentence to be

20   imposed, considers the nature and circumstances of the

21   offense, personal history and characteristics of the

22   Defendant, as well as the need for the sentence imposed to

23   reflect the seriousness of the offense, promote respect for

24   the law, and provide just punishment for the offense.

25        There are several other factors.  Although the Court has

1  considered each of these provisions in determining whether to

2  accept the 11(c)(1)(C) plea agreement, the Court does not find

3  it necessary to discuss those 3553(a) factors individually at

4  any length this afternoon.

5      Mr. Rogers has pled guilty to the charge of first degree

6  premeditated murder, which carries a statutory mandatory

7  sentence of life.  The negotiated binding plea agreement in

8  this case supports a sentence of life without the possibility

9  of parole, and the advisory sentencing guidelines also

10  recommends a sentence of life.

11      Ms. Foster, do you waive error in that regard?

12          MS. FOSTER:  Yes, Your Honor.

13          THE COURT:  And Mr. McCoskey?

14          MR. McCOSKEY:  Yes, Your Honor.

15          THE COURT:  Therefore, as previously mentioned, I

16  will accept, Mr. Rogers, your plea of guilty and the

17  11(c)(1)(C) plea agreement and order the entry of judgment

18  thereon, and I will be sentencing you pursuant to your plea

19  agreement.

20      Pursuant, then, to the Sentencing Reform Act of 1984, it

21  will be the judgment of the Court that the Defendant, Andrew

22  N. Rogers, be hereby committed into the custody of the Bureau

23  of Prisons for a life term of imprisonment to be served

24  consecutively to the Central District of Illinois case under

25  Cause No. 1:12-cr-10152.  This sentence is based upon the

1   terms of that previously mentioned binding plea agreement.

2       The Court would recommend to the BOP that Mr. Rogers be

3   housed at ADX Florence, Colorado.  The Court, candidly, will

4   be sending not only the memorandum in aid of sentencing, but I

5   will be sending the record which will include the previous

6   presentence investigation, which I am sure the BOP has, as

7   well as that submission to the Capital Case Review Committee

8   submitted by Defendant in February of 2015.

9       The Court will not be imposing a fine due to Mr. Rogers'

10  financial resources and his future ability to pay.  The term

11  of supervised release is not required by statute, and

12  therefore, the Court will not be adding anything to the

13  three-year term ordered in the Central District of Illinois

14  under that previously mentioned cause number.

15      You will, Mr. Rogers, however, be obligated to pay that

16  special assessment of $100.  That special assessment shall be

17  due immediately and is to be made payable to the Clerk of the

18  United States District Court.

19      Mr. Rogers, you would ordinarily have the right to appeal

20  your conviction if you believe your guilty plea was somehow

21  unlawful or involuntary or if there was some other fundamental

22  defect in the proceedings that has not been waived by your

23  plea of guilty.  You also have the right to appeal your

24  sentence if you think your sentence is contrary to law.  As

25  you know, you have waived those rights to appeal as part of

1    your plea agreement in this case.

2          Such waivers, I will tell you, are generally enforceable,

3    but if you believe the waiver is not enforceable, you could

4    present that theory to the Court of Appeals.

5          With few exceptions, any notice of appeal must be filed

6    within 14 days of judgment being entered in your case.  If you

7    cannot afford the filing fee or cannot afford to pay a lawyer

8    to appeal for you, the Court would appoint a lawyer to

9    represent you in this appeal.

10         Also, if you intend to appeal, I suggest you talk to your

11   counsel, and I will obligate them to file the proper notices

12   in a timely fashion.

13         Anything further from the Defendant, Ms. Foster?

14              MS. FOSTER:  No, Your Honor.

15              THE COURT:  From the Government, Mr. McCoskey?

16              MR. McCOSKEY:  Judge, if I may, just a few

17   housekeeping points of clarification.  In light of the

18   parties' plea agreement and the terms in the plea agreement

19   that all pending motions would be rendered moot, will the

20   Court be entering an order to vacate, specifically vacate the

21   evidentiary hearing set for Monday?  And also, will the Court

22   enter an order granting the Government relief from -- orders

23   that are standing that require specific performance on the

24   part of the United States, for example, discovery items that

25   are in the process of being turned over?

43

1      THE COURT:  Right.  I had intended to do that, Mr.
2  McCoskey, in the minute, so that it will be done rather
3  quickly and be entered today, which will take everyone
4  certainly off the hook for Monday.  And also, I think we, we
5  will be making arrangements to return to you certain items
6  that were otherwise offered to the Court in camera that were
7  not considered; but yes, all pending motions will be deemed as
8  moot, and there will be no continuing obligations for any
9  discovery or discovery responses from this day forward.
10      MR. McCOSKEY:  Thank you, Your Honor.
11      THE COURT:  We will put that in the minute.
12      MR. McCOSKEY:  Thank you, Your Honor.  That is all I
13  had, sir.
14      THE COURT:  All right.  Mr. Rogers, you will
15  otherwise be remanded back to the Bureau of Prisons.  Good
16  luck to you, sir.
17      THE DEFENDANT:  Thank you.
18      THE CLERK:  All rise.
19      (Concluded at 2:56 p.m.)
20                         -  -  -
21
22
23
24
25

44

1                    CERTIFICATE OF COURT REPORTER

2

3         I, Jean A. Knepley, hereby certify that the

4    foregoing is a true and correct transcript from reported

5    proceedings in the above-entitled matter.

6

7

8    /S/ Jean A. Knepley                April 7, 2021
     JEAN A. KNEPLEY, RDR/CRR/CRC/FCRR  Date
9    Official Court Reporter
     Southern District of Indiana
10   Indianapolis Division

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25